Andrew J. Schwaba (NC Bar No. 36455)
SCHWABA LAW FIRM
aschwaba@schwabalaw.com
212 South Tryon Street, Suite 1725
Charlotte, NC 28281
(704) 370-0220
(704) 370-0210 (fax)

Edward H. Nicholson, Jr. (NC Bar No. 36123)
NICHOLSON LAW FIRM, P.A.
nicholsonshumaker@att.net
212 South Tryon Street, Suite 1725
Charlotte, NC 28281
(704) 223-2406 (telephone)

*Class Counsel*

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF NEW YORK

### CENTRAL ISLIP DIVISION

| | |
|---|---|
| EARL WRIGHT, RAMONA HOLDEN, ETTA WILLIAMS, MICHAEL HAMILTON, JOSEPH EKO, LINDA PHILLIPS, ELAINE WILHELM, ANTHONY GILLESPIE, MARK CARLISLE, VERNITA JESSIE, CHERYL RIFE, SANDY SAMENS, RUTHIE ORTIZ SOUDJIAN, | Case No. _____ **2:18-cv-2373** <br><br> Assigned to _____ <br><br> **PLAINTIFFS' CLASS ACTION COMPLAINT FOR VIOLATIONS OF DECEPTIVE MAIL PREVENTION & ENFORCEMENT ACT, CAN SPAM ACT, NEW YORK GENERAL BUSINESS LAW §§ 349, 369e** |
| Plaintiffs, | |
| v. | |
| PUBLISHERS CLEARING HOUSE, INCORPORATED and PUBLISHERS CLEARING HOUSE, LLC | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

1    Plaintiffs, Earl Wright, Ramona Holden, Etta Williams, Michael Hamilton,
2    Joseph Eko, Linda Phillips, Elaine Wilhelm, Anthony Gillespie, Mark Carlisle,
3    Vernita Jessie, Cheryl Rife, Sandy Samens, Ruthie Ortiz Soudjian by their attorneys,
4    make the following allegations based upon knowledge with respect to their own acts
5    and based upon information and belief with respect to other matters:

6

7    ## I.    INTRODUCTION

8    1.    This is a putative class action complaint alleging the Defendant,
9    Publishers Clearing House has enticed and solicited consumers, particularly the
10   elderly, into believing they have enhanced opportunities of winning millions of
11   dollars in sweepstakes and lotteries by engaging in the unlawful, unfair and
12   deceptive marketing practices that include direct mail, private membership
13   solicitations, internet advertisements, and email marketing campaigns. These
14   deceptive campaigns promised winnings to Plaintiffs, and have thereby enticed
15   them to purchase goods and to provide extensive personal information, from which
16   the Defendant profits by re-marketing Plaintiffs' personal information to other
17   marketers. Over the past thirty years, the Defendant has been cited and sanctioned
18   by state attorneys general several times for their marketing practices, but it
19   nevertheless persists in deceptive practices, particularly targeted towards the
20   elderly.
21   2.    This action alleges the Defendant's unfair and deceptive marketing
22   tactics violate the federal Deceptive Mail Prevention and Enforcement Act, 30
23   U.S.C. § 3001 et seq., for sending paper mail containing deceptive marketing
24   language, the Can Spam Act, 15 U.S.C. §7701 et seq., for sending emails and other
25   marketing materials that misrepresent the content of the emails in the subject line,
26   failing to send email messages that are clear and conspicuously labeled as an
27   advertisement, and that the Defendant misuses personal information provided to it
28   by the Plaintiffs. The Plaintiffs also allege the Defendant engaged in unfair and

PLAINTIFFS' CLASS ACTION COMPLAINT

deceptive marketing tactics in violation of the New York General Business Code, §§ 349 and 369e for the circulation of deceptive advertising materials, and by deceptively soliciting purchases of goods by promising the Plaintiffs enhanced opportunities, beyond those available to other consumers or the general public, of chances of winning a sweepstakes, lottery, or other prize.

## II.    PARTIES

3.    Plaintiff Earl Wright is a resident of Pineville, North Carolina. He has been a customer of Publisher's Clearing House for approximately the past seven years, purchasing a variety of products, using their PCH Search&Win, and entered PCH Sweepstakes. Mr. Wright, a retired and disabled veteran of the United States Army, purchased hundreds of items from Publisher's Clearing House believing that purchasing products would enhance his chances of winning a prize, drawing, lottery or sweepstakes. Mr. Wright became a VIP member of Publisher's Clearing House due to his orders and time spent on the PCH website, paying a fee for a monthly membership, and believed that the extent of his time on the website, his repeated orders, and his repeated entries into the sweepstakes, would result in enhanced chances of winning a prize.

4.    Plaintiff Ramona Holden is a resident of Cameron, Oklahoma. She has been a customer of Publisher's Clearing House for approximately five years, purchasing a variety of products with Publisher's Clearing House after representations from PCH that her purchases would enhance her chances of winning a PCH drawing/sweepstakes.

5.    Plaintiff Etta Williams is a resident of Corbin, Kentucky. She has been a customer of Publisher's Clearing House for approximately the past seven years, purchasing a variety of products, using their PCH Search&Win, and entered PCH Sweepstakes.

6.    Plaintiff Michael Hamilton is a resident of Hunstville, Alabama. He has

PLAINTIFFS' CLASS ACTION COMPLAINT

1  been a customer of Publisher's Clearing House for approximately the past seven

2  years, purchasing a variety of products, using their PCH Search&Win, and entered

3  PCH Sweepstakes.

4      7.    Plaintiff Joseph Eko is a resident of Seattle, Washington. He was a

5  customer of Publisher's Clearing House for approximately two years. Mr. Eko

6  purchased products with Publisher's Clearing House after receiving representations

7  that his purchases would enhance his chances of winning a PCH drawing.

8      8.    Plaintiff Anthony Gillespie is a resident of Cheraw, South Carolina. Mr.

9  Gillespie has been a customer of Publisher's Clearing House for two years. He has

10 purchased items, and spent countless hours on PCH's website upon PCH

11 representations that purchasing products with Publisher's Clearing House would

12 enhance his chances of winning a prize or drawing.

13     9.    Plaintiff Linda Phillips is a resident of Lafollette, Tennessee. Ms.

14 Phillips has been a customer of Publisher's Clearing House for five years. She has

15 purchased dozens of items over the years to enter PCH's drawings, including at least

16 one incident in which she purchased a product after PCH advised her to "please

17 purchase something else" to enter the drawing.

18     10.   Plaintiff Elaine Wilhelm is a resident of Fisher, Indiana. Ms. Wilhelm

19 has been a customer of PCH for years. She has purchased products from PCH after

20 receiving PCH's marketing materials advising her purchasing products would

21 enhance her chances of winning PCH prizes.

22     11.   Plaintiff Mark Carlisle is a resident of Williamsport, Pennsylvania. Mr.

23 Carlisle has been a customer of PCH for approximately ten years. He has purchased

24 products from PCH after receiving PCH's marketing materials advising him

25 purchasing products would enhance his chances of winning PCH prizes.

26     12.   Plaintiff Cynthia Ferrell is a resident of Greensboro, North Carolina.

27 Ms. Ferrell has been a customer of PCH since 2015. She has purchased products from

28 PCH after receiving PCH's marketing materials advising her purchasing products

1   would enhance his chances of winning PCH prizes

2   13.   Plaintiff Cheryl Rife is a resident of Melbourne, Florida. Ms. Rife has

3   been a customer of PCH since 2017. She has purchased products from PCH after

4   receiving PCH's marketing materials advising her purchasing products would

5   enhance his chances of winning PCH prizes.

6   14.   Plaintiff Vernita Jessie is a resident of Highland Park, Michigan. Ms.

7   Jessie has been a customer of PCH for approximately ten years. He has purchased

8   products from PCH after receiving PCH's marketing materials advising him

9   purchasing products would enhance his chances of winning PCH prizes.

10   15.   Plaintiff Sandy Samens is a resident of Oshkosh, Wisconsin. Ms.

11   Samens has been a customer of PCH for approximately 30 years. Ms. Samens has

12   purchased thousands of dollars worth of items from PCH after receiving PCH's

13   marketing materials advising her purchasing products would enhance her chances of

14   winning PCH prizes.

15   16.   Plaintiff Ruth Ortiz Soudjian is a resident of Los Angeles, California.

16   Ms. Soudjian has been a customer of PCH since 2014. Ms. Soudjian has purchased

17   hundreds of dollars worth of items from PCH after receiving PCH's marketing

18   materials advising her purchasing products would enhance her chances of winning

19   PCH prizes.

20   17.   Defendant, Publishers Clearing House, Incorporated is a nationwide

21   interactive media corporation operating throughout the United States, with offices in

22   Port Washington, New York; New York, New York; San Francisco, California;

23   Portland, Maine; Boston, Massachusetts; and Chicago, Illinois.

24   18.   Defendant, Publishers Clearing House, LLC is a nationwide interactive

25   media corporation operating throughout the United States, with offices in Jericho,

26   New York; New York, New York; San Francisco, California; Portland, Maine;

27   Boston, Massachusetts; and Chicago, Illinois.

28   19.   Defendants Publishers Clearing House, Inc. and Publishers Clearing

- - 4 - -

PLAINTIFFS' CLASS ACTION COMPLAINT

House LLC are henceforth referred to collectively as "Defendant," "PCH," or "the Company."

### III.   JURISDICTION AND VENUE

20.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendants, and the amount in controversy exceeds $5 million.

21.   The Court has personal jurisdiction over the Defendant because the Defendant resides or has its principal places of business in this District, and a substantial amount of the acts and omissions complained of and/or the harm alleged occurred in this District.

22.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1), because a substantial part of the acts and omissions giving rise to this action occurred in this District.

23.   In 2011, PCH purchased Liquid, a mobile marketing company to gain a foothold into marketing online. Liquid extracted first party data from consumers for resale and optimization by other marketers and ads sold to other PCH platforms and websites.  PCH maintained Liquid as a department until approximately September, 2016 when Liquid rebranded itself within the company and adopted the new name PCH/Media, controlling digital advertising for PCH.

24.   In August of 2015, Publisher's Clearing House acquired CommandIQ, a San Francisco, California company, to deliver unprecedented ad targeting of consumers to end marketers, using PCH games, PCH Search tools, and PCH consumer orders to fuel the ad targeting. A substantial part, if not most, of the digital marketing efforts through PCH media, located in San Francisco, California.

PLAINTIFFS' CLASS ACTION COMPLAINT

## IV.   FACTUAL BACKGROUND

### A.  PUBLISHERS CLEARING HOUSE'S HISTORY OF DECEPTION

25.   PCH is a business started in 1953 as a direct marketing agency offering discounted magazine subscriptions. In 1983, the Company began selling a broader array of products, including household and personal items, home entertainment items, collectibles and more.

26.   PCH is a nationally recognized sweepstakes and marketing brand known especially for its multi-million dollar sweepstakes advertised over national television networks, direct mail, and internet and email marketing campaigns. They rose to prominence in the 1980's when national celebrities, like Ed McMahon, endorsed the sweepstakes and television advertisements portrayed unwitting consumers answering their doorbell to the Publishers Clearing House "Prize Patrol" surprising consumers with bouquets of flowers and ribbons and announcing they had won the Sweepstakes.

27.   Beginning in the 1990's PCH's marketing practices came under scrutiny for their deceptive and illegal nature. In 1992, the New York Attorney General launched an investigation into hundreds of consumer complaints related to illegal and deceptive practices in the marketing of its sweepstakes. In 1994, PCH agreed to pay $490,000 to 14 states to resolve allegations that they were misleading people into believing they were finalists in a sweepstakes and could increase their odds of winning by buying magazines promoted by PCH.

28.   In 1999, the United States Senate Committee on Governmental Affairs, Permanent Subcommittee on Investigations held hearings regarding deceptive sweepstakes mailings and promotions and the harm it causes on society, including targeting the elderly. The hearings resulted in the introduction and ultimate passage of the Deceptive Mail Prevention and Enforcement Act.

29.   In 2000, PCH again came under scrutiny when 23 State Attorneys General launched an investigation of the practices of PCH finding, contrary to

applicable law, PCH had mislead consumers into believing that they were close to winning a prize and that ordering magazines and other merchandise would increase their odds of winning. The Company reached a resolution of the inquiry with the State Attorneys General ("2000 State Attorneys General Agreement") that called for PCH to pay over $18 million dollars, including over $15 million dollars in restitution to customers.

30.    In 2001, PCH came under renewed scrutiny when it settled a second lawsuit brought by 26 State Attorneys General for misleading consumers into believing they were close to winning a prize and that ordering magazines and other merchandise would increase their odds of winning, nearly identical allegations from those in the 2000 State Attorneys General Agreement. These allegations resulted in a second agreement that required PCH to pay $34 million dollars, including $1 million dollars in civil penalties, and apologize for the injury it caused to consumers.

31.    In 2010, PCH again came under scrutiny for its deceptive practices when 33 States and the District of Columbia, led by the Colorado Attorney General, launched yet another inquiry into PCH's marketing practices and promises of sweepstakes winnings to deceive unwitting consumers, in violation of the 2000 and 2001 State Attorneys General Agreements. Once again, PCH reached a resolution with the State Attorneys General for $3.5 million dollars and agreements to refrain from prohibited marketing practices.

32.    The 2001 and 2010 PCH agreements with State Attorneys General prohibited PCH from the representing to consumers, among other items, that:

        a. He or she will win, is close to winning, or that his or her winning is imminent;

        b. He or she has been specially selected to receive a sweepstakes entry opportunity;

        c. He or she is among a select group with an enhanced chance of winning or is more likely to win than other entrants in that group; or

d. The elimination of other persons has enhanced his or her chances of winning a prize (other than by reason of the failure of others to enter.

e. PCH shall not use any term that misrepresents that the Recipient has an enhanced status or position with a Sweepstakes superior to other timely entrants to describe any such status or position.

33.     PCH has repeatedly and systematically violated these agreements with the State Attorneys General.

**B.  SENATE SPECIAL COMMITTEE ON AGING**

34.     In 2015, the United States Senate Special Committee on Aging conducted an examination of PCH's marketing practices. The Committee found that PCH still employs the same methods that drew the attention of Congress and State Attorneys General since the 1990's, ultimately recommending that Congress review legislation that would better protect consumers in the age of electronic, email and online communication.

35.     PCH launched its website in 1999. The website is now divided into six different properties for consumers to engage with PCH. The PCH main page, PCH.com, has approximately six million users. PCHSearch & Win has approximately four million users. PCHLotto has approximately two million users. PCH Play &Win has approximately one and a half million users. PCHFrontpage has approximately one million eight hundred thousand users. PCH Save & Win has approximately four hundred forty five thousand users. These consumers are emailed anywhere from twice per day to once every 30 days depending on their level of activity.

36.     The online marketing program is much larger than offline marketing activities. However, PCH, and its various online marketing efforts, undergo little, if any, scrutiny in order to comply with the agreements made by PCH in 2000, 2001 and 2010. Although PCH internal staff monitor digital marketing materials for compliance with the Attorney General Agreements, upon information and belief,

only offline postal mailings are reviewed by Venable LLP, the entity charged with reviewing PCH's compliance with the State Attorney General Agreements. Similarly, PCH retains outside counsel to review only offline postal mailings for compliance with the State Attorney General Agreements. (Senate Report, p. 49). Nevertheless, even those mailings do not comply with the agreements reached with the State Attorneys General in 2010.

37.     PCH, upon information and belief, purposefully distributes marketing materials that create the impression that a purchase of PCH products improves the consumer's chances of winning. PCH maintains a separate database of High Activity Consumers ["HAC"] to assist PCH with identifying, surveying and manipulating consumers into purchasing PCH goods with the implied, if not express promise that purchase of goods will improve their chances of winning.

38.     PCH marketing materials deceive many consumers into "spiking" activity, whereby customers spike their orders with PCH in the lead up to a perceived sweepstakes, in order to drive up their chances of winning said sweepstakes. PCH was ordered to identify these "Spiking Customers" and desist from sending any "Spiking Customer" Sweepstakes Communications. PCH commonly violates this provision of the Agreement regarding "Spiking Customers" in those states entering the Agreement, and fails to monitor, identify and stop communications with consumers in states not participating in the Agreement. Furthermore, PCH encourages "spiking activity" by increasing the marketing materials sent to consumers in the lead up to a perceived sweepstakes.

39.     In short, PCH's business is to repeatedly obtain consumers' personal information with the goal to sell merchandise to them and to re-market their online behavior and personal information. PCH uses deceptive and misleading print and digital advertisements to entice consumers to use their website and purchase products based on form representations those purchases will enhance their chances of winning prizes and drawings.

PLAINTIFFS' CLASS ACTION COMPLAINT

## C.  PAPER MAILINGS

40.    Defendant sent paper mailings to one or more of the Plaintiffs that purposefully deceive consumers by intermingling enticements to enter a lottery, drawing or sweepstakes with advertisements and solicitations to order products. This intermingling is done with eye-catching graphics and advisements to order, making a consumer believe a purchase is necessary to enter the drawing. The mailings fail to indicate that no purchase is necessary to win. For example, PCH sent the following mailings:

      a. A "fair warning" that Plaintiffs have been placed on the "Winner Selection List" for a "$15,000,000 PRIZE OF A LIFETIME" drawing that was <u>provisional</u>. "Unless you respond as instructed, your number will be permanently removed from the list." After instructions to "Alert!  See Other Side" warning, the other side of the mailing advised the Plaintiffs the following:

YOU'RE A TOP CUSTOMER!

We value your continued loyalty and hope you choose one of our free offers and incredible deals along with our special ordering benefits from this notice.

      b. A "proof of Winner Selection List" that notifies the consumer they have been added to a Winner Selection List making them "Eligible to Win $1,000 A DAY FOR LIFE".

On the Reverse Side of the mailing, PCH advises the consumer to "Check out the colorful Win $1,000 A DAY FOR LIFE" flyer for some tempting <u>Deals on Scrumptious Treats</u> we think you'll LOVE!" and "Thank you so much for your recent Order! Won't you please try something else from the items offered in this bulletin? Now's a great time to treat yourself or to stock up on a thoughtful gift for someone special!

PLAINTIFFS' CLASS ACTION COMPLAINT

c. A mailing describing bank procedures in the event the consumer would win a huge lifetime prize, advising the consumer that the bank may have a "special large deposit receipt policy because deposits of this size are no ordinary event." The mailing also advises that "special funding of $1,000,000.00 prize over and above the $1,000.00 A Day For Life shown on TV for the 10/13 event has been authorized as an opportunity exclusively for recipients of this notice. It's our way of showing appreciation for your loyalty and letting you know we want you to keep up the good work." On the reverse side of the mailing, PCH counsel's consumers as follows:

Wondering if you should place an order? Take advice from some satisfied customers –

"Take it from me, when you purchase an item from PCH, you will be pleased!" – Holly Messinese

"I would encourage you all just to browse at least and I bet you will come across an item you just have to have. Place an order and . . . you will be pleased with 100% customer satisfaction." – Marquise Nelson

"I absolutely enjoy traditional shopping through the PCH mail . . . I have been completely satisfied with PCH products." – Janette Melaram

d. An "EXECUTIVE OVERRIDE" mailing that "[a] special upgrade to **DOUBLE** the standard prize amount that may be won on October 13th is hereby reserved and granted to recipients with a timely entry

from this Notice" authorizing the winner of an "October 13th Prize Award Event" $2,000 A-Day-For-Life." On the reverse side of the mailing, the consumer is advised as follows:

Your excellent order history distinguishes you as one of our most active customers, qualifying you for Presidential Preferred Status! Your responses show you really like our offers and we deeply appreciate your business. We review the records of customers like you on a regular basis to keep track of the kind of merchandise you buy and how often. That way, we can serve you better by offering new items and private deals we think will appeal to you.

We promise to keep trying hard to please our very best "Presidential Preferred" customers like you! We hope you'll find something you'd like to order today to show us we're on the right track."

e. A simulated check in the amount of $15,000,000, attached to a check stub advising "Loyal Entrants" that "to thank you for your faithful sweepstakes participation, look inside this Bulletin for a Special Appreciation Prize opportunity from Giveaway #10019, that's guaranteed to be awarded to a Loyal Entrant, someone like You!" On the reverse side of the mailing is an advertisement for a 12-LED Flexi-Head Lantern with an offer to Buy 1, Get 1 FREE" and a purchase sticker on the corner.

41.    PCH sent form mailings to one or more of the Plaintiffs and class members that purposefully deceive consumers by intermingling forms required for entry into a lottery, drawing or sweepstakes with the forms required for ordering products from PCH, and advising them to return an "Official Order-Entry Form".

PLAINTIFFS' CLASS ACTION COMPLAINT

For example, PCH sent form mailings advising one or more of the Plaintiffs of the following:

    a. A "Number for Lifetime Prize" mailing that advised consumers of a "Final Step" requirement to "TIMELY RETURN OF FORM W-61 (YOUR PAYMENT/OFFICIAL ENTRY VALIDATION & ORDER FORM) OR NUMBER WILL BE DROPPED FROM WINNER SELECTION LIST." The mailing also advises the consumer:

We thank you for your participation in our Sweepstakes. Your loyalty is appreciated and rewarded. **That's why we're now offering you an incredible opportunity to win an incredible Lifetime Prize with special cash payout: $7,000 A Week For Life PLUS $50,000 Upfront!** We've packed this bulletin with an all-new Loyal Customer assortment of over 70 items, including many with BIG SAVINGS and amazing FREE deals!

*Thanks for your order!*

    b. A form mailing advising consumers that "After all the times you've entered, this could end up being the all important one. Remember, right now your possible financial future is in your hands:

      1. YOUR ELIGIBILITY TO WIN $2,600,000.00 At Once Plus $5,000.00 A Week For Life from the number above will expire at the deadline.

      2. There's no reversing your decision

      3. Respond now and you could gain substantial benefits. If not, you risk missing out. Return your Official Order-

Entry Form TODAY!

   c. A "FAIR WARNING" from Defendants that if the consumer does not respond, their provisional number on the Winner Selection List will be permanently removed from the list, followed by an advisement that:

      We're not pleased when people throw away money, and unfortunately many have lost out on millions of dollars for failing to respond. That's why we urge you to review and return the enclosed Entry Validation & Order Form, should the matching winning number turn out to be yours, you'll win.

   d. A form mailing alerting the recipient of a sample excerpt of a "Winner's Agreement" entitling the consumer to a "$5,000 A Week Forever Superprize", then advising the consumer to do the following:

      Should your number match the winning number you'll receive an Official Winner's Agreement with your name typed in, granting you a $5,000 A Week "Forever" Superprize!

      But that could ONLY happen, by following these two steps:

      1. Follow the entry instructions on your Official Entry-Order Document.

      2. Return the document in the Official Reply Envelope by the deadline.

PLAINTIFFS' CLASS ACTION COMPLAINT

e.  A "REPORT OF PROGRESS" notice, alerting the recipient that only one response needed and advises the following:

The Progress Report below shows that the Prize Number assigned to you – XXXXXXXXXX – has already completed 3 of 4 processing steps to secure full eligibility to win a life-changing, $1,000 A Day For Life.

PROGRESS REPORT

| | |
|---|---|
| You were selected for this Bulletin and Matched with Prize Number XXXXXXX | **COMPLETED** |
| Prize Number passed Digital Verification Routine | **COMPLETED** |
| Prize Number accepted with all other Numbers for Winning Number Generator | **COMPLETED** |
| ONE RESPONSE NEEDED - - YOUR TIMELY RETURN OF ENCLOSED – **WAITING FOR** PERSONAL ORDER-ENTRY FORM. **COMPLETION!!** | |

**D.  DIGITAL MARKETING**

42.    Publishers Clearing House's online presence far surpasses the direct mail marketing efforts of years past. In correspondence with the 2015 U.S. Senate Special Committee on Aging Investigation, Publishers Clearing House indicated that their website obtains 5.8 million unique visitors per month, and approximately 445 million visitors are actively engaged with PCHSave&Win, which is an online site that provides coupons for a variety of PCH goods. The internet presence requires consumers to navigate through a variety of advertisements and interactive webpages

PLAINTIFFS' CLASS ACTION COMPLAINT

1  to enter a sweepstakes.

2       43.    PCH has continued the practices for which it was repeatedly sued by the

3  State Attorneys General actions and made the subject of the Senate Subcommittee

4  report, in that it:

5         a. Relays form messages that lead consumers to believe they are

6           somehow closer than others to winning a prize:

7            i. for those signing up for an account with PCH, account

8             holders amass an accumulation of points with no

9             purpose other than to create an increased expectation of

10            winning beyond other entrants although no increased

11            chances of winning occur;

12          ii. points/tokens are accrued with the "rewards" label

13            (indicating an increased opportunity to win);

14         iii. points/tokens are promised to become halfway to

15            "unlocking" the "next tier" of "extraordinary benefits";

16         iv. by entering into sweepstakes, more tokens are earned

17            with the appearance that greater chances are expected in

18            sweepstakes;

19          v. by only allowing customers to order one item per day,

20            PCH creates the atmosphere of exclusivity that comes

21            with enhanced opportunity to win sweepstakes/prizes;

22        b. PCH has made the following representations on their website

23          that created an expectation of winning a prize and/or

24          sweepstakes if the consumer uses PCH's website. Such

25          representations include the following:

26          i. PCH Search and Win pages reference PCH

27            Sweepstakes with other links to token accumulation,

28            "more ways to win";

    ii.  PCH Search and Win page indicates that by searching on PCH Search and Win, you could become the instant winner with $3,750 in prizes available now – "search now and you could become the next instant winner!";

    iii.  PCH Search and Win pages reference past winners of SuperPrize "who got winning Superprize entries at PCHSearch&Win!"

    iv.  PCH represents that "PCH Search & Win members who are logged in to their to PCHSearch&Win account receive a Superprize entry with their first search at PCHSearch&Win every day! Yes, you can get chances to win millions just for searching the internet as you normally would!"

    v.  PCH represents that "Make PCHSearch&Win part of your daily life! Follow These Winning Tips!"

    vi.  "Winners Spotlight" – "here are just a few of the many winners who got their winning entry using the PCHSearch&Win search engine!"

    vii.  "Douglas searched and won a tax-free $100,000.00!"

    viii.  "Recent Instant Winners" – "People Really Do Win! These PCHSearch&Win members won INSTANTLY just by searching the internet!"

c.  PCH has made the following representations to one or more of the Plaintiffs and class members:

    i.  customers are "selected to receive" a particular notice, such as a "Final Step Notice" to secure "an entry on the winner selection list."

    ii.  prize numbers are issued "solely to you"

PLAINTIFFS' CLASS ACTION COMPLAINT

   iii. messages give consumers the assumption they are about to win, like "Stay rich tips for new winners," and how to "buy and spend smart" and "contact a reputable accountant or financial advisor"

   iv. messages that personalize the chance to win with personalized messages with a reference to their individual accounts;

   v. notices indicate "You are not placing an Order!" giving consumers an indication that they will receive "special benefits" if an order is placed that others are "certain to claim"

   vi. with prize entries, PCH indicates that their "order activity will be reviewed weekly"

   vii. emails told the recipient that placing any order "would result in the customer rewards beginning instantly" and that the rewards go to a "top customer on file"

   viii. emails told the recipient that their prize number would has been "winner selection range" approved

   ix. emails told the recipient that someone with their initials must be declared a winner for a drawing

   x. emails refer to "insider info" as to how a prize will be delivered

   xi. emails represent that PCH does not tell prize winners they are "definitely" coming so that they keep the winning moment a surprise

   xii. emails refer to PCH looking for a winner "from" a specific giveaway

   xiii. emails suggest a winner will be selected from a pool of

PLAINTIFFS' CLASS ACTION COMPLAINT

1                                             "Special Early Look" entrants

2                        xiv.  emails suggest recipients receive "Triple Entries" by

3                               clicking on buttons and performing searches on PCH

4                               Search & Win

5                       xv.  emails suggest recipients can use PCH Search & Win to

6                               "collect your entries"

7                      xvi.  emails suggest ""2 of 3 compliance steps" to win the

8                               prize of a lifetime have already been completed for you"

9                               and request the Plaintiffs complete the third step to win

10                              the prize

11                    xvii.  emails suggest "failure to search" will result in the

12                               forfeiture of your forthcoming prize number

13                 xviii.  email suggests a notice with a prize patrol "elite seal"

14                             has arrived and recipient is a "Prize Patrol Elite Seal"

15                             recipient

16                    xix.  repeat emails entice recipients to enter a prize drawing

17                             that they have already confirmed being entered in

18             d.  PCH has made representations that a consumer's history of

19                  orders from PCH are tied to the consumer's odds of winning a

20                  prize. PCH's form communications:

21                     i.  contain messages that mislead consumers into believing

22                         previous, valid entries are at risk of forfeiture if

23                         consumers do not respond to PCH solicitations

24                   ii.  contain messages that consumers they were lucky to

25                         achieve a particular result

26                  iii.  omit or obscure disclosures that are required by the

27                       Deceptive Mail Prevention and Enforcement Act

28         44.   PCH sent emails to Plaintiffs and Class Members that deceived

PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs and Class Members into ordering merchandise by representing those orders would improve their chances of winning a prize. For example, PCH form emails sent to Plaintiffs and Class Members included the following representations:

      a. "Being a Valued Customer Could Really Pay Off"

      b. "We've reserved an EXCLUSIVE Cash Prize Just To Thank Past Orderers, Like You! This Opportunity is not for the General Public – And You've Earned It – So Please Don't Miss Out!"

      c. "$100,000 Contest Is ONLY Open To Valued Customers like you!"

45.    PCH form emails contained misleading and deceptive subject lines and headers. For example, PCH sent form emails with the following headers and subject lines:

      a. "Deposit of [Recipient's] Prize Number must be accepted!"

      b. "Payment Transfer Notice Alert - Authorized"

      c. "[Recipient] Will Become the Immediate Owner . . ."

      d. "Office of the Controller: Funds Authorized for Release on 10/13"

      e. "Less than 5% of Our Members Will Receive This, [Recipient]"

46.    PCH also failed to explain the mechanism of the sweepstakes, prizes and drawings conducted. Consumers are led to believe that with each prize entry they submit, they are entering into a sweepstakes in which a winner will be drawn. However, PCH assigns each entrant a number. A drawing is conducted in which PCH draws a random number taken from a pool of numbers beyond the numbers entered by consumers. As a result, consumers chances of winning are far less than they are

PLAINTIFFS' CLASS ACTION COMPLAINT

led to believe. PCH informs consumers they have not won a prize by informing them only after the drawing that "no winning number was returned." Upon information and belief, PCH draws numbers from those ineligible to win.

47.    PCH entices users by email to enter their prize, sweepstakes and lottery drawings. After a consumer enters the PCH drawings on multiple occasions, the consumer is presented with a screen that prevents the consumer from completing their entry form until they purchase a product.

48.    PCH also informs consumers that they have won a sweepstakes or drawing, informing plaintiffs and class members by email that they have won as much as $10,000. When the Plaintiffs responded to the email to claim their prize, they were informed that the email was sent by mistake and in fact, they had not won. PCH uses this tactic, upon information and belief, to entice consumers to continue entering sweepstakes and prizes.

## V.    CLASS ACTION ALLEGATIONS

49.    Plaintiffs incorporate all previous allegations as though fully set forth herein.

50.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

51.    Plaintiffs bring this case individually and as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a proposed class, as follows:

> All United States residents who, at any time during the three years prior to the filing of this action, entered and/or participated in a sweepstakes and purchased goods or services from Publishers Clearing House.

Excluded from the class definition are: (a) PCH and any of its officers, directors, and employees and any successors or assigns of same; (b) any person who has a pending suit against PCH for any claims asserted herein or who has compromised such a claim; (c) any current or former person that purchased any consumer goods from

PCH who subsequently has undergone personal bankruptcy; and (d) any judicial officer or court personnel in this action and their families through the third degree of relationship.

52.   The members of the class are similarly situated to Plaintiffs.

53.   The class consists of thousands of persons.

54.   Common questions of law and fact exist with respect to the class. They include:

a.   Whether PCH violated the Deceptive Mail Prevention and Enforcement Act;

b.   Whether PCH falsely represented to consumers that they had won a prize;

c.   Whether PCH deceptively promised winning sweepstakes to entice consumers into buying their goods;

d.   Whether PCH relayed messages to some consumers that they were closer to winning sweepstakes prizes than other consumers;

e.   Whether PCH included order forms with sweepstakes entry forms;

f.   Whether PCH represented that consumers will get special benefits if they order goods from the PCH's website;

g.   Whether PCH represented that placing an order would result in "top customer benefits"

h.   Whether PCH represented to consumers that they would forfeit prize entries if they failed to order goods;

i.   Whether PCH represented to consumers that they would forfeit prize entries if they failed to take some other action, such as searching the internet on PCH's website;

j.   Whether PCH represented that the consumers' history of orders was linked to their chances of winning a prize;

k.   Whether PCH violated the Can Spam Act;

PLAINTIFFS' CLASS ACTION COMPLAINT

l. Whether PCH distributed emails with deceptive subject lines and headings;

m. Whether PCH distributed emails without offering recipients the option to opt-out or unsubscribe from further distribution;

n. Whether PCH violated the New York General Business Law § 349;

o. Whether PCH represented that purchasing a product would enhance the consumer's chances of winning a sweepstakes, prize or drawing;

p. Whether PCH represented that a consumer's ordering history with PCH would enhance the consumer's chances of winning a sweepstakes, prize or drawing;

q. Whether PCH violated the New York General Business Law § 369e;

r. Whether PCH violated the Consent Agreements reached with the State Attorneys General of 2000, 2001, 2010

s. Whether PCH represented to consumers that they will win, are close to winning, or that his or her winning is imminent;

t. Whether PCH represented to consumers that they had been specially selected to receive a sweepstakes entry opportunity;

u. Whether PCH represented to consumers that they were among a select group with an enhanced chance of winning or were more likely to win than other entrants in that group;

v. Whether PCH represented that the elimination of other persons had enhanced his or her chances of winning a prize (other than by reason of the failure of others to enter.

55.   The common issues of law and fact of the class members are very similar and are the most significant issues in the case. These common issues predominate over any individual issues, and they can be resolved for all members of the class in one action.

PLAINTIFFS' CLASS ACTION COMPLAINT

56.     Plaintiffs' claims are typical of the claims of the Class Members and the factual and legal bases for the claims are similar.

57.     Plaintiffs will fairly and adequately represent the interests of the Class in that:

  a.  Plaintiffs' interests do not conflict with those of the Class Members. Plaintiffs do not have any relationship with PCH except as a consumer of and purchaser of the services as described.

  b.  Plaintiffs and their attorneys have adequate legal and financial resources to prosecute this action diligently. Plaintiffs' counsel can advance the costs of this action.

  c.  Plaintiffs' attorneys are competent and experienced in class action litigation.

58.     A class action is the superior method for adjudicating the claims asserted herein, and a class action will provide a fair and efficient method of adjudicating this controversy. The management of this litigation as a class action will not present any undue difficulties.

59.     The claims asserted herein are "negative value" claims (it would cost more to litigate them individually than could be recovered individually), making prosecution of the claims in separate actions by individual members of the class financially impracticable.

60.     Separate prosecution of the claims would also be burdensome and inefficient for counsel and the Court.

## VI.    CLAIMS ARE NOT GOVERNED BY ARBITRATION

61.     PCH's mailed paper pieces do not contain an arbitration clause. Therefore, for those plaintiffs purchasing products via paper mailings, no arbitration agreement was reached between the Plaintiffs and PCH.

PLAINTIFFS' CLASS ACTION COMPLAINT

62.   PCH maintained a webpage titled "Terms of Use" that included a paragraph titled "32. Governing Law, Forum and Arbitration." Said paragraph stated the following:

> This Agreement is made in, and shall be governed by the laws of the State of New York, excluding its conflicts-of-law principles. You agree that in the event of any dispute which arises between the parties relating to this Agreement which the parties are unable to resolve, said dispute shall be submitted solely and exclusively to arbitration pursuant to the commercial arbitration rules of the American Arbitration Association. Said dispute shall be submitted individually by You, and shall not be subject to any class action status. You hereby waive any and all rights to claim punitive, incidental, or consequential damages, attorney's fees and costs and/or the right to have any actual damages multiplied or increased for any reason. You agree that the only damages to which You will be entitled shall be Your actual damages associated with this Agreement. Said arbitration shall occur exclusively in the city and county of New York. All lawsuits, causes of action, disputes or other proceedings not subject to arbitration as a matter of law, if any, shall be brought exclusively in the state or federal courts located in the city and county of New York and You hereby irrevocably submit and consent to the personal jurisdiction of such courts and waive any objections in the nature of inconvenient forum.

63.   This arbitration provision did not constitute a binding contract.

64.   This arbitration provision failed to provide constructive notice to the prospective consumers of the Terms of the Use page as the Terms of Use hyperlink

was in 9 point font in gray text at the bottom of each webpage, far below and separated from the hyperlink to continue using the webpage and required users to scroll down to another screen to see the Terms of Use link.

65.    A consumer's use of the PCH webpage did not manifest assent to the Terms of Use where the only references to the Terms of Use required users to scroll down to see the Terms of Use, but did not require users to scroll down to browse the remainder of the page.

66.    The Terms of Use webpage constitutes an impermissible "browsewrap" construction that does not present the user with the Terms of Use on the same webpage as the link for continued use of the page.

67.    The Arbitration provision is procedurally unconscionable because the Plaintiffs were not offered the ability to negotiate, its terms were not clearly communicated and their harshness would come as a surprise to reasonable consumers.

68.    The Arbitration provision is substantively unconscionable because among other items: (1) it requires users from around the country to attend arbitrations in a distant forum, the State of New York; and (2) it contains a unilateral modification provision that permits PCH to alter the terms of the arbitration clause at any time with no notice to the consumer and the severe limitations of remedies.

## VII.   CAUSES OF ACTION

## COUNT I – VIOLATION OF DECEPTIVE MAIL PREVENTION AND ENFORCEMENT ACT 39 U.S.C. § 3001 et seq.

69.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

70.    The Deceptive Mail Prevention and Enforcement Act requires that sweepstakes materials sent through the mails:

      a.  Must not indicate that a person is a winner if a person has not actually

won;

b.  Must not require that sweepstakes entries be accompanied by orders or payments for previously ordered goods or products;

c.  Requires any solicitation to enter a sweepstakes or contest must contain the following information:

i.the official rules;

ii.all terms and conditions for participating in the sweepstakes or contest;

iii.the entry process;

iv.the name of the sponsor or mailer of the sweepstakes;

v.the contact information for the sponsor or mailer of the sweepstakes;

d.  The official rules must include:

i.the estimated numerical odds of winning;

ii.the number of prizes to be awarded;

iii.the estimated retail value of the prizes to be awarded;

iv.the nature of the prizes to be awarded; and

v.the schedule of payments if the prize is paid over time.

e.  Sweepstakes solicitation mailings must include statements that no purchase is necessary to win and statements that purchasing the sponsors' products will not increase one's chances of winning. These statements must meet the following requirements:

i.They must be more conspicuous than the other required disclosures; and

ii.They must appear in the following three places in a mailing:

1. in the solicitation letter;

PLAINTIFFS' CLASS ACTION COMPLAINT

2.  in the order or entry form; and

3.  in the official rules

f.    All sweepstakes disclosures mandated by the law must be made in a "clear and conspicuous" manner that is "readily noticeable, readable, and understandable" to recipients;

71.    The mailed documents described above are "entry materials for a sweepstakes" as defined in the Deceptive Mail Prevention and Enforcement Act.

72.    The Deceptive Mail Prevention and Enforcement Act requires that entry materials for a sweepstakes shall contain a statement that no purchase is necessary to enter such sweepstakes. 39 U.S.C. § 3001 (k)(3)(A)(i) & (ii)(I).

73.    The Deceptive Mail Prevention and Enforcement Act requires that entry materials for a sweepstakes shall contain a statement that entry will not improve an individual's chances of winning with such entry. 39 U.S.C. § 3001 (k)(3)(A)(ii)(II).

74.    The Deceptive Mail Prevention and Enforcement Act requires that entry materials for a sweepstakes shall not represent that individuals not purchasing products or services may be disqualified from receiving future sweepstakes mailings. 39 U.S.C. § 3001 (k)(3)(A)(ii)(VI).

75.    Deceptive Mail Prevention and Enforcement Act requires that any mailing including a facsimile check shall contain a statement on the "check" that it is not a negotiable instrument and has no cash value. 39 U.S.C. § 3001 (k)(3)(C).

76.    PCH violated the Deceptive Mail Prevention and Enforcement Act, 30 U.S.C. § 3001 et seq. in that it:

a.    Mailed documents to Plaintiffs and Class Members that included an entry for a sweepstakes that did not include a statement that no purchase was necessary to enter into the sweepstakes.

b.    Mailed documents to Plaintiffs and Class Members that included an entry for a sweepstakes but did not include a statement that entry would not improve an individual's chances of winning;

c.      Mailed documents to Plaintiffs and Class Members that included statements and/or representations that individuals not purchasing products or services may be disqualified from future sweepstakes mailings.

d.      Mailed facsimile checks to Plaintiffs and Class Members that failed to include a statement on such check that the such check was not a negotiable instrument and had no cash value.

e.      Mailed solicitation mailings that failed to include disclosures that were more conspicuous than other required disclosures;

f.      Mailed solicitation mailings with disclosures that were not in the solicitation letter, order or entry form and official rules;

g.      PCH puts disclosures, including eligibility requirements, sweepstakes rules, and privacy policies, at end of each email, rather than at beginning of the email or marketing correspondence.

h.      PCH digital communications represented to consumers that they won a prize when they did not win a prize;

i.      PCH digital communications failed to disclose in a conspicuous manner that no order was necessary in order to enter the sweepstakes and/or prize drawings.

j.      PCH failed to include the official rules of the sweepstakes and/or prize drawings in their digital solicitations.

k.      PCH failed to communicate in their digital mailings that no purchase was necessary to win.

l.      PCH failed to communicate in their digital mailings that purchasing their products would not increase their customers' chances of winning.

m.      For any PCH communications that did communicate that no

PLAINTIFFS' CLASS ACTION COMPLAINT

1                        purchase was necessary to win or that their products would not

2                        increase the customer's chances of winning, the disclosures

3                        were not more conspicuous than the other disclosures.

4      77.    As a result of PCH's repeated violations of the Deceptive Mail

5 Prevention & Enforcement Act, the Plaintiffs purchased products from the Defendant

6 they would have never otherwise purchased, thereby suffering financial losses

7 entitling them to compensatory damages and are also entitled to statutory penalties

8 and costs as set forth below.

9

10                 **COUNT II – VIOLATIONS OF THE CAN SPAM ACT**

11                       **15 U.S.C. § 7701 et seq.**

12      78.    Plaintiffs incorporate the allegations above as though fully set forth

13 herein.

14      79.    The Can Spam Act, codified at 15 U.S.C. § 7701, governs the use of

15 commercial electronic mail messages, "emails," to promote a commercial product or

16 service.

17      80.    PCH, upon information and belief, initiated and/or transmitted multiple

18 commercial electronic mail messages, "email messages" to the Plaintiffs on a daily

19 basis, and is estimated to send hundreds of thousands, if not millions, of emails to

20 customers and prospective customers on a daily basis, as those terms are defined in

21 the Can Spam Act, 15 U.S.C. § 7701.

22      81.    The Plaintiffs were "recipients" of the emails as that term is defined in

23 the Can Spam Act, 15 U.S.C. § 7702 (14).

24      82.    PCH was a "sender" of emails as that term is defined in the Can Spam

25 Act, 15 U.S.C. §7702 (16).

26      83.    The emails transmitted by PCH to the Plaintiffs were not "transactional

27 or relationship" messages, as those terms are defined in the Can Spam Act, 15 U.S.C.

28 § 7702 (17).

84.     The Plaintiffs did not provide affirmative consent to receive deceptive emails without clear and conspicuous notice that the message was an advertisement or solicitation.

85.     The Can Spam Act requires that messages must contain clear and conspicuous notice that the message is an advertisement or solicitation.

86.     The Can Spam Act prohibits misleading headers or "subject line" information, 15 U.S.C. § 7703(a)(3) and 15 U.S.C. § 7704 (a)(1)(A).

87.     The Can Spam Act includes provisions that govern how a promoter may collect and use an entrants personal information.

88.     PCH violated the Can Spam Act in that it:

    a.     Sent Plaintiffs and Class Members emails that contained misleading and deceptive header and/or subject lines;

    b.     Failed to identify their emails as an advertisement or solicitation in a clear and conspicuous manner;

    c.     Informed Plaintiffs and Class Members that they were the winners of a grand prize when they did not win;

89.     Based on the facts alleged in this Count, PCH has violated the Can Spam Act, and Plaintiff and Class Members the Plaintiffs purchased products from the Defendant they would have never otherwise purchased, thereby suffering financial losses and are entitled to recover damages including compensatory damages and statutory penalties and costs.  PCH's violations in this regard have been pervasive, persistent and longstanding.

## COUNT III – VIOLATIONS OF NEW YORK DECEPTIVE ACTS AND PRACTICES LAW – N.Y.G.B.S. LAW § 349

90.     Plaintiffs incorporate the previous allegations as though fully set forth herein.

91.     Plaintiffs and Class Members are "persons" as defined in New York

PLAINTIFFS' CLASS ACTION COMPLAINT

General Business Law § 349 et seq.

92.    PCH is a "person" and/or a "corporation" as defined in New York General Business Law §349 et seq.

93.    Section 349 et seq. prohibits deceptive acts or practices in the conduct of any business, trade or commerce in the state of New York and makes those acts or practices unlawful.

94.    PCH engaged in a consumer-oriented business, trade or commerce within the meaning of Section 349 et seq.

95.    PCH violated the New York General Business Law § 349 et seq., as described above, including, but not limited to the following:

    a.  By inducing Plaintiffs and Class Members through its deceptive marketing to purchase goods from PCH as a prerequisite to enter a sweepstakes;

    b.  By inducing Plaintiffs and Class Members to purchase goods through its deceptive marketing by representing to Plaintiffs and Class Members that purchasing a product will increase their chances of winning;

    c.  By inducing Plaintiffs and Class Members through its deceptive marketing that purchasing goods from PCH will improve, enhance, or better their odds of winning a drawing, sweepstakes, or prize beyond other consumers or the general public;

    d.  By repeatedly violating the letter and spirit of Consent Agreements with State Attorneys General.

    e.  By engaging in the acts and practices found by the Senate Special SubCommittee on Aging to be misleading and deceptive as described above.

PLAINTIFFS' CLASS ACTION COMPLAINT

f.  By violating the Deceptive Mail Prevention and Enforcement Act with respect to the paper mailings sent to Plaintiffs and Class Members as described in Count I above;

g.  By violating the principles and standards of the Deceptive Mail Prevention and Enforcement Act as it applies to paper mailings with respect to the digital mailings sent to Plaintiffs and Class Members;

h.  By violating the Can Spam Act as described in Count II above;

i.  By the deceptive marketing tactics otherwise described above.

96.     The Plaintiffs and Class Members seek damages according to Section 349 for actual damages, restitution, punitive damages, court costs and attorney's fees and any other relief the Court deems just and proper.

## COUNT IV – VIOLATIONS OF NEW YORK FALSE ADVERTISING LAW – N.Y.G.B.S. LAW § 369e

97.     Plaintiffs incorporate the previous allegations as though fully set forth herein.

98.     Plaintiffs and Class Members are "persons" as defined in New York General Business Law § 369e et seq.

99.     PCH is a "person" and/or a "corporation" as defined in New York General Business Law §369e et seq.

100.    The New York General Business Law § 369e, makes unlawful any false and/or deceptive advertising in the sale of consumer products or services sold in connection with the opportunity to receive gifts, prizes or gratuities from a game, contest or other promotion.

101.    PCH violated the New York General Business Law, Section 369e by engaging in false advertising as described above and as follows:

a.  By additionally inducing Plaintiffs and Class Members to purchase products using deceptive marketing practices as described above;

PLAINTIFFS' CLASS ACTION COMPLAINT

b. By misrepresenting the character, extent and type of their business;

c. By making false and misleading statements in their advertising, including but not limited to, statements that no purchase was necessary to enter the sweepstakes;

d. By making false and misleading statements in their advertising including, but not limited to, statements that a purchase was necessary to enter the sweepstakes;

e. By failing to conspicuously disclose the price of goods sold;

f. By initiating or advertising in an unsolicited commercial email advertisement;

g. By sending email advertisements with subject lines that are likely to mislead a recipient about a material fact or content of the subject message;

h. By representing directly or by implication that the number of participants has been significantly limited and that a particular person has been selected to win a prize.

i. By representing that Plaintiffs and Class Members' entry confers or will confer an advantage upon the Plaintiffs and Class Members that other recipients will not have, that the recipient is more likely to win a prize than are others, or that the number, ticket, or other entry has some value that other entries do not have;

j. By using or distributing simulated checks without including the required disclosure "Specimen – NonNegotiable" in clear and conspicuous fashion;

k. By inducing Plaintiffs and Class Members through its deceptive marketing to purchase goods from PCH as a prerequisite to enter a sweepstakes;

l.  By inducing Plaintiffs and Class Members to purchase goods through its deceptive marketing by representing to Plaintiffs and Class Members that purchasing a product will increase their chances of winning;

m. By inducing Plaintiffs and Class Members through its deceptive marketing that purchasing goods from PCH will improve, enhance, or better their odds of winning a drawing, sweepstakes, or prize beyond other consumers or the general public;

n.  By repeatedly violating both the letter and the spirit of Consent Agreements with State Attorneys General.

o.  By engaging in the acts and practices found by the Senate Special SubCommittee on Aging to be misleading and deceptive as described above.

p.  By violating the Deceptive Mail Prevention and Enforcement Act with respect to the paper mailings sent to Plaintiffs and Class Members as described in Count I above;

q.  By violating the principles and standards of the Deceptive Mail Prevention and Enforcement Act as it applies to paper mailings with respect to the digital mailings sent to Plaintiffs and Class Members;

r.  By violating the Can Spam Act as described in Count II above;

s.  By violating the New York General Business Law § 349 et seq.;

t.  By the deceptive marketing tactics otherwise described above.

102.   As a result of PCH's violations of the New York General Business Law, Section 369e, the Plaintiffs and Class Members purchased products from the Defendants they would have never otherwise purchased and hereby seek damages for actual damages, restitution, punitive damages, statutory penalties including treble damages and costs, court costs and attorneys' fees and any other relief the Court deems just and proper.

PLAINTIFFS' CLASS ACTION COMPLAINT

## **CONCLUSION**

WHEREFORE, Plaintiffs, on behalf of themselves and Class members, pray for relief as follows:

A.      For an order that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that the above-described class be certified, that Plaintiffs be appointed Class representatives, and that Plaintiffs' counsel be appointed as counsel for the Class;

B.      For an order requiring PCH to pay actual damages in an amount to be determined at trial;

C.      Under Count I, for actual damages sustained by Plaintiffs and Class members as a result of violations of the Deceptive Mail Prevention and Enforcement Act, including any amounts paid by Plaintiffs and Class members to PCH, and punitive damages as the Court deems proper; costs and attorneys' fees;

F.      Under Count II, for compensatory damages, as well as statutory penalties and costs for violations of the Can-Spam Act;

G.      Under Count III, for actual damages sustained by Plaintiffs and Class Members as a result of violations of New York General Business Law §349 and for restitution, treble damages, court costs, attorney's fees and any other relief the Court deems just and proper;

H.      Under Count IV, for actual damages sustained by Plaintiffs and Class Members as a result of violations of New York General Business Law §369e and for restitution, treble damages, court costs, attorney's fees and any other relief the Court deems just and proper;

I.  On all counts, for an award of the costs of suit incurred herein, including expert witness fees;

J.  On all counts, for an award of interest, including prejudgment interest, at

PLAINTIFFS' CLASS ACTION COMPLAINT

1    the legal rate; and

2    K.  For such other and further relief as this Court deems just and proper.

3

4                    **REQUEST FOR JURY TRIAL**

5
     Plaintiffs request a trial by jury on all issues.
6

7    Dated this 20th day of April, 2018.

8
                                         **ZECCOLA & SELINGER, LLC**
9
                                         s/ John S. Selinger
10                                        John S. Selinger
                                         NY Bar No. 2663698
11                                        2127 Crompond Rd.
                                         Suite 205
12                                        Cortlandt Manor, NY 10567
                                         (914) 402-7290
13                                        (914) 737-4260
                                         john@zslawyers.com
14

15                                        **SCHWABA LAW FIRM**

16                                        s/ Andrew J. Schwaba
                                         Andrew J. Schwaba
17                                        NC Bar No.:  36455
                                         212 North Tryon Street
18                                        Suite 1725
                                         Charlotte, NC 28281
19                                        (704) 370-0220
                                         (704) 370-0210 (fax)
20                                        aschwaba@verdictnc.com
                                         *(pro hac vice motion to be filed*)
21
                                         **NICHOLSON LAW FIRM, P.A.**
22
                                         s/ Edward H. Nicholson, Jr.
23                                        Edward H. Nicholson, Jr.
                                         NC Bar No. 36123
24                                        212 North Tryon Street
                                         Suite 1725
25                                        Charlotte, NC 28281
                                         (704) 223-2406 (telephone)
26                                        nicholsonshumaker@att.net
                                         *(pro hac vice motion to be filed*)
27

28                                        *Attorneys for Plaintiffs*

                                         PLAINTIFFS' CLASS ACTION COMPLAINT