**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

EARL WRIGHT, RAMONA HOLDEN,
ETTA WILLIAMS, MICHAEL HAMILTON,
JOSEPH EKO, LINDA PHILLIPS, ELAINE
WILHELM, ANTHONY GILLESPIE, MARK
CARLISLE, VERNITA JESSIE, CHERYL
RIFE, SANDY SAMENS, RUTHIE ORTIZ
SOUDJIAN,

                Plaintiffs,

    v.

PUBLISHERS CLEARING HOUSE,
INCORPORATED and PUBLISHERS
CLEARING HOUSE, LLC,

                Defendants.

Case No. 2:18-cv-02373 (ADS)(AYS)


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO DISMISS COMPLAINT, STRIKE CLASS
## <u>ALLEGATIONS AND, IN THE ALTERNATIVE, COMPEL ARBITRATION</u>

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Defendants Publishers*
*Clearing House, Incorporated and*
*Publishers Clearing House, LLC*

# TABLE OF CONTENTS

FACTS ........................................................................................................................... 1

SUMMARY OF ARGUMENT ..................................................................................... 3

STANDARD OF REVIEW .............................................................................................. 4

ARGUMENT .................................................................................................................. 6

I.   THERE IS NO PRIVATE RIGHT OF ACTION UNDER THE CAN-SPAM ACT OR GBL SECTION 369(e) .......................................................................... 6

   A.   Plaintiffs Lack Standing to Enforce the CAN-SPAM Act (Count II) ...................... 6

   B.   Plaintiffs Lack Standing to Bring a Claim Under New York's False Advertising Law, General Business Law Section 369(e) (Count III) ..................... 6

II.   PLAINTIFFS LACK STANDING AND HAVE FAILED TO STATE A CLAIM UNDER THE DMPEA OR GBL SECTION 349 .................................................. 7

   A.   Plaintiffs Have Failed to Allege Facts Sufficient to Support Standing or a Claim for Relief Under the DMPEA (Count I) ......................................................... 7

   B.   Plaintiffs Lack Standing Under GBL Section 349 Because They Are Not New York Residents and No Harm Is Alleged to Have Occurred in New York (Count IV) ......................................................................................................... 8

   C.   Plaintiffs Have Failed to Allege Facts Sufficient to State a Claim for Relief Under GBL Section 349 (Count IV) ........................................................................ 9

III.   THE CLASS ALLEGATIONS SHOULD BE STRICKEN ................................. 13

IV.   PLAINTIFFS' CLAIMS CONCERNING ONLINE ADVERTISEMENT ARE SUBJECT TO INDIVIDUAL ARBITRATIONS ................................................. 15

   A.   Plaintiffs Agreed to a Valid and Binding Arbitration Agreement .......................... 16

      1.   Notice of the Arbitration Provision Is Reasonably Conspicuous .............. 16

      2.   Plaintiffs' Manifestation of Assent Was Unambiguous as a Matter of Law ......................................................................................................... 18

   B.   The PCH Arbitration Provision Is Not Unconscionable ....................................... 19

   C.   The Action Should Be Stayed in Favor of Arbitration .......................................... 21

CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. American Home Mortg. Servicing, Inc.*,
   947 F. Supp. 2d 222 (E.D.N.Y. 2013) ............................................................11, 12

*Aerospace, Inc. v. CIS Air Corp.*,
   352 F.3d 775 (2d Cir. 2003)........................................................................19

*Ali v. New York City Envtl. Control Bd.*,
   2015 WL 7281633 (E.D.N.Y. Nov. 16, 2015)...............................................5

*All. For Envtl. Renewal, Inc. v. Pyrmaid Crossgates Co.*,
   436 F.3d 82 (2d Cir. 2006).........................................................................5

*Am. Express Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304 (2013)..............................................................................15

*Amiron Dev. Corp. v. Sytner*,
   2013 WL 1332725 (E.D.N.Y. Mar. 29, 2013).............................................11

*In re Amla Litig.*,
   282 F. Supp. 3d 751 (S.D.N.Y. 2017).........................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................5

*AT&T Mobility, LLC v. Concepcion*,
   131 S. Ct. 1740 (2011)..............................................................................15

*Berkson v. Gogo LLC*,
   97 F. Supp. 3d (E.D.N.Y. 2015) ...........................................................19, 20

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
   2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017)........................................17, 18, 21

*Broder v. MBNA Corp.*,
   281 A.D.2d 369 (1st Dep't 2001) ...............................................................10

*Brower v. Gateway 2000, Inc.*,
   246 A.D.2d 246 (1st Dep't 1998) ...............................................................20

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006)..................................................................................21

*Carter v. HealthPort Techs., LLC,*
   822 F.3d 47 (2d Cir. 2016).............................................................................5

*Dash v. Seagate Tech. U.S. Holdings, Inc.,*
   27 F. Supp. 3d 357 (E.D.N.Y. 2014) ...........................................................10

*Dean Witter Reynolds, Inc. v. Byrd,*
   470 U.S. 213 (1985)......................................................................................15

*Derbaremdiker v. Applebee's Int'l, Inc.,*
   2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012), *aff'd,* 519 F. App'x 77 (2d Cir.
   2013) .............................................................................................................11

*Dowden v. Readers Digest Ass'n., Inc.,*
   2002 WL 31548776 (N.D. Tex. Nov. 12, 2002)..............................................7

*Eze v. JPMorgan Chase Bank NA,*
   2010 WL 3189813 (E.D.N.Y. Aug. 11, 2010).........................................5, 11

*Fedotov v. Peter T. Roach & Assocs., P.C.,*
   354 F. Supp. 2d 471 (S.D.N.Y. 2005)..........................................................13

*Fink v. Time Warner Cable,*
   714 F.3d 739 (2d Cir. 2013)..........................................................................10

*Freeman v. Time, Inc.,*
   68 F.3d 285 (9th Cir. 1995) ..........................................................................18

*Fteja v. Facebook, Inc.,*
   841 F. Supp. 2d 829 (S.D.N.Y. 2012)...........................................................18

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   903 F.2d 176 (2d Cir. 1990)..........................................................................14

*Gillman v. Chase Manhattan Bank, N.A.,*
   73 N.Y.2d 1 (1988) .......................................................................................19

*Gordon v. Virtumundo, Inc.,*
   575 F.3d 1040 (9th Cir. 2009) ........................................................................6

*Goshen v. Mutual Life Ins. Co. of N.Y.,*
   98 N.Y.2d 314 (2002)..................................................................................8, 9

*Harris v. Publishers Clearing House,*
   2016 WL 1366654 (M.D. Tenn. Apr. 6, 2016)................................................7

*Jennifer Matthew Nursing & Rehab. Ctr. v. U.S. Dep't of Health and Human Servs.*,
607 F.3d 951 (2d Cir. 2010)..............................................................................4

*Johnpoll v. Thornburgh*,
898 F.2d 849 (2d Cir. 1990).............................................................................15

*Katz v. Cellco P'ship*,
794 F.3d 341 (2d Cir. 2015).............................................................................21

*Kaufman v. Sirius XM Radio, Inc.*,
474 F. App'x 5, 7-8 (2d Cir. 2012) ...................................................................9

*Madorsky v. Does*,
2006 WL 1587349 (N.D. Ohio June 8, 2006)....................................................6

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)...............................................................................4

*McLaughlin v. Am. Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008).............................................................................14

*Meyer v. Uber Technologies, Inc.*,
868 F.3d 66 (2d Cir. 2017)...................................................................... *passim*

*Morrison v. Nat'l Bank Ltd.*,
547 F.3d 167 (2d Cir. 2008)...............................................................................4

*Moss v. BMO Harris Bank, N.A.*,
258 F. Supp. 3d 289 (E.D.N.Y. 2017) .............................................................12

*Nelson v. MillerCoors, LLC*,
246 F. Supp. 3d 666 (E.D.N.Y. 2017) .............................................................12

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016).............................................................................16

*Oom v. Michaels Companies Inc.*,
2017 WL 3048540 (W.D. Mich. July 19, 2017)...............................................13

*Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) .......................................................................................10

*Ott v. Mortg. Investors Corp. of Ohio*,
2014 WL 6851964 (D. Or. Dec. 3, 2014) ........................................................13

*Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*,
2009 WL 1119409 (S.D.N.Y. Apr. 26, 2009).....................................................9

*Pilgrim v. Universal Health Card, LLC*,
 660 F.3d 943 (6th Cir. 2011) ............................................................13

*Plazza v. Airbnb, Inc.*,
 289 F. Supp. 3d 537 (S.D.N.Y. 2018)................................................16

*Ragone v. Atl. Video at Manhattan Ctr.*,
 595 F.3d 115 (2d Cir. 2010)...............................................................20

*Matter of Rhone-Poulenc Rorer, Inc.*,
 51 F.3d 1293 (7th Cir. 1995) .............................................................14

*Rhulen Agency, Inc. v. Alabama Ins, Guar Ass'n*,
 896 F.2d 674 (2d Cir. 1990)..................................................................5

*Ruston v. Town Bd. for Town of Skaneateles*,
 610 F.3d 55 (2d Cir. 2010)..................................................................10

*Saphirstein v. Mauzone Mania LLC*,
 2017 WL 3278893 (E.D.N.Y. Jul. 31, 2017) .....................................11

*Schlessinger v. Valspar Corp.*,
 21 N.Y.3d 166 (2013) ..........................................................................12

*Schnabel v. Trilegiant Corp.*,
 697 F.3d 110 (2d Cir. 2012).................................................................19

*Sidney-Vinstein v. A.H. Robins Co.*,
 697 F.2d 880 (9th Cir. 1983) ..............................................................13

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*,
 642 F. Supp. 2d 167 (S.D.N.Y. 2009)...................................................9

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016)............................................................................5

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
 752 F.3d 239 (2d Cir. 2014)..................................................................4

*Warth v. Seldin*,
 422 U.S. 490 (1975)................................................................................9

*Worldhomecenter.com, Inc. v. KWC Am., Inc.*,
 2011 WL 4352390 (S.D.N.Y. Sept. 15, 2011)......................................7

*Wynn v. N.Y. City House. Auth.*,
 314 F.R.D. 122 (S.D.N. Y. 2016) ..................................................14, 15

**Statutes**

9 U.S.C. §§ 2, 3 ................................................................................................................15

15 U.S.C. § 7701, *et seq* .................................................................................................6

39 U.S.C. § 3001, *et seq* .................................................................................................7

New York General Business Law, §§ 349, 369 ...................................................3, 5, 6, 12

**Rules**

Fed. R. Civ. P. 8 ..............................................................................................................9

Fed. R. Civ. P. 12 .......................................................................................4, 5, 13, 22

Fed. R. Civ. P. 23 ........................................................................................3, 4, 14

**Other Authorities**

American Arbitration Association, "Commercial Arbitration Rules and Mediation
      Procedures" ...........................................................................................................20

# FACTS

Plaintiffs are residents of various states outside of New York. They have filed this putative class action against Publishers Clearing House, Incorporated and Publishers Clearing House, LLC (collectively referred to as "Defendants" or "PCH").

PCH has operated one of the world's most popular sweepstakes since the late 1960's. PCH was founded as a family business in 1953, and has grown to employ over 550 full-time employees. PCH OVERVIEW, https://info.pch.com/pch-overview/ (last visited May 23, 2018). Its sweepstakes is a household name, and to date, nearly $400 million has been awarded in prize money. *Id*. Over 40% of PCH's profits go directly to benefit charities. *Id*.

Plaintiffs allege, in general and conclusory fashion, that PCH used deceptive marketing tactics to induce Plaintiffs and absent class members to purchase products on the belief that doing so would enhance their chances of winning the sweepstakes, when in fact no purchase is necessary to enter the sweepstakes and buying does not help one win. (*See*, *e.g.*, Cmplt, ¶¶ 1, 37, 40-48.)

Plaintiffs claim to have received advertising materials from PCH at unspecified times in the past. (*Id.*, ¶¶ 3-16.) Plaintiffs generally allege that both PCH's paper mailings and online digital marketing contain deceptive statements. (*Id.*, ¶¶ 40-48.) The allegations about what the Plaintiffs received are conclusory and virtually identical, generally alleging that each Plaintiff "purchased products with Publisher's Clearing House after receiving representations that his purchases would enhance his chances of winning a PCH drawing." (*Id.*, ¶ 7; *see id.*, ¶¶ 3-16.) But there are no allegations that describe what particular marketing materials any particular Plaintiff received. (*See generally*, *id.*, ¶¶ 3-16, 40-48.)

None of the Plaintiffs alleges that he or she ever asked to be removed from PCH's distribution list to receive these types of materials. (*Id.*, ¶¶ 3-16.)

The Complaint goes on to provide snippets or summaries of varying paper advertisements alleged to be deceptive (*id.*, ¶¶ 40-41), but nowhere contains any complete advertisement (*see id.*), and nowhere alleges how any particular Plaintiff was misled by a particular advertisement. The Complaint alleges, again in conclusory fashion, that the paper mailings "fail to indicate that no purchase is necessary to win." (*Id.*, ¶ 40.)

Similarly, with respect to Plaintiffs' allegations of online deception, the allegations consist merely of summaries and short quotations from advertisements. (*Id.*, ¶¶ 43-45.) The Complaint fails to allege that any particular Plaintiff viewed any particular online advertisement or how any particular Plaintiff was misled by a particular advertisement or quotation.

Plaintiffs seem to further base their claims of online deception on the mechanics of the sweepstakes, alleging that Defendants "failed to explain the mechanism of the sweepstakes, prizes and drawings conducted." (*Id.*, ¶ 46.) However, this allegation is based "upon information and belief" and the Complaint does not cite any particular advertisement that is alleged to have been received by any of the Plaintiffs that fails in that regard or how the description of the sweepstakes in any particular advertisement is alleged to be inaccurate. (*Id.*)

Plaintiffs concede that the PCH website contains an arbitration clause in its Terms of Use ("TOU") under paragraph 32, entitled "Governing Law, Forum and Arbitration," that relates to online users. (*Id.*, ¶ 62.) The arbitration provision states in relevant part as follows: "You agree that in the event of any dispute which arises between the parties relating to this Agreement which the parties are unable to resolve, said dispute shall be submitted solely and exclusively to arbitration pursuant to the commercial arbitration rules of the American Arbitration Association. Said dispute shall be submitted individually by You, and shall not be subject to any class action status." (*Id.*) The Complaint does not specify which Plaintiffs were online users, except with

respect to Plaintiffs Wright and Gillespie, and it appears, based on references to "PCH Search+Win," that Plaintiffs Williams and Hamilton were online users. (*See id.*, ¶¶ 3, 5, 6, 8.)

<u>**SUMMARY OF ARGUMENT**</u>

The Complaint includes four counts and seeks relief under two federal statutes and two New York State statutes. Each of these claims is deficient as a matter of law. Two of the statutes—the federal Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM Act") and New York General Business Law ("GBL") Section 369(e)—do not provide for an individual private right of action. Similarly, Plaintiffs' claim under the Deceptive Mail Prevention and Enforcement Act ("DMPEA") fails because none of them is alleged to have requested to be excluded from PCH's distribution list, which is a prerequisite to individual relief under that statute. Finally, Plaintiffs' claim under GBL § 349 fails because none of them is a New York resident or claims to have been harmed in New York and, thus, each of them lacks standing to pursue a claim thereunder. Moreover, even if they did have standing, Plaintiffs have failed to allege facts to support a plausible conclusion that any specific advertisement by PCH was materially misleading or that any particular Plaintiff suffered any loss that was caused by any PCH advertisement.

Plaintiffs seek certification of a nationwide money damages class under Fed. R. Civ. P. 23(b)(3). (*Id.*, ¶ 51.) Of course, since they lack standing to bring their own claims, they cannot assert standing to represent those of absent class members. In addition, it is clear from the face of the Complaint that individualized issues would swamp any common ones and that no individual Plaintiff can be typical of the class. For example, the circumstances of what materials any single Plaintiff or absent class member reviewed before entering the sweepstakes or purchasing a product, how the materials did (or did not) differ one from another, or how any person was allegedly misled by the materials, are highly individualized questions. Moreover, Plaintiffs admit

that Defendants' online users are subject to an arbitration clause in Defendants' TOU (*id.*, ¶ 62), and that the arbitration clause mandates *individual* arbitrations in lieu of class action litigation (*id.*), also making class certification inappropriate as to those users, and rendering the class definition overly broad.

In light of the online arbitration provision, PCH seeks, in the alternative, to compel individual arbitrations for online users. From the face of the Complaint, PCH can discern that Plaintiffs Wright, Williams, Hamilton, and Gillespie were online users. (*See id.*, ¶¶ 3, 5, 6, 8.)

A class action must be based on more than vague and conclusory allegations. Here, one need only glance at the Official Rules (incorporated into the TOU) to see the following disclosures in bold, capitalized typeface: "**BUYING WON'T HELP YOU WIN**" and "**NO PURCHASE OR PAYMENT NECESSARY TO ENTER.**" (Declaration of Deborah H. Renner, dated May 29, 2018 ("Renner Dec."), Ex. B, at 1 (incorporating Official Rules into TOU); Ex. C, at 2.) Similarly, the Sweepstakes Facts (incorporated into the TOU) also state in bold typeface: "**Enter for Free**" and "**Buying Won't Help You Win.**" (*Id.*, Ex. B, at 1 (incorporating Sweepstakes Facts into TOU); Ex. C, at 2.) Each count of the Complaint should be dismissed, or in the alternative, the Court should compel individual arbitrations as to Plaintiffs Wright, Williams, Hamilton, and Gillespie and any other online users, and stay the case until the completion of those arbitrations.

## STANDARD OF REVIEW

A case must be dismissed under Fed. R. Civ. P. 12(b)(1) when a federal court lacks subject matter jurisdiction. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Under Rule 12(b)(1), "jurisdiction must be shown affirmatively, and that showing [may] not [be] made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). The party invoking the Court's jurisdiction bears

the burden of demonstrating that subject matter jurisdiction exists. *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). For a federal court to have jurisdiction under Article III of the Constitution, there must be a "case or controversy." *Jennifer Matthew Nursing & Rehab. Ctr. v. U.S. Dep't of Health and Human Servs.*, 607 F.3d 951, 955 (2d Cir. 2010). For there to be a case or controversy, a plaintiff must have standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). At the pleading stage, a plaintiff must "affirmatively and plausibly" allege standing to sue. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016); *Ali v. New York City Envtl. Control Bd.*, 2015 WL 7281633 (E.D.N.Y. Nov. 16, 2015) (Townes, J.).

If the Court finds Plaintiffs lack standing to sue, it need not determine whether they have stated a cause of action under Fed. R. Civ. P. 12(b)(6). *See Rhulen Agency, Inc. v. Alabama Ins, Guar Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990); *All. For Envtl. Renewal, Inc. v. Pyrmaid Crossgates Co.*, 436 F.3d 82, 87-88 (2d Cir. 2006).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Although a court must accept the plaintiff's factual allegations as true for purposes of a motion to dismiss, conclusory allegations are not to be credited. *Id.* at 678. Documents incorporated by reference into a complaint are considered part of the complaint for purposes of a motion to dismiss. *See, e.g.*, *Eze v. JPMorgan Chase Bank NA*, 2010 WL 3189813, at *2 (E.D.N.Y. Aug. 11, 2010) (Vitaliano, J.).

<u>**ARGUMENT**</u>

## I. THERE IS NO PRIVATE RIGHT OF ACTION UNDER THE CAN-SPAM ACT OR GBL SECTION 369(e)

Neither the CAN-SPAM Act nor GBL § 369(e) provides a private right of action and, therefore, Plaintiffs, as private citizens, lack standing to bring these claims.

### A. Plaintiffs Lack Standing to Enforce the CAN-SPAM Act (Count II)

Plaintiffs have no standing to sue under the CAN-SPAM Act. 15 U.S.C. § 7701 *et seq.* In enacting CAN-SPAM, Congress expressly recognized that commercial email offers "unique opportunities for the development and growth of frictionless commerce." 15 U.S.C. § 7701(a)(1). Anti-spam and consumer groups urged Congress to ban all unsolicited commercial email, and to create a private right of action for liquidated damages. *See*, *e.g.*, Hr'g before the Comm on Commerce, Sci. and Transp. (May 21, 2003), https://www.gpo.gov/fdsys/pkg/CHRG-108shrg85548/html/CHRG-108shrg85548.htm (last accessed 5/25/18).

Significantly, Congress declined to create a private right of action for individual recipients of unsolicited commercial email, even if those emails violate the requirements of the CAN-SPAM Act. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1053 (9th Cir. 2009) ("It is notable that Congress conferred standing only on adversely affected [Internet Service Providers], but not adversely affected consumers.").

Plaintiffs, as private citizens, do not have standing to bring a private cause of action under the CAN-SPAM Act. Thus, Plaintiffs' claim must be dismissed for lack of standing. *See*, *e.g.*, *Madorsky v. Does*, 2006 WL 1587349, at *2 (N.D. Ohio June 8, 2006).

### B. Plaintiffs Lack Standing to Bring a Claim Under New York's False Advertising Law, General Business Law Section 369(e) (Count III)

Plaintiffs also lack standing to assert claims under New York's False Advertising Law, GBL § 369(e). The New York General Business Law authorizes the Attorney General to bring

actions on behalf of the people of the state of New York to enjoin the operation of promotional or advertising schemes or plans which violate the General Business Law's prohibition on the use of games of chance in selling commodities. N.Y. Gen. Bus. Law § 369(e)(8). It does not provide a private right of action. *See* N.Y. Gen. Bus. Law § 369-e (McKinney) ("An action for violation of this section may be instituted by the attorney general in the name of the people of the state of New York").

Plaintiffs, as private citizens, have no statutory authority to enforce GBL § 369(e) and their claims must be dismissed for lack of standing. *See Worldhomecenter.com, Inc. v. KWC Am., Inc.*, 2011 WL 4352390, at *8 (S.D.N.Y. Sept. 15, 2011) (analyzing N.Y. Gen. Bus. Law § 369(e) and related sections and "conclud[ing] that implying a private right of action would be inconsistent with this legislative scheme").

## II.     PLAINTIFFS LACK STANDING AND HAVE FAILED TO STATE A CLAIM UNDER THE DMPEA OR GBL SECTION 349

### A.      Plaintiffs Have Failed to Allege Facts Sufficient to Support Standing or a Claim for Relief Under the DMPEA (Count I)

Plaintiffs are unable to bring an action under the DMPEA because they have failed to allege any fact that would support statutory standing or a claim for relief on the merits. The DMPEA provides a private right of action only if an individual receives one or more mailings after he has elected to be excluded from the list of names and addresses used by a promoter of a sweepstakes. 39 U.S.C. § 3017(e). Plaintiffs make no allegation that they elected to be excluded from mailings. (*See generally*, Cmplt.) Plaintiffs therefore lack standing and have failed to state a claim under the statute. *See Dowden v. Readers Digest Ass'n., Inc.*, 2002 WL 31548776, at *2 (N.D. Tex. Nov. 12, 2002) (dismissing DMPEA claim because plaintiff did not plead he opted out of mailings and that, therefore, there was no private right to action); *Harris v. Publishers*

*Clearing House*, 2016 WL 1366654, at *1 (M.D. Tenn. Apr. 6, 2016) (dismissing nearly identical claims against Defendants, with prejudice, for failure to state a claim under the statute).

B.    **Plaintiffs Lack Standing Under GBL Section 349 Because They Are Not New York Residents and No Harm Is Alleged to Have Occurred in New York (Count IV)**

It is settled law that a plaintiff cannot sue under New York's consumer protection statute unless he or she is a resident of New York or was harmed in New York. None of the Plaintiffs is a New York resident. Nor do any of them allege they were harmed in New York.

GBL § 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state* are hereby declared unlawful." (Emphasis added.) It is well-settled that "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 325 (2002). In *Goshen*, the New York Court of Appeals examined "whether an allegedly deceptive scheme that originates in New York, but injures a consumer in a transaction out-of-state, constitutes an actionable deceptive act or practice under § 349(a)." *Id.* at 321. The court held that it does not for three reasons. First, the plain language of the statute refers to deceptive acts or practices *in this state*, "unambiguously evinc[ing] a legislative intent to address commercial misconduct occurring within New York." *Id.* at 324-25. Second, the court held that "[l]egislative history also supports that reading of the statute. Attorney General Robert Abrams' 1980 memorandum to Governor Hugh Carey described the law as adding 'significant new protection to consumers in this state." *Id.* at 325. Finally, the court warned of the danger of reading the statute expansively, as it "would tread on the ability of other states to regulate their own markets and enforce their own consumer protection laws." *Id.*

In *Goshen*, out-of-state plaintiffs sued a New York-based insurance company alleging deception in the sale of their insurance policies. The court held that the out-of-state plaintiffs

lacked standing and failed to state a claim under GBL § 349 because any deception that occurred took place out-of-state, not in New York. *Id.* at 326. Here, all of the Plaintiffs reside out-of-state. (Cmplt., ¶¶ 3-16.) There is no allegation that any of them was harmed in New York. (*Id.*) Nor can Plaintiffs assert standing based on the residence or locations of the transactions of absent class members. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (a "plaintiff … must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

Moreover, even if a scheme of deception were alleged to have originated in Defendants' offices in New York (which is not alleged), GBL § 349 would still be inapplicable under *Goshen* and its progeny. *See, e.g.*, *Goshen*, 98 N.Y.2d at 321 (rejecting basis for suit under GBL § 349 where improper scheme was allegedly "contrived and implemented" in New York); *Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 7-8 (2d Cir. 2012) (affirming dismissal of GBL claims of non-New York resident class members who did not receive deceitful information in New York); *Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*, 2009 WL 1119409, at *4 (S.D.N.Y. Apr. 26, 2009) (that principal place of defendant's business is in New York is insufficient for GBL § 349 to be applicable); *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 203 n.19 (S.D.N.Y. 2009) (that marketing plan originates in New York is insufficient to allow out-of-state residents to sue under GBL § 349).

Accordingly, because Plaintiffs are all from out-of-state and do not allege that they were harmed in New York, their GBL § 349 claim should be dismissed for lack of standing.

**C.** **Plaintiffs Have Failed to Allege Facts Sufficient to State a Claim for Relief Under GBL Section 349 (Count IV)**

It is equally well-established that, under the Rule 8 notice pleading standard, Plaintiffs cannot survive a motion to dismiss on the basis of generalized, conclusory allegations that fail to

describe the circumstances of their transactions or the advertisements which they saw and on which they purportedly relied. A GBL § 349 claim requires a plaintiff to allege "conduct of the defendant that is consumer-oriented and that the defendant engaged in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). Here, Plaintiffs have failed to adequately allege the material deception, causation and injury elements of their GBL § 349 claim. Thus, the GBL § 349 count must be dismissed.

First, in order to plead that an advertisement is materially deceptive, a plaintiff must show that the allegedly deceptive advertisements "were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013), *citing Oswego*, 85 N.Y.2d at 26. Importantly, "[a] plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect to survive a motion to dismiss or, indeed, to escape admonishment." *Id*. at 742. *See Dash v. Seagate Tech. U.S. Holdings, Inc.*, 27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014) (Wexler, J.) (each plaintiff must "describe[] in detail the allegedly misleading and deceptive statements … upon which he relied in purchasing the product").

Here, Plaintiffs only excerpt or summarize advertisements that they claim to be deceptive, without explaining how the excerpts are deceptive or providing any complete advertisements to show the context in which the excerpts appeared. They do not allege which excerpts demonstrate that consumers were advised that purchasing products would increase their odds of winning a sweepstakes. (Cmplt, ¶¶ 40-45.) Nor do they identify the advertisements upon which they rely to allege material deception. (*Id*., ¶¶ 52, 95.) Plaintiffs thus fail to satisfy the notice pleading standard of Rule 8(a), *Ruston v. Town Bd. for Town of Skaneateles,* 610 F.3d 55,

59 (2d Cir. 2010), and deny Defendants the opportunity to show the Court that any advertisement underlying the Complaint is, in fact, not deceptive. *See*, *e.g.*, *Fink*, 714 F.3d at 742 (citing *Broder v. MBNA Corp.*, 281 A.D.2d 369 (1st Dep't 2001) (there can be no GBL § 349 (a) claim where there was full disclosure)); *Derbaremdiker v. Applebee's Int'l, Inc.*, 2012 WL 4482057, at *4 (E.D.N.Y. Sept. 26, 2012) (Matsumoto J.), *aff'd*, 519 F. App'x 77 (2d Cir. 2013) (dismissing plaintiffs' GBL § 349 claim for failing to allege that sweepstakes was materially misleading).

Moreover, Plaintiffs incorporate the TOU into their Complaint by reference. (Cmplt, ¶ 62.) *See*, *e.g.*, *Eze*, 2010 WL 3189813, at *2. The TOU incorporates PCH's Official Rules and Sweepstakes Facts. (Renner Dec., Ex. B at 1.) The Official Rules clearly state: "NO PURCHASE OR PAYMENT IS EVER NECESSARY TO ENTER TO WIN!", "**NO PURCHASE OR PAYMENT NECESSARY TO ENTER**" and "**BUYING WON'T HELP YOU WIN.**" (*Id.*, Ex. C, at 1, 2.) Likewise, the Sweepstakes Facts included in the Official Rules plainly state: "**Enter for Free.** You don't have to buy anything to enter" and "**Buying Won't Help You Win.** Your chances of winning without a purchase are the same as the chances of someone who buys something." (*Id.*, Ex. C, at 2.)

Second, Plaintiffs fail to adequately allege causation because they do not allege any facts that caused each or even any of them to purchase a product on the mistaken belief that it would increase his or her chances of winning. (Cmplt, ¶¶ 3-16, 95.) Rather, the allegations relating to portions of advertisements in paragraphs 40-48 of the Complaint fail to identify any Plaintiff who saw any of these advertisements, much less that it caused any one of them to purchase a product. *See*, *e.g.*, *Saphirstein v. Mauzone Mania LLC*, 2017 WL 3278893, at *2 (E.D.N.Y. Jul. 31, 2017) (Korman, J.) (group pleading fails to satisfy the requirements of Rules 8(a) or 9(b)); *Abraham v. American Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 234 (E.D.N.Y. 2013)

(Kuntz, J.) ("each plaintiff must individually plead the disclosures he or she received were inadequate … and that she was injured as a result"); *Amiron Dev. Corp. v. Sytner*, 2013 WL 1332725, at *5 (E.D.N.Y. Mar. 29, 2013) (Seybert, J.) (group pleading fails to give defendant notice of alleged claims).

Furthermore, the allegations in which Plaintiffs are delineated state for 12 of the 14 Plaintiffs only that they purchased a product "after receiving representations" that purchasing a product would increase the chance of winning. (Cmplt, ¶¶ 4-8; 10-16.) There are no allegations of causation, just temporal proximity. Meanwhile, the other two Plaintiffs, Mr. Wright and Ms. Phillips, only vaguely allege what led them to believe that their chances of winning would be increased. (*Id*., ¶¶ 3, 9.) There is no allegation that any representation, much less a particularly identified representation, caused any purchase. These allegations are insufficient to allege causation under the GBL. *See*, *e.g.*, *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666 (E.D.N.Y. 2017) (Kuntz, J.) (dismissing GBL § 349 claim on, *inter alia*, causation grounds, because a plaintiff must individually plead each of the disclosures he or she received was inadequate, misleading, or false, and that she was injured as a result thereof).

Third, Plaintiffs fail to allege injury except to aver that Defendants violated other statutes, or to generally allege that they wound up purchasing products they did not need in order to increase their chances of winning. (Cmplt, ¶¶ 3-16, 95-96.) Neither of these tactics is sufficient to allege injury under the GBL. Even assuming, *arguendo*, that Plaintiffs adequately alleged that the DMPEA, the CAN-SPAM Act or GBL § 369(e) were violated (which they have not), that would be insufficient to allege injury under the GBL. Indeed, the New York Court of Appeals has held that the injury element of a GBL claim is not satisfied when a plaintiff merely identifies an act that is unlawful under a separate statute. *See*, *e.g.*, *Schlessinger v. Valspar Corp.*, 21 N.Y.3d

166, 169 (2013); *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 310 (E.D.N.Y. 2017) (Bianco, J.). Moreover, a generalized allegation of injury under the GBL is insufficient. *See Abraham*, 947 F. Supp. 2d at 234 (dismissing GBL claim that failed to link specific plaintiff to specific injury). Rather, each plaintiff needs to allege that the product he or she purchased would not have been purchased but for Defendants' allegedly deceptive advertisements. *See id*. They have not done so.

Accordingly, Plaintiffs' claim for a violation of GBL § 349 should be dismissed for failure to state a claim.

## III.     THE CLASS ALLEGATIONS SHOULD BE STRICKEN

This Court is empowered to strike Plaintiffs' class allegations as facially deficient, and should do so here, where class certification is impossible. Fed. R. Civ. P. 23(c)(1)(A) directs a court to determine "[a]t an early practicable time … whether to certify a class," and Fed. R. Civ. P. 23(d)(1)(D) authorizes a motion to strike class allegations, requiring "that the pleadings be amended to eliminate allegations about representation of absent persons." As here, when a complaint demonstrates on its face that a class cannot be certified, it is well within this Court's power to strike class allegations at the pleading stage. *See*, *e.g.*, *Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir. 2011) (affirming a trial court's pre-discovery strike of class allegations); *Fedotov v. Peter T. Roach & Assocs., P.C.*, 354 F. Supp. 2d 471, 478 (S.D.N.Y. 2005) (stating that "defendant's Motion for Denial of Class Certification—a procedural 'preemptive strike' against this purported class action—is properly before this court").

Concurrently, Fed. R. Civ. P. 12(f) authorizes a court to strike spurious allegations in order to avoid the expenditure of time and money litigating such issues. *See e.g. Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 886 (9th Cir. 1983); *Ott v. Mortg. Investors Corp. of Ohio*, 2014 WL 6851964, at *11, *18 (D. Or. Dec. 3, 2014) (striking sub-class on Rule 12(f) grounds);

*Oom v. Michaels Companies Inc.*, 2017 WL 3048540, at *7 (W.D. Mich. July 19, 2017) (striking class allegations where the proposed class could not be modified to avoid its fatalities). While Defendants reserve the right to oppose class certification if the Court allows the class allegations to stand, it is clear from the face of the Complaint that Plaintiffs cannot certify a class.

There is no Plaintiff with standing to bring a GBL § 349 claim. But even if there were, Plaintiffs seek to certify a *nationwide* class (Cmplt, ¶ 51), which is impossible given that, as discussed above, GBL § 349 only applies to New York residents or harm caused to an out-of-state resident in New York. Accordingly, under well-established law, Plaintiffs cannot show the predominance of common issues under Fed. R. Civ. P. 23(b)(3), because the varying consumer protection statutes of all 50 states would have to apply. *See*, *e.g.*, *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1295-1301 (7th Cir. 1995); *In re Amla Litig*., 282 F. Supp. 3d 751, 765 (S.D.N.Y. 2017) (denying certification of nationwide class of consumers where patchwork of different state laws would be overwhelming to a jury).

Moreover, as shown above, Plaintiffs fail to allege, for example, which advertisements each of them saw, how seeing a specific advertisement caused them to purchase a product, whether they contacted customer service, returned a product, or how each or even any of them was harmed. Were this case properly pled, it would be rife with these sorts of individualized factual issues, making class certification inappropriate, among other reasons, because no named Plaintiff could be a typical or adequate representative of an absent class member under Rule 23(a). *See*, *e.g.*, *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) (abrogated on other grounds); *Wynn v. N.Y. City House. Auth.*, 314 F.R.D. 122, 127 (S.D.N. Y. 2016). Moreover, individualized issues would overtake any common ones, which would defeat the predominance requirement and make any trial

unmanageable under Rule 23(b)(3). *See*, *e.g.*, *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 223 (2d Cir. 2008); *In re Amla Litig.*, 282 F. Supp. 3d at 765.

Furthermore, Plaintiffs have admitted that anyone who participated in PCH's online sweepstakes programs was subject to a mandatory arbitration provision that included a class action waiver. (Cmplt, ¶ 62.) Because the class as proposed by Plaintiffs would include individuals whose claims are subject to individual arbitration and who have waived their right to pursue a class action in court, it is overly broad, which is another reason why the class allegations must be stricken. *See*, *e.g.*, *Johnpoll v. Thornburgh*, 898 F.2d 849, 852 (2d Cir. 1990); *Wynn*, 314 F.R.D. at 127-28 (S.D.N. Y. 2016).

## IV. PLAINTIFFS' CLAIMS CONCERNING ONLINE ADVERTISEMENT ARE SUBJECT TO INDIVIDUAL ARBITRATIONS

Plaintiffs admit that for online users, there is a mandatory arbitration provision in the TOU. (Cmplt, ¶ 62.) The arbitration provision contains a class action waiver, which means that Plaintiffs must individually arbitrate any surviving online claims with any remaining claims stayed pending the outcomes of those arbitrations. (*Id*.) Plaintiffs fail to identify which of them were online users, but PCH can discern from the allegations that Plaintiffs Wright, Williams, Hamilton, and Gillespie were online users. (*See id*., ¶¶ 3, 5, 6, 8.) PCH thus moves to compel arbitration as to those Plaintiffs, reserving its right to move as to the other Plaintiffs.

The Federal Arbitration Act ("FAA") expressly provides that "an agreement in writing to submit to arbitration an existing controversy … shall be valid, irrevocable and enforceable." *See* 9 U.S.C. § 2 (2010). Arbitration is a matter of contract and "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). The arbitration provision here also contains a class action waiver, which must be enforced along

with the arbitration provision. *See*, *e.g.*, *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 559 (S.D.N.Y. 2018) (enforcing browser-based arbitration agreement including a class action waiver).

Given that online users, such as Plaintiffs Wright, Williams, Hamilton and Gillespie, agreed to arbitration, and the provision is not unconscionable, the parties' agreement to arbitrate must be enforced.

**A.      Plaintiffs Agreed to a Valid and Binding Arbitration Agreement**

At a minimum, Plaintiffs Wright, Williams, Hamilton and Gillespie agreed to arbitrate their claims. State contract law governs whether an agreement to arbitrate exists between the parties. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). An agreement to arbitrate exists "where the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law." *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 76 (2d Cir. 2017).

1.      Notice of the Arbitration Provision Is Reasonably Conspicuous

The arbitration provision must be enforced because "a reasonably prudent user would be on inquiry notice of the terms." *Meyer*, 858 F.3d at 74-75. "Whether a reasonably prudent user would be on inquiry notice turns on the clarity and conspicuousness of arbitration terms; in the context of web-based contracts, … clarity and conspicuousness are a function of the design and content of the relevant interface." *Id.* (internal citations omitted).

In *Meyer*, the Second Circuit found Defendant Uber's arbitration provision reasonably conspicuous, noting the design of an account registration page that contained a hyperlink to Terms of Service containing the provision. The Second Circuit relied on, *inter alia*, the following factors: (1) the registration page was uncluttered; (2) text alerting the user to Terms of Service appeared directly below the registration button; (3) the hyperlink to the Terms of Service was

easily located under the registration button without scrolling. *Id.* at 78. Moreover, "[a]lthough the sentence [below the registration button] [was] in a small font, the dark print contrast[ed] with the bright white background, and the hyperlinks [were] in blue and underlined," *id.*; and (4) notice to the terms was "temporally coupled" with the mechanism for manifesting assent (*i.e.* the hyperlink to the terms was provided simultaneously with registration). *Id.* at 78-79.

Here, the registration page on PCH's website is substantially similar to the page in *Meyer*. (*See* Renner Dec., Ex. A.) The PCH registration page is uncluttered; it contains a form for the user's personal information with a large "Continue" button at the bottom. (*Id.*) Immediately below that button—which users must click to continue and create an account—are clearly labeled hyperlinks to PCH's TOU and Privacy Policy, accessible without scrolling. (*Id.*) The text is bright white to contrast with the dark red background, and the hyperlinks are underlined. (*Id.*) The PCH page only contains links to useful information, the font sizes are consistent, and there are no advertisements or buttons, other than the "Continue" button. (*Id.*)

The Complaint makes several allegations about the TOU that simply are not true. First, Plaintiffs allege users must scroll to see the TOU. (Cmplt, ¶ 65.) This is false. The link to the TOU is immediately below the "Continue" button, which users must click to create an account. (Renner Dec., Ex. A.) Second, Plaintiffs allege the TOU page "does not present the user with the Terms of Use on the same webpage as the link for continued use of the page." (Cmplt, ¶ 66.) This allegation directly contradicts their own allegation that there is a hyperlink to the TOU. (*Id.*, ¶ 64.) To the extent Plaintiffs mean that the TOU is behind a hyperlink, the Second Circuit has "explicitly rejected the proposition that a hyperlink to terms of use renders the notice unreasonable and endorsed the idea that a hyperlink is equivalent to terms contained on the back of a sales receipt or ticket." *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893,

at *9 (S.D.N.Y. Nov. 20, 2017) (citing *Meyer*, at 868 F.3d at 78-79). Thus, multiple clear and conspicuous links on the PCH website placed Plaintiffs on inquiry notice.

Moreover, the normal rules of notice are not relaxed in the online context. *Meyer*, 868 F.3d at 78 (comparing a hyperlink to terms contained on the back of a sales receipt or ticket). The failure to read terms that were repeatedly made available does not relieve an online user of his or her obligations under a contract. *See Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) ("Failure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract."). In the sweepstakes context especially, users know that there are rules governing the game. Indeed, the availability of the TOU as a hyperlink before entry is far superior to terms listed on the back of a lottery ticket after purchase. *Bernardino*, 2017 WL 7309893, at *10 ("Furthermore, in contrast to terms contained on a receipt provided after purchase, [plaintiff], a self-proclaimed internet shopper, could have read [Defendants'] TOU at her leisure at any time before deciding to make a purchase."). *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (noting as relevant in the sweepstakes context that "promotions expressly and repeatedly state the conditions which must be met in order to win").

    2.       Plaintiffs' Manifestation of Assent Was Unambiguous
               as a Matter of Law

Plaintiffs who were online users manifestly assented to arbitration given the spatial and temporal coupling of the TOU hyperlink and the "Continue" button on the registration page. *See Meyer*, 868 F.3d at 79-80 ("a reasonable user would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not."). The Second Circuit in *Meyer* explained:

> The transactional context of the parties' dealings reinforces our conclusion. Meyer located and downloaded the Uber App, signed up for an account, and entered his credit card information with the intention of entering into a forward-looking relationship with Uber.

> The registration process clearly contemplated some sort of
> continuing relationship between the putative user and Uber, one
> that would require some terms and conditions, and the Payment
> Screen provided clear notice that there were terms that governed
> that relationship.

*Id.* Plaintiffs here located and accessed the PCH website, entered their personal information, and

signed up for an account with the intention of entering into a forward-looking relationship with

PCH. In addition, Plaintiff Wright concedes that he "spent time on the website," and Plaintiff

Gillespie concedes that he was a repeated user of the website. (*See* Cmplt, ¶¶ 3, 7.)

Plaintiffs entered into a relationship with PCH with the intention of winning a

sweepstakes and prizes; they cannot claim that they sought the benefits of an agreement while

simultaneously denying its terms. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 125 (2d Cir.

2012) ("The purchaser therefore cannot begin using the product until after he or she has been

presented with the terms, whether or not the purchaser actually reads them.").

### B. The PCH Arbitration Provision Is Not Unconscionable

The arbitration provision is not unconscionable. Whether the terms of an arbitration

agreement are unconscionable is a matter of law for a court to decide. *Bernardino*, 2017 WL

7309893, at *3 (citing *Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 786-87 (2d Cir. 2003). To

find a contract term unconscionable "requires a showing that the contract was both procedurally

and substantively unconscionable when made." *Berkson v. Gogo LLC*, 97 F. Supp. 3d at 359, 391

(E.D.N.Y. 2015) (Weinstein, J.) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1,

10 (1988)). Procedural unconscionability is determined by assessing the manner in which the

agreement was reached. *Id.* Substantive unconscionability is determined by evaluating the

fundamental fairness of the contract term itself. *Id.* at 391-92. Courts evaluate procedural and

substantive unconscionability on a "sliding scale." *Id.* at 391 (citation omitted). However,

"[c]ontractual terms will only be held unconscionable where the facts show substantive

unconscionability; procedural unconscionability alone may not render a contract unreasonable on its face." *Id.* at 392 (citing *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 254 (1st Dep't 1998) (collecting cases)).

Plaintiffs aver that the arbitration provision is procedurally unconscionable "because the Plaintiffs were not offered the ability to negotiate, its terms were not clearly communicated and their harshness would come as a surprise to reasonable consumers." (Cmplt, ¶ 67.) All of these arguments fail as a matter of law.

First, a non-negotiable contract is not *per se* unconscionable. *See Bernardino*, 2017 WL 7309893, at *12 (citing *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 122 (2d Cir. 2010) ("The Second Circuit also has rejected [Plaintiff's] arguments that an arbitration agreement is procedurally unconscionable by virtue of it being offered on a take-it-or-leave-it basis[.]"). Nor does its location behind a hyperlink render it unconscionable. *Id.* (citing *Meyer*, 868 F.3d at 78-79).

Second, Plaintiffs argue the arbitration provision is substantively unconscionable because users would be required to attend arbitrations in New York. (Cmplt, ¶ 68.) Plaintiffs' reasoning is not compelling as the arbitrations are governed by the AAA, which allows for telephonic hearings. *See* American Arbitration Association, "Commercial Arbitration Rules and Mediation Procedures" at R-32 ("When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including video conferencing, internet communication, telephonic conferences and means other than an in-person presentation.") (available at: https://www.adr.org/sites/default/files/Commercial%20Rules.pdf). *See Bernardino*, 2017 WL 7309893, at *3; *Carnival Cruise Lines, Inc.*, 499 U.S. at 594.

Third, Plaintiffs aver that the arbitration provision is illusory by virtue of the fact that PCH can amend its TOU as a whole. (Cmplt, ¶ 68.) But the law is clear that such a challenge to the TOU is a question for an arbitrator, not a court. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-46 (2006). Moreover, under New York law, a contract is not illusory merely because it gives discretion to one party. *See Bernadino*, 2017 WL 7309893, at *13.

### C. The Action Should Be Stayed in Favor of Arbitration

PCH respectfully requests that, if not dismissed for lack of standing, the action as to Plaintiffs Wright, Williams, Hamilton, and Gillespie and any other Plaintiff who was an online user, be stayed in favor of arbitration. 9 U.S.C. § 3; *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that: (i) each count of the

Complaint be dismissed, with prejudice, for lack of standing under Fed. R. Civ. P. 12(b)(1); (ii) if

not dismissed for lack of standing, that Counts I (DMPEA) and III (GBL § 349) be dismissed,

with prejudice, for failure to state a claim as to paper mailings; (iii) the class allegations be

stricken as facially inadequate; and (iv) in the alternative, the Court compel individual

arbitrations as to Plaintiffs Wright, Williams, Hamilton and Gillespie, and any other Plaintiff who

was an online user, and stay the action pending the outcomes of those arbitrations.

Dated: May 29, 2018                      **BAKER & HOSTETLER LLP**
       New York, New York

Of Counsel:                           By:   *_/s/ Deborah H. Renner_____*
Linda A. Goldstein                          Deborah H. Renner
                                          drenner@bakerlaw.com
                                          John Siegal
                                          jsiegal@bakerlaw.com
                                          Erica Barrow
                                          ebarrow@bakerlaw.com
                                          45 Rockefeller Plaza
                                          New York, New York 10111
                                          Tel: (212) 589-4200
                                          Fax: (212) 589-4201

                                          *Attorneys for Defendants Publishers*
                                          *Clearing House, Incorporated and*
                                          *Publishers Clearing House, LLC*