**FILED
CLERK**

2:31 pm, Mar 12, 2019

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
EARL WRIGHT, RAMONA HOLDEN, ETTA WILLIAMS, MICHAEL HAMILTON, JOSEPH EKO, LINDA PHILLIPS, ELAINE WILHELM, ANTHONY GILLESPIE, MARK CARLISLE, VERNITA JESSIE, CHERYL RIFE, SANDY SAMENS, RUTHIE ORTIZ SOUDJIAN,

                Plaintiffs,

              -against-

PUBLISHERS CLEARING HOUSE, INCORPORATED and PUBLISHERS CLEARING HOUSE, LLC,

                Defendants.
----------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**
2:18-cv-02373 (ADS)(AYS)

**APPEARANCES:**

**Schwaba Law Firm, PLLC**
*Co-Counsel for the Plaintiffs*
212 South Tryon Street Suite 1725
Charlotte, NC 28281
        By:    Andrew Schwaba, Esq., Of Counsel.

**Zeccola & Selinger, LLC**
*Co-Counsel for the Plaintiffs*
2127 Crompond Road
Suite 205
Cortlandt Manor, NY 10567
        By:    John S. Selinger, Esq., Of Counsel.

**Baker Hostetler LLP**
*Counsel for the Defendants*
45 Rockefeller Plaza
New York, NY 10111
        By:    Erica Adina Barrow, Esq.,
                  John Siegal, Esq.,

1801 California Street Suite 4400
Denver, CO 80202
        By:    Paul Karlsgodt, Esq., Of Counsel.

**SPATT, District Judge**:

On April 23, 2018, plaintiffs Earl Wright, Ramona Holden, Etta Williams, Michael Hamilton, Joseph Eko, Linda Phillips, Elaine Wilhelm, Anthony Gillespie, Mark Carlisle, Vernita Jessie, Cheryl Rife, Sandy Samens, and Ruthie Ortiz Soudjian (collectively, the "Plaintiffs") brought this putative class action against defendants Publishers Clearing House, Incorporated and Publishers Clearing House, LLC (collectively, the "Defendants") alleging that the Defendants engaged in unlawful, unfair and deceptive marketing practices in violation of the federal Deceptive Mail Prevention and Enforcement Act ("DMPEA"), 30 U.S.C. § 3001 *et seq.*, the federal Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN SPAM"), 15 U.S.C. §7701 *et seq.*, and New York General Business Law ("GBL") §§ 349 and 369e.

The Defendants operate the nationally recognized sweepstakes and marketing brand Publisher's Clearing House ("PCH"). PCH advertises sweepstakes over national television networks, direct mail, and internet and email marketing campaigns. The Plaintiffs are various residents of states outside of New York who claim that they purchased goods based on the Defendants' misrepresentations that doing so would increase their chances of winning a sweepstakes, prize, or drawing.

Presently before the Court is a motion by the Defendants, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(1) and 12(b)(6) to dismiss the Complaint, pursuant to Rule 12(f), to strike the class allegations, and in the alternative, to compel arbitration and stay the present action.

For the following reasons, the Court grants the Defendants' motion to dismiss and denies the Defendants' motions to strike and compel as moot. However, the Court will provide the Plaintiffs an opportunity to file an amended complaint consistent with this opinion.

2

# I. DISCUSSION

## A. THE LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L.Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

**B. AS TO THE PLAINTIFFS' STATED A CLAIM FOR CAN SPAM VIOLATIONS.**

CAN SPAM makes it "unlawful for any person to initiate [a] transmission, to a protected computer, of a commercial electronic mail message, or a transactional or relationship message, that contains, or is accompanied by, header information that is materially false or materially misleading." 15 U.S.C. § 7704(a)(1). However, the statute contains no provisions expressly creating a private right of action for consumers aggrieved by such violations. Citing *Alexander v. Sandoval*, 532 US 275 (2001), the Plaintiffs ask the Court to infer one based on a congressional finding that spam may be used to "perpetrate fraudulent schemes." 15 U.S.C. § 7703(c)(1). Nothing about this finding supports the inference that Congress intended to create a private remedy. Indeed, it appears that Congress contemplated that the Federal Trade Commission and related regulatory agencies would carry out the enforcement of the statute. *See* 15 U.S.C. § 7706(a)(stating that the "chapter shall be enforced by the Commission as if the violation of this chapter were an unfair or deceptive act or practice proscribed under section 57a(a)(1)(B) of this title."); S.Rep. No. 108-102, at 7 (2003) ("Under the legislation, enforcement would be undertaken by the FTC and, in some cases, industry-specific regulatory authorities").

As a result, the Court finds that the Plaintiffs lack standing to bring a cause of action under CAN SPAM. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1053 (9th Cir. 2009) ("It is notable that Congress conferred standing only on adversely affected [Internet Service Providers], but not adversely affected consumers."); *Madorsky v. Does*, No. 06-cv-0123, 2006 WL 1587349, at *2 (N.D. Ohio June 8, 2006) (granting motion to dismiss because "there is no provision in the statute that gives [plaintiff] standing to file a private cause of action under the CAN-SPAM Act."); *accord Nyack Hosp. v. Moran*, No. 08-cv-11112, 2010 WL 4118355, at *6 n.4 (S.D.N.Y. June 1, 2010) (explaining in dicta that "[s]tanding to bring a private cause of action under the CAN–SPAM Act

4

requires that the plaintiff be an internet access service ('IAS') provider"), *report and recommendation adopted*, 2010 WL 4118351 (S.D.N.Y. Oct. 20, 2010).

Therefore, the Court grants the Defendants' motion to dismiss with respect to the Plaintiffs' CAN SPAM claims.

## C. AS TO WHETHER THE PLAINTIFFS STATED A CLAIM UNDER THE DMPEA.

The DMPEA prescribes a set of requirements for mailed documents that constitute "entry materials for a sweepstakes." *See* 39 U.S.C. § 3001(k)(3)(A). However, the DMPEA provides private rights of action only if an individual receives one or more mailings after he or she has elected to be excluded from the list of names and addresses used by a promoter of a sweepstake. 39 U.S.C. § 3017(e). As the Plaintiffs do not allege that they elected to be excluded in accordance with 38 U.S.C. § 3017(d)(a), they lack standing to bring a cause of action under the DMPEA. *See Harris v. Publishers Clearing House*, No. 15-cv-01528, 2016 WL 1366654, at *1 (M.D. Tenn. Apr. 6, 2016) (dismissing claims against the Defendants for violations of 3001 due to lack of standing); *Dowden v. Readers Digest Ass'n., Inc.*, No. 02-cv-1157, 2002 WL 31548776, at *2 (N.D. Tex. Nov. 12, 2002) (same); *Wilkinson v. Wells Fargo Bank MN*, No. 06-cv-1288, 2007 WL 1414888, at *3 (E.D. Wis. May 9, 2007) (explaining that section 3001 "provide[s] no private cause of action").

Therefore, the Court grants the Defendants' motion to dismiss with respect to the Plaintiffs' DMPEA claims.

## D. AS TO WHETHER THE PLAINTIFF STATED A CLAIM UNDER GBL SECTION 369E.

Section 369e prohibits the use of false, deceptive or misleading advertising in the sale of consumer products or services sold in connection with the opportunity to receive gifts, prizes or gratuities from a game, contest or other promotion. The statute does not expressly provide a private

right of action. Absent an express private right of action, New York courts will only conclude that "a private right of action may fairly be implied" where: (1) the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose; and (3) creation of such a right would be consistent with the legislative scheme. *Sheehy v. Big Flats Community Day*, 73 N.Y.2d 629, 633, 543 N.Y.S.2d 18, 20, 541 N.E.2d 18 (1989).

Implying a private right of action in this case would contradict the intentions of the New York legislature, because Section 369e makes no reference to a private remedy and instead explicitly assigns enforcement of the statute to the state attorney general. N.Y. Gen. Bus. Law § 369-e(8) ("An action for violation of this section may be instituted by the attorney general in the name of the people of the state of New York."); *see also Worldhomecenter.com, Inc. v. KWC Am., Inc.*, No. 10-cv-7781, 2011 WL 4352390, at *8 (S.D.N.Y. Sept. 15, 2011) (concluding that "implying a private right of action would be inconsistent with this legislative scheme" under Section 369-a because Section 369-e "only envisions enforcement by the New York Attorney General, and does not refer to enforcement by private citizens").

Therefore, the Court grants the Defendants' motion to dismiss with respect to the Plaintiffs' Section 369e claims.

**E. AS TO WHETHER THE PLAINTIFFS STATED A CLAIM UNDER GBL SECTION 349.**

The Court finds that the Complaint lacks the specific factual allegations necessary for the Plaintiffs to possess standing or state a claim under Section 349.

**1. As to the Plaintiffs' Standing to Assert A Section 349 Claim.**

Section 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state* are hereby declared unlawful."

(emphasis added). The New York Court of Appeals in *Goshen v. Mutual Life Insurance Company of New York*, 98 N.Y.2d 314, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (2002), appears to have interpreted the limiting phrase "in this state" to require that "the transaction in which the consumer is deceived ... occur in New York." *Id.* at 98 N.Y.2d at 324 & n.1. However, in *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013), the Second Circuit recognized that post-*Goshen* case law evolved to "focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than on the residency of the parties." *Id.* at 122. Thus, the Second Circuit concluded that an out-of-state victim possesses standing to sue under Section 349 so long as "some part of the underlying transaction occurred in New York State." *Id.* at 124 (quoting *Mountz v. Global Vision Prods., Inc.*, 3 Misc.3d 171, 770 N.Y.S.2d 603, 608 (Sup.Ct. 2003)).

Here, none of the Plaintiffs are New York residents. They assert that their claims fall within Section 349 because "a substantial amount of the acts and omissions complained of occurred in this District (New York)." ECF 22 at 18. However, the Plaintiffs support this conclusory assertion with no specific facts showing that any part of the transactions occurred in New York. As a result, the Complaint fails to articulate a sufficient connection to New York even under the more lenient *Cruz* standard.

In an attempt to create such a connection, the Plaintiffs analogize their claims to those in *Cruz* because, as in *Cruz*, the parties agreed that New York law will govern the claims against the Defendants. *Cruz*, 720 F.3d at 124. But that fact was only one of many considered by the Second Circuit, which predominately focused on whether the transaction itself occurred in New York. Although the existence of a New York choice-of-law provision somewhat weighs in the Plaintiffs' favor, the Court disagrees that this fact standing alone constitutes a sufficient transactional nexus

7

to New York. Parties enter into choice-of-law clauses for a whole host of reasons, such as their views on the favorability of the law of a particular jurisdiction. Stretching Section 349 to apply to all cases where the parties agree on New York as their law of choice would depart from *Cruz*'s instruction to focus on the strength of New York's connection to the transaction at issue. *See Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 633 (S.D.N.Y. 2016) (finding transaction fell outside of Section 249's reach when "only connection[]" alleged in the complaint was the choice of "New York as the governing law and forum selection provision, the location of [the defendant's] servers, and the electronic transmission of the users' music choices.").

That being said, it is also not the case that the Plaintiffs' allegations are so inadequate that any attempt to obtain standing under Section 349 would be futile. Without commenting on the merits of any future amendments, it seems likely that the Plaintiffs possess some specific transactional nexus to New York omitted from the Complaint, given the Defendants' residency in New York and the parties agreement to apply New York law. Accordingly, the Court will provide the Plaintiffs leave to file an amended complaint addressing the problems identified by the Court.

**2. As to the Sufficiency of the Allegations in the Complaint.**

To state a claim under Section 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941, 944 N.Y.S.2d 452, 967 N.E.2d 675 (N.Y.2012). Further, each plaintiff must "individually plead [each of] the disclosures he or she received were inadequate, misleading, or false, and that she was injured as a result of the insufficient or false disclosures." *Belfiore v. Procter & Gamble Co.*, 94 F.Supp.3d 440, 446 (E.D.N.Y. 2015). The Court finds that the allegations in the Complaint lack the particularity required to satisfy the notice pleading requirements of Rule 8.

The Complaint generally asserts that the Defendants engaged in materially misleading behavior without setting forth any facts tying that behavior to the Plaintiffs' specific claims. It fails to identify the specific advertisements seen by each plaintiff and provides no explanation why those advertisement created a mistaken belief that purchasing a product would increase that plaintiff's chance of winning. Without this information, the Plaintiffs cannot state a Section 349 claim. *See Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 235 (E.D.N.Y. 2013) (dismissing Section 349 claim that "contain[ed] only general allegations about disclosures to all Plaintiffs and does not contain any allegations about the specific disclosures [the individual plaintiff] did or did not receive").

The Plaintiffs provide a number of explanations why the vagaries in the Complaint suffice to withstand a motion to dismiss. None are persuasive. The Plaintiffs cite previous lawsuits and Congressional findings where the Defendants were accused of engaging in deceptive behavior. These other allegations are tangentially relevant at best. While the Defendants' history of misconduct might theoretically add context to whether the advertisements were materially misleading, it sheds no light on whether the Plaintiffs, in particular, were misled. Similarly, the Plaintiffs contend that the Complaint contains examples of deceptive marketing materials sent by the Defendants. However, the Plaintiffs cannot recover for any deceptions in those materials unless they, in fact, received and/or viewed them. Moreover, the Court cannot determine whether the advertisements are materially misleading without knowing exactly what representations each plaintiff saw.

Stated otherwise, Section 349 does not create a strict liability scheme in which consumers may pursue private remedies simply because a defendant sent deceptions into the marketplace. To succeed, plaintiffs must tether that deception to their individual circumstances. As the Complaint

9

lacks any such connection, it cannot survive a motion to dismiss. *See Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 674 n.4 (E.D.N.Y. 2017) (refusing to consider advertisements that the plaintiff "never claim[ed] he saw—let alone relied on" when assessing Section 349 claim).

Lastly, with respect to injury, the Plaintiffs fail to articulate how purchasing products from the Defendants injured them. It appears that the Plaintiffs believe they were injured because they purchased products they did not need in an attempt to increase their chances of winning a prize. However, it is well-settled that violations of Section 349 do not entitle aggrieved consumers to a refund merely because the defendant procured the plaintiff's purchase through deception. *See Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999) (rejecting the theory that "consumers who buy a product that they would not have, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349").

The rationale for this rule is that "deceived consumers may nevertheless receive—and retain the benefits of—something of value, even if it is not precisely what they believed they were buying." *Servedio v. State Farm Ins. Co.*, 889 F.Supp.2d 450, 452 (E.D.N.Y.2012). In other words, plaintiffs do not suffer a cognizable injury unless they can articulate an actual pecuniary harm, such as paying a higher price for the product than it was worth. *See, e.g.*, *Kacocha v. Nestle Purina Petcare Co.*, No. 15-cv-5489, 2016 WL 4367991, at *14–16 (S.D.N.Y. Aug. 12, 2016) (finding that complaint stated a claim by alleging that the Plaintiff "would not have paid the premium price he paid" to buy the products at issue absent the misrepresentation). As the Complaint is without such an allegation, it fails as a matter of law.

Therefore, the Court grants the Defendants' motion to dismiss with respect to the Plaintiffs' Section 349 claims, but grants the Plaintiffs leave to file an amended complaint addressing the problems identified by the Court.

## II. CONCLUSION

For the foregoing reasons, the Court grants the Defendants motion to dismiss as follows. The Court dismisses the Plaintiffs' CAN SPAM, DMPEA, and Section 369e claims with prejudice. The Court dismisses the Plaintiffs' Section 349 claim without prejudice. Because the Plaintiffs have no surviving claims, the Court denies the Defendants' motions to strike and compel as moot.

The Plaintiffs are directed to file an amended complaint consistent with this opinion no later than 30 days from the issuance of this opinion.

It is **SO ORDERED**:

Dated: Central Islip, New York

March 12, 2019

/s/ Arthur D. Spatt

ARTHUR D. SPATT

United States District Judge