**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

EARL WRIGHT, RAMONA HOLDEN,
ETTA WILLIAMS, MICHAEL HAMILTON,
JOSEPH EKO, LINDA PHILLIPS, ELAINE
WILHELM, ANTHONY GILLESPIE, MARK
CARLISLE, VERNITA JESSIE, CHERYL
RIFE, SANDY SAMENS, RUTHIE ORTIZ
SOUDJIAN,

                Plaintiffs,

    v.

PUBLISHERS CLEARING HOUSE,
INCORPORATED and PUBLISHERS
CLEARING HOUSE, LLC,

                Defendants.

Case No. 2:18-cv-02373 (ADS)(AYS)

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT**
**OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT, STRIKE CLASS**
**ALLEGATIONS AND, IN THE ALTERNATIVE, COMPEL ARBITRATION**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Defendants Publishers*
*Clearing House, Incorporated and*
*Publishers Clearing House, LLC*

## TABLE OF CONTENTS

Page

FACTS ...................................................................................................................1

    A.   This Court's Prior Decision in The Case ....................................................1

    B.   The Amended Complaint .............................................................................3

ARGUMENT ..........................................................................................................5

I.    PLAINTIFFS LACK STANDING UNDER GBL SECTION 349 BECAUSE THEY ARE NOT NEW YORK RESIDENTS AND NO DECEPTION IS ALLEGED TO HAVE OCCURRED IN NEW YORK ..........................................6

II.   PLAINTIFFS HAVE ALSO FAILED TO ALLEGE FACTS SUFFICIENT TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ...............9

    A.   Plaintiffs Still Have Not Pled What Alleged Representations Were Seen By Several Plaintiffs. .......................................................................10

    B.   The Language Of The Representations Cannot Be Deceptive As A Matter Of Law Because The Terms Of Use Are Clear.............................10

    C.   Plaintiffs Have Attempted To Create The Illusion Of Deception In The Amended Complaint By Piecing Together Excerpts Of Different Advertisements, Which They Have Failed To Plausibly Allege Were Actually Presented By Defendant In That Manner To Any Given Plaintiff. .....................................................................................................11

    D.   Plaintiffs Have Not Alleged How The Advertisements Caused Their Injuries .......................................................................................................13

    E.   Plaintiffs Have Not Alleged Any Cognizable Damages............................14

    F.   The Claims of Plaintiffs Not Included in the Caption of the Amended Complaint Must Be Dismissed. ................................................................16

III.  EVEN IF INDIVIDUAL GBL § 349 CLAIMS SURVIVE, THE CLASS ALLEGATIONS SHOULD BE STRICKEN OR SUBJECT TO INDIVIDUAL ARBITRATION...................................................................16

    A.   Plaintiffs' Claims Concerning Online Advertisements Are Subject To Individual Arbitrations............................................................................19

IV.    IN THE ALTERNATIVE IF THE COMPLAINT IS NOT DISMISSED IN
       ITS ENTIRETY, ANY SURVIVING INDIVIDUAL ONLINE CLAIM IS
       SUBJECT TO MANDATORY ARBITRATION ................................................20

       A.    Notice Of The Arbitration Provision Was Reasonably Conspicuous ........20

CONCLUSION...........................................................................................................................25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abraham v. American Home Mortg. Servicing, Inc.*,
    947 F. Supp. 2d 222 (E.D.N.Y. 2013) ............................................................................13, 15

*Aerospace, Inc. v. CIS Air Corp.*,
    352 F.3d 775 (2d Cir. 2003)........................................................................................................24

*All. For Envtl. Renewal, Inc. v. Pyrmaid Crossgates Co.*,
    436 F.3d 82 (2d Cir. 2006)............................................................................................................5

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)....................................................................................................................20

*Amiron Dev. Corp. v. Sytner*,
    2013 WL 1332725 (E.D.N.Y. Mar. 29, 2013)..........................................................................14

*In re Amla Litig.*,
    282 F. Supp. 3d 751 (S.D.N.Y. 2017)................................................................................18, 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................................6

*AT&T Mobility, LLC v. Concepcion*,
    131 S. Ct. 1740 (2011)................................................................................................................20

*Belfiore v. Procter & Gamble Co.*,
    94 F. Supp.3d 440 (E.D.N.Y. 2015) ........................................................................................11

*Berkson v. Gogo LLC*,
    97 F. Supp. 3d (E.D.N.Y. 2015) ..............................................................................................24

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
    2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017)........................................................................22

*Broder v. MBNA Corp.*,
    281 A.D.2d 369 (1st Dep't 2001) ............................................................................................12

*Brower v. Gateway 2000, Inc.*,
    246 A.D.2d 246 (1st Dep't 1998) ............................................................................................24

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006).....................................................................................................................25

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016)......................................................................5

*Chiste v. Hotels.com L.P.*,
    756 F. Supp. 2d 382 (S.D.N.Y. 2010)......................................................6

*Chow v. Neutrogena Corp.*,
    2013 WL 5629777 (C.D. Cal. Jan. 22, 2013) ........................................18

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013)................................................................8, 9

*Danann Realty Corp. v. Harris*,
    5 N.Y.2d 317 (1959) ............................................................................10

*Dash v. Seagate Tech. U.S. Holdings, Inc.*,
    27 F. Supp. 3d 357 (E.D.N.Y. 2014) ....................................................10

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)..............................................................................20

*Derbaremdiker v. Applebee's Int'l, Inc.*,
    2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012) ................................12, 16

*Derbaremdiker v. Applebee's Int'l, Inc.*,
    519 F. App'x. 77 (2d Cir. 2013) ...........................................................13

*Fedotov v. Peter T. Roach & Assocs., P.C.*,
    354 F. Supp. 2d 471 (S.D.N.Y. 2005)...................................................17

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013).............................................................10, 12

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ..................................................................23

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012)...................................................22

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990)..................................................................18

*Gomez-Jimenez v. New York Law Sch.*,
    103 A.D.3d 13 (1st Dep't 2012) ...........................................................12

*Jemiri v. Pub. Serv. Enterprise Group Corp.*,
    2018 WL 1115152 (E.D.N.Y. Feb. 27, 2018)........................................20

*Jennifer Matthew Nursing & Rehab. Ctr. v. U.S. Dep't of Health and Human Servs.*,
  607 F.3d 951 (2d Cir. 2010) .................................................................................5

*Johnpoll v. Thornburgh*,
  898 F.2d 849 (2d Cir. 1990) .................................................................................19

*Katz v. Cellco P'ship*,
  794 F.3d 341 (2d Cir. 2015) .................................................................................25

*Kaufman v. Sirius XM Radio, Inc.*,
  474 F. App'x 5 (2d Cir. 2012) ...............................................................................7

*Kim v. Carter's Inc.*,
  598 F.3d 362 (7th Cir. 2010) ...............................................................................15

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) .................................................................................5

*Marcus v. AT&T Corp.*,
  138 F.3d 46 (2d Cir. 1998) .................................................................................15

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008) ...............................................................................19

*Meyer v. Uber Technologies, Inc.*,
  868 F.3d 66 (2d Cir. 2017) ............................................................20, 21, 22, 23

*Morrison v. Nat'l Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008) .................................................................................5

*Mouzon v. Radiancy, Inc.*,
  85 F. Supp. 3d 361 (D.D.C. 2015) .........................................................................8

*Nelson v. MillerCoors, LLC*,
  246 F. Supp. 3d 666 (E.D.N.Y. 2017) ..................................................................14

*Oom v. Michaels Companies Inc.*,
  2017 WL 3048540 (W.D. Mich. July 19, 2017) ....................................................17

*Ott v. Mortg. Investors Corp. of Ohio*,
  2014 WL 6851964 (D. Or. Dec. 3, 2014) ..............................................................17

*Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*,
  2009 WL 1119409 (S.D.N.Y. Apr. 26, 2009) ..........................................................8

*Pilgrim v. Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011) ...............................................................................17

v

*Plazza v. Airbnb, Inc.*,
    289 F. Supp. 3d 537 (S.D.N.Y. 2018)................................................................20

*Ragone v. Atl. Video of Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010)........................................................................20

*Rapcinsky v. Skinnygirl Cocktails, L.L.C.*,
    2013 WL 93636 (S.D.N.Y. Jan. 9, 2013) ............................................................18

*Matter of Rhone-Poulenc Rorer, Inc.*,
    51 F.3d 1293 (7th Cir. 1995) ......................................................................18

*Rhulen Agency, Inc. v. Alabama Ins, Guar Ass'n*,
    896 F.2d 674 (2d Cir. 1990)..........................................................................5

*Samuelson v. Union Carbide Corp.*,
    1986 WL 1442 (S.D.N.Y. Jan. 29, 1986) ............................................................10

*Saphirstein v. Mauzone Mania LLC*,
    2017 WL 3278893 (E.D.N.Y. Jul. 31, 2017) ........................................................13

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012)........................................................................24

*Servedio v. State Farm Ins. Co.*,
    531 F. App'x 110 (2d Cir. 2013) ...................................................................15

*Servedio v. State Farm Ins. Co.*,
    889 F. Supp. 2d 450 (E.D.N.Y. 2012) ..............................................................15

*Sharpe v. Puritan's Pride, Inc.*,
    2019 WL 188658 (N.D. Cal. Jan. 14, 2019) ........................................................8

*Sidney-Vinstein v. A.H. Robins Co.*,
    697 F.2d 880 (9th Cir. 1983) ......................................................................17

*SimplexGrinnell L.P. v. Integrated Sys. & Power, Inc.*,
    642 F. Supp. 2d 167 (S.D.N.Y. 2009)..............................................................8

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999) ...............................................................................15

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009).........................................................................15

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)..............................................................................5

*Sultan v. Coinbase, Inc.*,
    354 F. Supp.3d 156 (E.D.N.Y. 2019) ...................................................................21

*Workmon v. Publishers Clearing House*,
    118 F.3d 457 (6th Cir.1997) ..............................................................................12

*Wynn v. N.Y. City House. Auth.*,
    314 F.R.D. 122 (S.D.N. Y. 2016) ................................................................18, 19

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 2 (2010)...........................................................20

Federal Arbitration Act, 9 U.S.C. § 3 (2010)...........................................................25

Federal Arbitration Act .............................................................................................20

Deceptive Mail Prevention and Enforcement Act, 39 U.S.C. § 3017(e). .................1

New York's General Business Law Section § 349............................................ *passim*

New York's General Business Law Section § 350........................................................6

New York's General Business Law § 369(e) ...............................................................1

Non-Solicited Pornography and Marketing Act, 15 U.S.C. § 7701 *et seq* ...............1

**Rules**

Fed. R. Civ. P. 8......................................................................................................13

Fed. R. Civ. P. 12(b)(1).............................................................................................5

Fed. R. Civ. P. 12(b)(6)........................................................................................5, 6

Fed. R. Civ. P. 12(f)................................................................................................17

Fed. R. Civ. P. 23(a) ..............................................................................................18

Fed. R. Civ. P. 23(b)(3)......................................................................................18, 19

Fed. R. Civ. P. 23(c)(1)(A).....................................................................................17

Fed. R. Civ. P. 23(d)(1)(D).....................................................................................17

**Other Authorities**

American Arbitration Association, "Commercial Arbitration Rules and Mediation
    Procedures".....................................................................................................25

# FACTS

## A.  This Court's Prior Decision in The Case

This Court has already decided all material issues presented by this motion to dismiss the Amended Complaint.  In its March 12, 2019 Memorandum Of Decision & Order (the "Decision"), dismissing the original complaint in its entirety, this Court dismissed with prejudice Plaintiffs' claims under the federal Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN SPAM"), the federal Deceptive Mail Prevention and Enforcement Act ("DMPEA"), and New York's General Business Law ("GBL") § 369(e) claims. This Court dismissed Plaintiffs' claim for relief under GBL § 349 without prejudice and granted Plaintiffs leave to replead that one claim.

In the Decision, this Court properly dismissed Plaintiffs' GBL § 349 claim for three reasons, each of which Plaintiffs have failed to correct in their Amended Complaint.

First, the Court dismissed the GBL § 349 claim for lack of standing because these non-New York Plaintiffs alleged "no specific facts showing that any part of the transactions occurred in New York." (Decision at 7.)  In the Amended Complaint, Plaintiffs have only added general and conclusory allegations that Defendants disseminated printed and digital materials and billing statements from their offices in Jericho, New York, allegations which the New York Court of Appeals has held are insufficient for non-New York plaintiffs to establish standing under GBL § 349.  Plaintiffs have still failed to plead any facts from which this Court could find that any actionable deception occurred in New York, as both the Second Circuit Court of Appeals and multiple District Courts within this Circuit have consistently held is required to establish standing.

Second, this Court held in its Decision that Plaintiffs' GBL § 349 claim was insufficient as a matter of law because they "fail[ed] to identify the specific advertisements seen by each

Plaintiff and provide[d] no explanation why those advertisement[s] created a mistaken belief that purchasing a product would increase that plaintiff's chance of winning." (Decision at 9.) This failure, too, remains a fatal flaw in the Amended Complaint. Plaintiffs have still not alleged which specific representations were viewed by certain Plaintiffs or how those representations resulted in deception and a specific injury for any Plaintiff. They even make allegations concerning persons who are not even parties to this action or included in the caption of the Amended Complaint. Moreover, Plaintiffs still fail to allege how the materials included in their amended claims are even deceptive at all, relying again on vague and conclusory allegations. Thus, the Amended Complaint, like the original complaint, fails to "tether that [alleged] deception to [plaintiffs'] individual circumstances" (Decision at 9.), and as a result it cannot survive a motion to dismiss.

Third, this Court dismissed the GBL § 349 claim for failure to "articulate an actual pecuniary harm", such as paying a higher price for the product than it was worth." (Decision at 10.) Plaintiffs purport to have corrected this deficiency simply by including a conclusory pleading that they paid a "premium or higher price for products than what those products were worth . . .".) (Am. Compl. ¶ 103(a-b)). Merely writing this Court's prior holding into the Amended Complaint in a non-specific and conclusory fashion does not remedy the failure to "articulate an actual pecuniary harm". (Decision at 10.) It only serves to expose Plaintiffs' failure to make any factual allegation concerning what product(s) they purchased and what the alleged difference was between the product(s) they purchased and the comparable product(s) available on the market at the time of their purchase.

For each of these reasons, the Amended Complaint must be dismissed on the same grounds explained by this Court in its Decision.

The Amended Complaint also must be dismissed for reasons that this Court did not need to reach in its Decision.  For even if any individual GBL § 349 claims were to survive this motion to dismiss, which they should not, the class allegations must be stricken because the Amended Complaint demonstrates on its face that class certification here will be impossible under Rule 23, since the purported nationwide class cannot establish standing under the New York statute that is the only law Plaintiffs now seek to invoke and where individual issues permeate the allegations set forth in the Amended Complaint.  Finally, any surviving individual claims would have to be stayed because they are subject to mandatory arbitration.

### B.  The Amended Complaint

In their Amended Complaint, Plaintiffs generally allege that PCH used deceptive marketing tactics to induce Plaintiffs and absent class members to purchase products in the belief that doing so would enhance their chances of winning the sweepstakes, when in fact no purchase is necessary to enter the sweepstakes and buying does not help one win. (*See*, *e.g.*, Am. Compl. ¶¶ 1, 39, 44-51.)  Plaintiffs claim this alleged deception is effectuated through PCH advertising materials which were reviewed by Plaintiffs at unspecified times in the past. (*Id.*, ¶¶ 3-16, 44-51.)

As was the case with the original complaint, in their Amended Complaint Plaintiffs do not provide which specific advertisements were seen for a number of Plaintiffs. (*See* Am. Compl. ¶52.)  When specific advertisements are purportedly included for some Plaintiffs, they include only extracted snippets or summaries of varying paper and online advertisements alleged to be deceptive that are part of a much larger promotion. (*Id.*, ¶¶ 40-41,43-45.) In no case do Plaintiffs provide what purports to be the entirety of any single promotion that shows the context in which such allegedly deceptive statements were made. Nowhere do Plaintiffs allege how any particular Plaintiff was misled by a particular advertisement; *per contra*, Plaintiffs incorporate by reference

PCH's Official Rules, which clearly state in prominent all-capital letters: "NO PURCHASE OR PAYMENT IS NECESSARY TO ENTER!" (Siegal Dec., Ex. C at 2.)

On the subject of a connection to New York, Plaintiffs' only new allegation is that "Plaintiffs were sent form deceptive and misleading printed materials [and digital marketing materials] from PCH offices in Jericho, New York," (Am. Compl. at ¶¶ 84,87.), and that PCH processed Plaintiffs' purchase orders from New York. (Am. Compl. ¶91.) Plaintiffs have not alleged that any part of the transactions they sue on were transacted by them in New York or that Plaintiffs were deceived in New York.

On pecuniary damages, Plaintiffs aver for the first time in conclusory terms that they paid a "premium or higher price for products than what those products were worth . . . ." (Am. Compl. ¶¶103(a).), (b)). But this bare conclusory allegation, obviously pulled directly from this Court's holding in the Decision on the deficiencies of the original complaint, is not supported by a single specific factual allegation. Plaintiffs have not pleaded for example, what products they purchased or what the alleged difference was between the PCH product and a comparable product available on the market at the time of Plaintiffs' purchase resulting in a cognizable injury.

On the obligation to arbitrate, Plaintiffs again concede that the PCH website contains an arbitration clause in its Terms of Use ("TOU") under paragraph 32, entitled "Governing Law, Forum and Arbitration," that relates to online users. (Siegal Dec., Ex. B at ¶ 32.) The arbitration provision states in relevant part as follows:

> You agree that in the event of any dispute which arises between the parties relating to this Agreement . . .  said dispute shall be submitted solely and exclusively to arbitration. Said dispute shall be submitted individually by You, and shall not be subject to any class action status. (*Id*.)

Plaintiffs provide no new facts regarding the arbitration provision but instead provide legal arguments in their Amended Complaint. (*See* Am. Compl. ¶¶ 70-77.)  While it is unclear

from the Amended Complaint which Plaintiffs used the PCH website, PCH can discern from the

allegations that Plaintiffs Wright, Holden, Williams, Hamilton, Phillips, Gillespie, Carlisle, Rife,

Samens, and a "Jeffrey Singleton" were online users. (*See id.*, ¶¶ 3, 5, 6, 8, 46-49.)

## ARGUMENT

Defendants are moving to dismiss the Amended Complaint under both Fed. R. Civ. P.

12(b)(1), for lack of standing, and under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon

which relief can be granted

For Plaintiffs to be able to proceed in this Court, they must establish subject-matter

jurisdiction. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Under Rule 12(b)(1),

"jurisdiction must be shown affirmatively, and that showing [may] not [be] made by drawing

from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Bank Ltd.*,

547 F.3d 167, 170 (2d Cir. 2008).  For a federal Court to have jurisdiction under Article III of the

Constitution, there must be a "case or controversy." *Jennifer Matthew Nursing & Rehab. Ctr. v.*

*U.S. Dep't of Health and Human Servs.*, 607 F.3d 951, 955 (2d Cir. 2010). For there to be a case

or controversy, a plaintiff must have standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547

(2016). At the pleading stage, a plaintiff must "affirmatively and plausibly" allege standing to

sue. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  If the Court finds

Plaintiffs lack standing to sue, it need not determine whether they have stated a cause of action

under Fed. R. Civ. P. 12(b)(6). *See Rhulen Agency, Inc. v. Alabama Ins, Guar Ass'n*, 896 F.2d

674, 678 (2d Cir. 1990); *All. For Envtl. Renewal, Inc. v. Pyrmaid Crossgates Co.*, 436 F.3d 82,

87-88 (2d Cir. 2006).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as

true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-

78 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the Court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* at 678. Although a Court must accept the Plaintiff's factual

allegations as true for purposes of a motion to dismiss, conclusory allegations are not to be

credited. *Id.* at 678.

## I.  PLAINTIFFS LACK STANDING UNDER GBL SECTION 349 BECAUSE THEY ARE NOT NEW YORK RESIDENTS AND NO DECEPTION IS ALLEGED TO HAVE OCCURRED IN NEW YORK

The only basis cited by Plaintiffs for seeking to sustain this case in this Court at this point

is New York's GBL § 349.  Acknowledging their standing problem, Plaintiffs actually refer to

this statute in their Amended Complaint as a statute from "a distant forum, the State of New

York." (Am Compl. ¶ 77.)

All material aspects of the alleged deceptive transaction occurred outside of New York.

Plaintiffs viewed PCH's marketing materials outside of New York. They placed their online

orders on the internet while located outside of New York. They filled out purchase order forms

outside of New York. The products were shipped to them at addresses outside of New York. S*ee

Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 403 (S.D.N.Y. 2010) (dismissing GBL § 349

claims for out-of-state plaintiffs because the deceptive practice occurred when plaintiffs "made

and paid for their reservations on the internet from their respective home states").

For the same reasons, this Court dismissed the GBL § 349 claim as pled in the original

complaint, this Court should dismiss the Amended Complaint.  In its Decision, this Court found

that Plaintiffs had not alleged facts sufficient to establish their standing to sue under GBL § 349

because they had not alleged facts sufficient to support the conclusory assertion that "a

substantial amount of the acts and omissions complained of occurred in this District (New

York)."  (Decision at 7.)  This Court rejected Plaintiffs' argument that the existence of a New

York choice-of-law provision in the parties' agreement, standing alone, provided the

transactional nexus to New York sufficient to confer standing.  (*Id*.).  This Court only granted

leave to amend in case "some specific transactional nexus to New York omitted from the

Complaint" could be alleged in an Amended Complaint.  (Decision at 8.)  Plaintiffs have failed

to meet this Court's challenge.

In dismissing Plaintiffs' GBL § 349 claim, this Court utilized the criteria for standing as

established by the New York Court of Appeals in *Goshen v. Mutual Life Ins. Co. of N.Y*., yet

Plaintiffs have failed to replead their claims to address *Goshen's* holding that "'hatching a

scheme' or originating a marketing campaign in New York in and of itself" does not constitute

an actionable deceptive act in New York State" when the alleged deception itself occurred

outside the state. 98 N.Y.2d 314, 325 (2002).  The only new non-conclusory facts alleged in the

Amended Complaint are that "Plaintiffs were sent form deceptive and misleading printed

materials [and digital marketing materials] from PCH offices in Jericho, New York" (Am.

Compl. at ¶¶ 84,87), and that Plaintiffs were directed to return their orders to PCH offices in

New York. (Am. Compl. ¶91.)  Either taken separately or together, these new allegations are not

sufficient to provide the "specific transactional nexus to New York" that was missing from the

original complaint. (Decision at 8.)

Both the Second Circuit Court of Appeals and multiple District Courts in this Circuit

have consistently held that the place where the alleged deception occurred, and not the place

where the allegedly deceptive marketing materials were created, printed or mailed from,

establishes "transactional nexus."  *Kaufman v. Sirius XM Radio, Inc*., 474 F. App'x 5, 7-8 (2d

Cir. 2012) (affirming dismissal of GBL § 349 claims of non-New York resident class members

who did not receive deceitful information in New York); *Pentair Water Treatment (OH) Co. v.

Cont'l Ins. Co*., 2009 WL 1119409, at *4 (S.D.N.Y. Apr. 26, 2009) (that principal place of

defendant's business is in New York is insufficient for GBL § 349 to be applicable);

*SimplexGrinnell L.P. v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 203 n.19 (S.D.N.Y.

2009) (that marketing plan originates in New York is insufficient to allow out-of-state residents

to sue under GBL § 349); *Mouzon v. Radiancy, Inc*., 85 F. Supp. 3d 361, 376 (D.D.C. 2015)

(marketing strategy emanating from principal place of business in New York inadequate for

standing GBL § 349).

      Nor does the processing of purchase orders for products purchased by Plaintiffs in New

York support standing.  The "transaction" at issue is the one in which the Plaintiff alleges to have

been deceived.  *Goshen*, 98 N.Y.2d at 324 ("the transaction in which the consumer is deceived

must occur in New York.").  As a result, "[t]he fact that some data processing and other back

office functions were performed in New York for the transaction is of no moment. At most, those

functions simply fulfilled a purchase that was made on the basis of a deception that occurred

outside the state." *Sharpe v. Puritan's Pride, Inc*., 2019 WL 188658, at *3 (N.D. Cal. Jan. 14,

2019) (analyzing GBL § 349 claim).

      Even when considered in combination with the fact that the parties' agreement, the TOU,

contains a New York choice-of-law provision, which this Court previously rejected as being

sufficient on its own to confer GBL standing, the allegations that the allegedly deceptive

marketing materials were created in New York are insufficient to confer standing.  The facts as

alleged in the Amended Complaint are not even sufficient to satisfy what this Court in its earlier

Decision called the "more lenient standard" articulated by the Second Circuit's decision in *Cruz

v. FXDirectDealer, LLC*, 720 F.3d 115, 123–24 (2d Cir. 2013). (Decision at 7.)  As the Second

Circuit noted, the facts of that case made the standing question a "close call," *Cruz*, 720 F.3d 115

at 123, and those facts presented a substantially greater New York transactional nexus than those presented here.

In *Cruz*, the alleged deceptive transaction involved currency exchange trading accounts held in New York in which the defendant collected and held the money hostage until the plaintiffs submitted redemption forms to New York. *Id*. at 118, 123-24. The defendant required *all* communication to be physically sent to the defendant's office in New York. *Id.* The alleged deceptive conduct included physical actions allegedly taken by the defendant in New York to slow down trades, create false error messages, hijack trades, and manipulate prices, as part of the overall allegedly defective scheme. *Id*. at 119.

The facts of this case are nothing like those presented in *Cruz*. The alleged deception in this case consists exclusively of statements made on marketing materials that were received by Plaintiffs in various states outside of New York. Plaintiffs largely placed their orders online and received physical purchased products at their addresses outside of New York. In short, Plaintiffs are seeking protections under a statute from a State that they have characterized as "a distant forum, the State of New York" to which they had little or no connection. (*See* Am. Compl. ¶ 77.) Despite having been afforded an opportunity to amend their complaint, Plaintiffs have failed to allege any New York transactional nexus that would confer standing to assert their claim for a violation of New York's GBL § 349. That claim should now be dismissed with prejudice.

## II. PLAINTIFFS HAVE ALSO FAILED TO ALLEGE FACTS SUFFICIENT TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In its Decision dismissing the original complaint, this Court held that the allegations in the "complaint lack the particularity required to satisfy the notice pleading requirements of Rule 8." (Decision at 8.) Despite having been afforded an opportunity to amend, Plaintiffs have still

failed to adequately allege the material deception, causation and injury elements of their GBL § 349 claim.

### A.  Plaintiffs Still Have Not Pled What Alleged Representations Were Seen By Several Plaintiffs

As the Court observed in evaluating the allegations of the original complaint, it was deficient because it "sheds no light on whether the Plaintiffs, in particular, were mislead." (Decision at 9.)  Just as in their original complaint, Plaintiffs have again failed to plead in their Amended Complaint "exactly what representations" were seen by Plaintiffs Carlisle, Eko, and Ortiz Soudjian. (Decision at 9; Am. Compl. ¶56.) For these reasons alone, the individual claims of Plaintiffs Carlisle, Eko and Ortiz Soudjian must be dismissed.

### B.  The Language Of The Representations Cannot Be Deceptive As A Matter Of Law Because The Terms Of Use Are Clear

For the remaining plaintiffs, there can be no GBL § 349 claim where, as here, there was full disclosure in the TOU, and Office Rules. *See Workmon v. Publishers Clearing House*, 118 F.3d 457, 458-59 (6th Cir.1997) (dismissing deceptive advertising claim under Michigan law which like New York law provides no remedy for a trade practice that is confusing only to an unreasonable person); *Derbaremdiker v. Applebee's Int'l, Inc.*, 2012 WL 4482057, at *4 (E.D.N.Y. Sept. 26, 2012) (Matsumoto J.), *aff'd*, 519 F. App'x. 77 (2d Cir. 2013) (finding reasonable consumer would not be misled about sweepstakes odds because the defendant directed consumers to defendant's website for the Official Rules); *Gomez-Jimenez v. New York Law Sch.*, 103 A.D.3d 13,17 (1st Dep't 2012) (dismissing class action when materials were not found to be materially misleading because the defendant fully disclosed the terms and conditions of the alleged deceptive transaction that caused harm); *Fink*, 714 F.3d at 742 (citing *Broder v. MBNA Corp.*, 281 A.D.2d 369 (1st Dep't 2001).

This Court may properly consider the TOU and the Official Rules for the sweepstakes that were incorporated in Plaintiffs' Amended Complaint by reference and preclude Plaintiffs' claims of deception. *See e.g. Derbaremdiker v. Applebee's Int'l, Inc*., 519 F. App'x. 77, 78 (2d Cir. 2013); *Eze*, 2010 WL 3189813, at *2; (Am. Compl. ¶71.) TOU incorporates PCH's Official Rules and Sweepstakes Facts. (Siegal Dec., Ex. B at 1.) The Official Rules clearly state: "**NO PURCHASE OR PAYMENT NECESSARY TO ENTER**" and "**BUYING WON'T HELP YOU WIN.**" (*Id*., Ex. C, at 2.) Likewise, the Sweepstakes Facts included in the Official Rules plainly state: "**Enter for Free.** You don't have to buy anything to enter" and "**Buying Won't Help You Win.** Your chances of winning without a purchase are the same as the chances of someone who buys something." (*Id*., Ex. C, at 1.) In light of the TOU, PCH's materials could not be materially deceptive to a reasonable consumer.

### C.   Plaintiffs Have Attempted To Create The Illusion Of Deception In The Amended Complaint By Piecing Together Excerpts Of Different Advertisements, Which They Have Failed To Plausibly Allege Were Actually Presented By Defendant In That Manner To Any Given Plaintiff

As defendants argued the original complaint also failed to sufficiently plead that the advertising was materially deceptive because a plaintiff must show that the allegedly deceptive advertisements "were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). As New York courts have stated, the law is clear that " 'if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." *Samuelson v. Union Carbide Corp*., 1986 WL 1442, at *3 (S.D.N.Y. Jan. 29, 1986) (citing *Danann Realty Corp. v. Harris*, 5 N.Y.2d

317, 322 (1959)).  "A plaintiff who alleges that he was deceived by an advertisement may not

misquote or misleadingly excerpt the language of the advertisement in his pleadings." *Fink,* 714

F.3d 739 at 742; s*ee Dash v. Seagate Tech. U.S. Holdings, Inc.*, 27 F. Supp. 3d 357, 361

(E.D.N.Y. 2014) (Wexler, J.) (each plaintiff must "describe[] in detail the allegedly misleading

and deceptive statements … upon which he relied in purchasing the product"). Each plaintiff

must "individually plead [each of] the disclosures he or she received were inadequate,

misleading, or false, and that she was injured as a result of the insufficient or false disclosures."

*Belfiore v. Procter & Gamble Co*., 94 F. Supp.3d 440, 446 (E.D.N.Y. 2015).

The advertisements discussed or attached in the Amended Complaint are, on their face,

not deceptive to a reasonable consumer. Plaintiffs advance flawed theories that certain materials

would deceive one to make a future purchase in exchange for a sweepstakes entry. For example,

Plaintiffs highlight PCH's statement "We've reserved an EXCLUSIVE Cash Prize Just To

Thank Past Orderers, Like You!" (Am. Compl. ¶49.) This statement is nothing more than a

message conveying PCH's appreciation to the recipient for their past order—not encouraging

them to place new orders which refutes Plaintiffs' allegation.  Plaintiffs additionally point to an

alleged email where Plaintiffs are informed they have won the sweepstakes but then informed

that the email was in error. (*See* Am. Compl. ¶46.) It is unclear how that alleged mistake from a

company would entice the consumer to then make a purchase from that company.

To create an illusion of deception where it doesn't otherwise exist, Plaintiffs have tried to

excerpt or summarize advertisements and juxtaposed them in a way to make them appear

misleading, without providing complete advertisements to show the context in which the

excerpts appeared. Thus, it is Plaintiffs, not Defendants, who have "combine[d] the

advertisements in such a way to create a deception." (*See* Am. Compl. ¶¶44-57.) For example, as

an exhibit to the Amended Complaint, Plaintiffs overlap three different pieces of paper from different promotions with the page edges barely visible and compile it on one page in order to create an appearance of deception on behalf of PCH. (*See* Ex. 2 to Am. Compl.) Plaintiffs again juxtapose statements that are located on two different sides of a page regarding two different topics in order to misleadingly excerpt language of the advertisements. (*See* Am. Compl. ¶51(b).) Even within one exhibit, Plaintiffs conjoin marketing materials that are excerpts of online emails with direct mail. (*See* Ex. 9 to Am. Compl.)

### D. Plaintiffs Have Not Alleged How The Advertisements Caused Their Injuries

This Court also dismissed the original complaint because, among other things, Plaintiffs did not "tether that deception to their individual circumstances." (Decision at 9.)  Plaintiffs again fail to adequately allege causation because they do not allege any facts that show how the alleged deception caused any of them to purchase a product. (Am. Compl. ¶¶ 103.) The allegations relating to portions of advertisements in paragraphs 44-51 of the Amended Complaint do not tether a specific purchase made by any Plaintiff to any specific allegedly deceptive advertisement. *See*, *e.g.*, *Saphirstein v. Mauzone Mania LLC*, 2017 WL 3278893, at *2 (E.D.N.Y. Jul. 31, 2017) (Korman, J.) (group pleading fails to satisfy the requirements of Fed. R. Civ. P. 8(a) or 9(b)); *Abraham v. American Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 234 (E.D.N.Y. 2013) (Kuntz, J.) ("each plaintiff must individually plead the disclosures he or she received were inadequate … and that she was injured as a result"); *Amiron Dev. Corp. v. Sytner*, 2013 WL 1332725, at *5 (E.D.N.Y. Mar. 29, 2013) (Seybert, J.) (group pleading fails to give defendant notice of alleged claims).

The party allegations in which Plaintiffs are described, allege for 10 of the 14 Plaintiffs only that they purchased a product "after receiving PCH marketing materials." (Am. Compl.

¶¶ 4, 7, 9 -16.) There are no allegations of causation, just temporal proximity. Meanwhile, three of the other Plaintiffs, Williams, Hamilton and Gillespie, merely allege that they used PCH Search & Win "and" have been customers, providing neither a temporal nor a causal link. *Id*. ¶¶ 5-6, 8. The remaining Plaintiff Wright, summarily alleges what led him to believe that his chances of winning would be increased. *Id*. ¶ 3. There is no allegation that any representation, much less a particularly identified representation, caused any specific purchase. Interestingly, it is unclear if another individual, Mr. Singleton, included in the body of the Amended Complaint but not in the description of "Parties," is even a plaintiff. (*See* Am. Compl. Section II "Parties," ¶47.) Thus, Mr. Singleton is not included anywhere else in the Amended Complaint—much less alleged to have any injuries as a result of PCH marketing materials. Such vague and conclusory allegations are insufficient to allege causation under the GBL. *See*, *e.g.*, *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666 (E.D.N.Y. 2017) (Kuntz, J.) (dismissing GBL § 349 claim on, *inter alia*, causation grounds, because a plaintiff must individually plead each of the disclosures he or she received was inadequate, misleading, or false, and that she was injured as a result thereof).

### E.  Plaintiffs Have Not Alleged Any Cognizable Damages

In the Decision, this Court held that "Plaintiffs fail to articulate how purchasing products from the Defendants injured them" because they did not allege a cognizable injury. (Decision at 10.) Plaintiffs have alleged that they "purchased products that they otherwise would not have…." (Am Compl. ¶103(c).) But, as this Court points out, it is established New York law that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have not suffered an injury under GBL §349. *See Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55-56, (1999); *Servedio v. State Farm Ins. Co*., 531 F. App'x 110, 111 (2d Cir. 2013); *Servedio v. State Farm Ins. Co*., 889 F. Supp. 2d 450, 452–53 (E.D.N.Y. 2012), (collecting cases). Nothing in the Amended Complaint cures this deficiency.

14

Plaintiffs allege that they "used an inferior search engine product Search & Win . . . ." (Am. Compl. ¶103(g).) However, Plaintiffs do not provide this Court with any information on how that "inferior search engine" resulted in an actual injury to any plaintiff. *See Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (dismissing GBL § 349 claim because Plaintiff "failed to plead a sufficient injury"); *Marcus v. AT&T Corp.*, 138 F.3d 46, 63 (2d Cir. 1998) (affirming dismissal of GBL § 349 claim because alleged harm was illusory not actual). Plaintiffs then aver in conclusory terms that they paid a "premium or higher price for products than what those products were worth . . . ." (Am. Compl. ¶¶103(a), (b).)  Plaintiffs do not allege what products they purchased or what the alleged difference was between the PCH product and a comparable product available on the market at the time of Plaintiffs' purchase. Plaintiffs have also failed to plead an ascertainable loss with enough specificity as to give PCH notice of possible damages. In short, the Amended Complaint adds no factual allegations specific to this case and merely recites conclusory allegations that this Court has already found, in its Decision to be insufficient. A generalized thread bare allegation of injury under the GBL is insufficient. *Abraham*, 947 F. Supp. 2d at 234-35 (dismissing GBL § 349 claim that failed to link specific plaintiff to specific injury).

"The plaintiffs in this case got the benefit of their bargain and suffered no actual pecuniary harm." *Kim v. Carter's Inc.,* 598 F.3d 362, 366 (7th Cir. 2010). In the case of *Derbaremdiker v. Applebee's Int'l, Inc*., 2012 WL 4482057, the plaintiff brought GBL claims in connection with a sweepstakes offered by the restaurant chain Applebee's. The plaintiff alleged that Applebee's implied that sweepstakes' participants had an increased chance of winning *Id*. at *2. The Court found that the plaintiff had failed to allege a cognizable injury, reasoning that the plaintiff needed to allege a harm that was separate and apart from the deception itself. *Id.* at *7.

The Court found that the plaintiff received exactly what was represented to him: the chance to win a prize. *Id*.

Here, Plaintiffs likewise received the product that they purchased. They received a tangible product that is not alleged to be defective or nonfunctional and they were given the opportunity to enter the sweepstakes. That they allegedly misunderstood that making a purchase was required to enter the sweepstakes is immaterial to their actual damages. (*See e.g.* Am. Compl. ¶¶48, 103 (d),(e),(f).) As clearly delineated in the Official Rules: "NO PURCHASE OR PAYMENT IS NECESSARY TO ENTER!" (Siegal Dec., Ex. C at 2.) A deceptive trade practice claim under New York's GBL will not lie where the alleged deceptive act itself was the only injury.

### F. The Claims of Plaintiffs Not Included in the Caption of the Amended Complaint Must Be Dismissed.

Plaintiffs also did not amend their complaint to include all Plaintiffs in the caption.  *Id*. Mr. Singleton and Ms. Ferrell are mentioned in the allegations but not included in the caption. (*Compare* caption to Am. Compl. at ¶¶ 12, 47.)  These individuals who have not been added to Plaintiffs' amended caption are not proper parties to this action. S*ee Med. Soc'y of New York v. UnitedHealth Grp*. Inc., 2019 WL 1409806, at *13 (S.D.N.Y. Mar. 28, 2019) (dismissing claims of purported plaintiffs that were not included in the caption). For these reasons alone, the individual claims of Jeffrey Singleton and Cynthia Ferrell must be dismissed.

### III. EVEN IF INDIVIDUAL GBL § 349 CLAIMS SURVIVE, THE CLASS ALLEGATIONS SHOULD BE STRICKEN OR SUBJECT TO INDIVIDUAL ARBITRATION

This case presents numerous individualized questions of fact and law making class action treatment inappropriate. As this Court correctly noted in dismissing the original complaint, "Section 349 does not create a strict liability scheme in which consumers may pursue private

remedies simply because a defendant sent deceptions into the marketplace. To succeed, plaintiffs must tether that deception to their individual circumstances." (Decision at 9.)

This Court is empowered to strike Plaintiffs' class allegations as facially deficient, and should do so here, where class certification is impossible. Fed. R. Civ. P. 23(c)(1)(A) directs a Court to determine "[a]t an early practicable time … whether to certify a class," and Fed. R. Civ. P. 23(d)(1)(D) authorizes a motion to strike class allegations, requiring "that the pleadings be amended to eliminate allegations about representation of absent persons." As here, when a complaint demonstrates on its face that a class cannot be certified, it is well within this Court's power to strike class allegations at the pleading stage. *See, e.g.*, *Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir. 2011) (affirming a trial Court's pre-discovery strike of class allegations); *Fedotov v. Peter T. Roach & Assocs., P.C.*, 354 F. Supp. 2d 471, 478 (S.D.N.Y. 2005) (stating that "defendant's Motion for Denial of Class Certification—a procedural 'preemptive strike' against this purported class action—is properly before this court").

Concurrently, Fed. R. Civ. P. 12(f) authorizes a court to strike spurious allegations in order to avoid the expenditure of time and money litigating such issues. *See e.g. Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 886 (9th Cir. 1983); *Ott v. Mortg. Investors Corp. of Ohio*, 2014 WL 6851964, at *11, *18 (D. Or. Dec. 3, 2014) (striking sub-class on Rule 12(f) grounds); *Oom v. Michaels Companies Inc.*, 2017 WL 3048540, at *7 (W.D. Mich. July 19, 2017) (striking class allegations where the proposed class could not be modified to avoid its fatalities).

No Plaintiff has standing to bring a GBL § 349 claim. But even if one did, Plaintiffs seek to certify a *nationwide* class (Am. Compl. ¶ 51), which is clearly impossible given that GBL § 349 only applies to New York residents or harm caused to an out-of-state resident in New

17

York. Accordingly, under well-established law, Plaintiffs cannot show the predominance of common questions of law under Fed. R. Civ. P. 23(b)(3) because the varying consumer protection statutes of all 50 states would have to apply. *See*, *e.g.*, *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1295-1301 (7th Cir. 1995); *In re Amla Litig.*, 282 F. Supp. 3d 751, 765 (S.D.N.Y. 2017) (denying certification of nationwide class of consumers where patchwork of different state laws would be overwhelming to a jury).

Deception is inherently an individualized issue, as the question depends, for example, on each Plaintiffs' level of education and experience, which advertisements they read, the reasonableness of their impressions and how (if at all) an advertisement caused them injury. *See*, *e.g.*, *Rapcinsky v. Skinnygirl Cocktails, L.L.C.*, 2013 WL 93636, at *9, n.3 (S.D.N.Y. Jan. 9, 2013) (denying class certification in advertising case because causation is individualized); *Chow v. Neutrogena Corp.*, 2013 WL 5629777, at *2 (C.D. Cal. Jan. 22, 2013) (same). Accordingly, Plaintiffs cannot show the predominance of common questions of fact.

As this Court has held in the Decision, in order to survive a motion to dismiss, each Plaintiff would necessarily have to allege, for example, which advertisements they saw, how seeing a specific advertisement caused each of them to purchase a product, whether they contacted customer service, or returned a product, and how they were harmed. Were this case properly pled, it would be rife with these sorts of individualized factual issues, making class certification inappropriate. No named Plaintiff could be a typical or adequate representative of an absent class member under Rule 23(a). *See*, *e.g.*, *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) (abrogated on other grounds); *Wynn v. N.Y. City House. Auth.*, 314 F.R.D. 122, 127 (S.D.N. Y. 2016). Clearly, individualized issues would overtake any common ones, which would defeat the predominance requirement and

make any trial unmanageable under Rule 23(b)(3). *See*, *e.g.*, *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 223 (2d Cir. 2008); *In re Amla Litig.*, 282 F. Supp. 3d at 765.

Moreover, Plaintiffs have admitted that anyone who participated in PCH's online sweepstakes programs was subject to a mandatory arbitration provision that included a class action waiver. (Am. Compl. ¶ 62.)  Because the class as proposed by Plaintiffs would include individuals whose claims are subject to individual arbitration and who have waived their right to pursue a class action in Court, the class allegations must be stricken. *See*, *e.g.*, *Johnpoll v. Thornburgh*, 898 F.2d 849, 852 (2d Cir. 1990); *Wynn*, 314 F.R.D. at 127-28 (S.D.N. Y. 2016).

### A. Plaintiffs' Claims Concerning Online Advertisements Are Subject To Individual Arbitrations

Plaintiffs admit that for online users, there is a mandatory arbitration provision in the TOU and selectively seek to utilize the TOU for their benefit as it pertains to their sole claim for relief but at the same time disavow the TOU when it comes to their obligation to proceed to arbitration. (Am. Compl ¶ 71.)  The arbitration provision contains a class action waiver, which means that Plaintiffs must individually arbitrate any surviving online claims with any remaining claims stayed pending the outcomes of those arbitrations. (*Id.*) While it is unclear from the Amended Complaint which Plaintiffs used the PCH website, PCH can discern from the allegations that Plaintiffs Wright, Holden, Williams, Hamilton, Phillips, Gillespie, Carlisle, Rife, Samens, and a "Jeffrey Singleton" were online users. (*See id.*, ¶¶ 3, 5, 6, 8, 46-49.)  PCH thus moves to compel arbitration as to those Plaintiffs, reserving its right to move as to the other Plaintiffs.

The arbitration provision here also contains a class action waiver, which must be enforced along with the arbitration provision. *See*, *e.g.*, *AT&T Mobility, LLC v. Concepcion*, 131

S. Ct. 1740, 1746 (2011); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 559 (S.D.N.Y. 2018)

(enforcing browser-based arbitration agreement including a class action waiver).

The online users here agreed to arbitration so, absent a showing that the provision is

unconscionable, the parties' agreement to arbitrate must be enforced.

## IV.  IN THE ALTERNATIVE IF THE COMPLAINT IS NOT DISMISSED IN ITS ENTIRETY, ANY SURVIVING INDIVIDUAL ONLINE CLAIM IS SUBJECT TO MANDATORY ARBITRATION

The Federal Arbitration Act ("FAA") expressly provides that "an agreement in writing to

submit to arbitration an existing controversy … shall be valid, irrevocable and enforceable." *See*

9 U.S.C. § 2 (2010). "It exemplifies this country's 'strong federal policy favoring arbitration as

an alternative means of dispute resolution.'" *Jemiri v. Pub. Serv. Enterprise Group Corp.*, 2018

WL 1115152, at *2 (E.D.N.Y. Feb. 27, 2018) (Spatt, J.) (citing *Ragone v. Atl. Video of*

*Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010)). Arbitration is a matter of contract and

"courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Express*

*Co. v. Italian Colors Rest.*, 570 U.S. 228, 228 (2013) (quoting *Dean Witter Reynolds, Inc. v.*

*Byrd*, 470 U.S. 213, 221 (1985)).

State contract law governs whether an agreement to arbitrate exists between the parties.

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). An agreement to arbitrate exists

"where the notice of the arbitration provision was reasonably conspicuous and manifestation of

assent unambiguous as a matter of law." *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 76 (2d

Cir. 2017).

### A.  Notice Of The Arbitration Provision Was Reasonably Conspicuous

While Plaintiffs admit to spending "countless hours on PCH's website," (Am. Compl. ¶

8), one cannot determine from the Amended Complaint which Plaintiffs actually read the

arbitration provision in the TOU.  "Actual notice, however, is irrelevant." *Sultan v. Coinbase, Inc.*, 354 F. Supp.3d 156, 161 (E.D.N.Y. 2019) (Block, J.).

Plaintiffs are bound by the terms because they were on "inquiry" notice. *Meyer*, 868 F.3d at 74-75 ("Where there is no evidence that the offeree had actual notice of the terms of the agreement, the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms.") "Whether a reasonably prudent user would be on inquiry notice turns on the clarity and conspicuousness of arbitration terms; in the context of web-based contracts, … clarity and conspicuousness are a function of the design and content of the relevant interface." *Id.* (internal citations omitted).

In *Meyer*, the Second Circuit found Defendant Uber's arbitration provision reasonably conspicuous, noting the design of an account registration page that contained a hyperlink to Terms of Service containing the provision. *See id.* The Second Circuit relied on the following relevant factors: (i) the registration page is uncluttered *Id.* at 78 (ii) "The text, including the hyperlinks to the Terms and Conditions and Privacy Policy, appears directly below the buttons for registration." *Id.* (iii) the Terms of Service are visible without scrolling and although small font, it is visible with underlined hyperlinks, and (iv) the Terms of Service is provided simultaneously to enrollment. *Id.* at 78

Here, the registration page on PCH's website is substantially similar to the page in *Meyer*. (*See* Siegal Dec., Ex. A.) The PCH registration page is uncluttered; it contains a form for the user's personal information with a large "Continue" button at the bottom. (*Id.*) Immediately below that button—which users must click to continue and create an account—are clearly labeled hyperlinks to PCH's TOU and Privacy Policy, accessible without scrolling. (*Id.*) The text is bright white to contrast with the dark red background, and the hyperlinks are underlined. (*Id.*)

The page only contains links to useful information, the font sizes are consistent, and there are no advertisements or buttons, other than the "Continue" button. (*Id*.)

The Amended Complaint makes several allegations about the TOU that simply are not true. First, Plaintiffs allege users must scroll to see the TOU. (Am. Compl. ¶ 74.) This is false. The link to the TOU is immediately below the "Continue" button, which users must click to create an account. (Siegal Dec., Ex. A.) Second, Plaintiffs allege the page "does not present the user with the Terms of Use on the same webpage as the link for continued use of the page." (Am. Compl. ¶ 75.) This allegation directly contradicts their own allegation that there is a hyperlink to the TOU. (*Id*., ¶ 73.) To the extent Plaintiffs mean that the TOU is behind a hyperlink, the Second Circuit has "explicitly rejected the proposition that a hyperlink to Terms of Use renders the notice unreasonable and endorsed the idea that a hyperlink is equivalent to terms contained on the back of a sales receipt or ticket." *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *9 (S.D.N.Y. Nov. 20, 2017) (citing *Meyer*, at 868 F.3d at 78-79). Thus, multiple clear and conspicuous links on the PCH website placed Plaintiffs on inquiry notice.

Moreover, the normal rules of notice are not relaxed in the online context. *Meyer*, 868 F.3d at 78 (comparing a hyperlink to terms contained on the back of a sales receipt or ticket). The failure to read terms that were repeatedly made available does not relieve an online user of his or her obligations under a contract. *See Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) ("Failure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract."). In the sweepstakes context especially, users know that there are rules governing the game. Indeed, the availability of the TOU as a hyperlink *before* entry is far superior to terms listed on the back of a lottery ticket *after* purchase. *Bernardino*, 2017 WL 7309893, at *10 ("Furthermore, in contrast to terms contained on a receipt provided

after purchase, [plaintiff], a self-proclaimed internet shopper, could have read [Defendants'] TOU at her leisure at any time before deciding to make a purchase."). *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (noting that "promotions expressly and repeatedly state the conditions which must be met in order to win").

Plaintiffs manifestly assented to arbitration, based on the spatial and temporal coupling of the TOU hyperlink and the "Continue" button on the registration page. *See Meyer*, 868 F.3d at 79-80 ("a reasonable user would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not."); (Siegal Dec., Ex. A.) The Second Circuit in *Meyer* explained that the manifest assent was shown from the context of the transaction where the user located and downloaded the App, signed up for an account, and entered his credit card information with the intention of a future relationship. *Id.* The registration process including the terms and conditions and Payment Screen provided clear notice that there were terms that governed that relationship *Id.* Similarly, Plaintiffs here located and accessed the PCH website, entered their personal information, and signed up for an account with the intention of entering into a forward-looking relationship with PCH, one that would require some terms and conditions. In addition, Plaintiffs concede that they registered for accounts and spent time on the website, and in some cases "countless hours." (*See* Am. Compl. ¶¶ 8, 46-49.)

Plaintiffs entered into a relationship with PCH with the intention of winning a sweepstakes and prizes; they cannot claim that they sought the benefits of an agreement while simultaneously denying its terms. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 125 (2d Cir. 2012).

## B.  The Arbitration Provision Was Not Unconscionable

23

The arbitration provision is not unconscionable. Whether the terms of an arbitration agreement are unconscionable is a matter of law for a court to decide. *Bernardino*, 2017 WL 7309893, at *3 (citing *Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 786-87 (2d Cir. 2003). To find a contract term unconscionable "requires a showing that the contract was both procedurally and substantively unconscionable when made." *Berkson v. Gogo LLC*, 97 F. Supp. 3d at 359, 391 (E.D.N.Y. 2015) (Weinstein, J.) (citation omitted). The terms here are neither.

Procedural unconscionability is determined by assessing the manner in which the agreement was reached. *Id.* Substantive unconscionability is determined by evaluating the fundamental fairness of the contract term itself. *Id.* at 391-92. Courts evaluate procedural and substantive unconscionability on a "sliding scale." *Id.* at 391 (citation omitted). However, "[c]ontractual terms will only be held unconscionable where the facts show substantive unconscionability; procedural unconscionability alone may not render a contract unreasonable on its face." *Id.* at 392 (citing *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 254 (1st Dep't 1998) (collecting cases)).

First, Plaintiffs aver that the arbitration provision is procedurally unconscionable "because Plaintiffs were not offered the ability to negotiate, its terms were not clearly communicated and their harshness would come as a surprise to reasonable consumers." (Am. Compl ¶ 76.) All of these arguments fail as a matter of law.

A non-negotiable contract is not *per se* unconscionable. *See Bernardino*, 2017 WL 7309893, at *12 ("The Second Circuit also has rejected [Plaintiff's] arguments that an arbitration agreement is procedurally unconscionable by virtue of it being offered on a take-it-or-leave-it basis[.]"). Nor does its location behind a hyperlink render it unconscionable. *Id.*

24

Second, Plaintiffs argue the arbitration provision is substantively unconscionable because users would be required to attend arbitrations in New York. (Am. Compl. ¶ 77.) Plaintiffs' reasoning is not compelling as the arbitrations are governed by the AAA, which allows for telephonic hearings. *See* American Arbitration Association, "Commercial Arbitration Rules and Mediation Procedures" at R-32 ("When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including video conferencing, internet communication, telephonic conferences and means other than an in-person presentation.") (available at: https://www.adr.org/sites/default/files/Commercial%20Rules.pdf). *See Bernardino*, 2017 WL 7309893, at *3; *Carnival Cruise Lines, Inc.*, 499 U.S. at 594.

Third, Plaintiffs aver that the arbitration provision is illusory by virtue of the fact that PCH can amend its TOU as a whole. (Am. Compl. ¶ 77.) But the law is clear that such a challenge to the TOU is a question for an arbitrator, not a court. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-46 (2006). Moreover, under New York law, a contract is not illusory merely because it gives discretion to one party. *See Bernadino*, 2017 WL 7309893, at *13.

PCH respectfully requests that, if not dismissed, the action be stayed in favor of arbitration. 9 U.S.C. § 3 (2010); *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015).

## <u>CONCLUSION</u>

For the foregoing reasons and those stated in PCH's opening papers, PCH respectfully requests that its motion be granted.

Dated: April 25, 2019                     **BAKER & HOSTETLER LLP**
     New York, New York


Of Counsel:                               By:  _/s/ John Siegal_____
Linda A. Goldstein                             John Siegal
                                               jsiegal@bakerlaw.com
                                               Erica Barrow
                                               ebarrow@bakerlaw.com
                                               Thomas Howley
                                                thowley@bakerlaw.com
                                               45 Rockefeller Plaza
                                               New York, New York 10111
                                               Tel: (212) 589-4200
                                               Fax: (212) 589-4201

                                               Paul G. Karlsgodt (*pro hac vice*)
                                               pkarlsgodt@bakerlaw.com
                                               1801 California Street, Suite 4400
                                               Denver, Colorado 80202
                                               Tel: (303) 861-0600
                                               Fax: (303) 861-7805

                                               *Attorneys for Defendants Publishers*
                                               *Clearing House, Incorporated and*
                                               *Publishers Clearing House, LLC*