**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**CENTRAL ISLIP DIVISION**

EARL WRIGHT, RAMONA HOLDEN,
ETTA WILLIAMS, MICHAEL
HAMILTON, JOSEPH EKO, LINDA
PHILLIPS, ELAINE WILHELM,
ANTHONY GILLESPIE, MARK
CARLISLE, VERNITA JESSIE, CHERYL
RIFE, SANDY SAMENS, RUTHIE ORTIZ
SOUDJIAN,

               Plaintiffs,

     v.

PUBLISHERS CLEARING HOUSE,
INCORPORATED and PUBLISHERS
CLEARING HOUSE, LLC

               Defendants.

**CASE NO.: 18-CV-2373-ADS-AYS**


**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S**
**SECOND MOTION TO DISMISS, MOTION TO STRIKE CLASS ALLEGATIONS,**
**AND MOTION TO COMPEL ARBITRATION**

**SCHWABA LAW FIRM**

s/ Andrew J. Schwaba
Andrew J. Schwaba
NC Bar No.:  36455
212 South Tryon Street
Suite 1725
Charlotte, NC 28281
(704) 370-0220
(704) 370-0210 (fax)
aschwaba@schwabalaw.com

## TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………………...………i

TABLE OF AUTHORITIES…………………………………………………...………iii

I.      INTRODUCTION……………………………………………….………...……..1

II.     ARGUMENT ……………………………………………………………….……2

    A.  PLAINTIFFS HAVE STATED A CLAIM AND HAVE STANDING UNDER
        SECTION 349………………………………………...………….…………..………..2

        1.    Plaintiffs Alleged Sufficient Contacts With New York To Establish
              Standing Under New York §349……………………………….……..……3

        2.    Plaintiffs Sufficiently Alleged Deception to Satisfy a Section 349 claim…………6

        3.    Defendant's Disclaimers Do Not Absolve Their Deceptive Advertisements……..10

        4.    Plaintiffs Did Not Misquote Defendants Advertisements……….………..…….…13

        5.    Plaintiffs Alleged Defendants' Deceptive Advertising Caused Their Damages…14

        6.    Plaintiffs' Price Premium Allegations Sufficiently Alleged Damages Under
              Section 349………………………………………………………………………16

        7.    Non-Captioned Plaintiffs Remain Proper Parties………………………….……..19

    B.  CLASS ACTION ALLEGATIONS ARE APPROPRIATE WHERE PLAINTIFFS
        PURCHASED PRODUCTS BECAUSE OF DEFENDANT'S DECEPTIVE
        ADVERTISING THAT PROMISED IMPROVED CHANCES TO WIN.………...20

    C.  DEFENDANTS CANNOT COMPEL ARBITRATION BASED ON AN
        INCONSPICUOUS TERM OF USE……………………………………………24

        1.    Non-website using Plaintiffs Were Not Covered by a Contract.......…………25

        2.    Defendants Failed to Prove Their Webpage Was Seen by Plaintiffs.…………25

        3.    Website-Using Plaintiffs Were Not Presented With A Contract…………..…26

        4.    PCH's Purported Terms of Use Constituted an Impermissible

Browsewrap Agreement……………………………………………..……28

5.      PCH Did Not Present the Terms of Use Through a Valid Clickwrap
        Agreement……………………………………………………………30

6.      PCH's Arbitration Clause Was Unconscionable………………………...………31

        a.      PCH Arbitration Clause Was Procedurally Unconscionable…………….32

        b.      PCH Arbitration Clause Was Substantively Unconscionable………...….33

III.    **CONCLUSION**……………………………………………...………..………34

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                 **Page(s)**

*Abraham v. American Home Mortg. Servicing, Inc.,*
  947 F. Supp. 2d 222 (E.D.N.Y. 2013) ................................................................................15, 16

*Ackerman v. Coca-Cola Co.*,
No. C-09-00927, 2010 WL 2925955, at * 15 (N.D. Cal. Jan. 6, 2010)…………………………11

*Amiron Dev. Corp. v. Sytner*,
2013 WL 1332725 (E.D.N.Y. Mar. 29, 2013)…………………………………………….…15, 16

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ……………………………………………………………………..2

*AT&T Mobility, LLC v. Concepcion,*
  131 S. Ct. 1740 (2011) …………………………………………………………………..31

*Belcastro v. Burberry Ltd.* ,
No. 16-CV-1080, 2017 WL 744596, at *5 (S.D.N.Y. Feb. 23, 2017)……………………………18

*Belfiore v. Procter & Gamble Co.*,
94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015)……………………………………………………..21

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 554 (2007) ……………………………………………………………………..2

*Bensadoun v. Jobe-Riat*,
316 F.3d 171, 177-178 (2d Cir. 2003)……………………………………………………26

*Berkson v. Gogo LLC,*
  97 F. Supp. 3d 359 (E.D.N.Y. 2015) …………………………………….…...…………29, 32

*Brando v. Urban*,
182 AD2d 287, 289 (2d Dept 1992). ……………………………………………………25

*Braynina v. TJX Companies, Inc.* ,
No. 15-CV-5897, 2016 WL 5374134, at *10 (S.D.N.Y. Sept. 26, 2016)…………………………17

*Brenner v. Gen. Plumbing Corp.*,
  13 N.Y.S.3d 849 (N.Y. Civ. Ct. 2015) …………………………… ……………………34

*Brown Bros. Elec. Construc. v. Beam Constr. Corp*.,
  41 N.Y.2d 397 (1977) …………………………………………………………...………25

*Cohen* v. *JP Morgan Chase & Co.,*
    418 F.3d 111 (2d Cir. 2007) …………………………………………………………7

*Comb v. PayPal, Inc.,*
    218 F.Supp.2d 1165 (N.D. Cal. 2002) …………………………………………………..34

*Cruz v. FXDirectDealer LLC,*
    720 F.3d 115 (2nd Cir. 2013) …………………………………………………..…3, 4, 5, 6, 22

*Daniel v. Mondelez Int'l, Inc.,*
287 F. Supp.3d 177 (E.D. N.Y., 2018)…………………………………………………………18

*Dash ex rel. v. Seagate Tech. Holdings Inc.,*
    27 F.Supp.3d 357 (E.D.N.Y. 2014) …………………………………………………..7,12, 15

*Delgado v. Ocwen Loan Servicing, LLC*
2014 U.S. Dist. LEXIS 135758, 24 (E.D. N.Y., 2014)…………………………………………11

*Derbaremdiker v. Applebee's Int'l, Inc.,*
    2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012), aff'd, 519 F. App'x 77
    (2d Cir. 2013) ………………………………………………………………..……12

*Donnenfeld v. Petro Inc.,*
333 F.Supp.3d 208, 223-224 (E.D.N.Y. 2018)……………………………………………………18

*Drew v. Sylvan Learning Ctr. Corp.,*
842 NYS2d 270,  2007 NY Slip. Op. 27243 (N.Y. Civ. Ct. 2007) ………………………..……13

*Eastern Sav. Bank FSB v. Rabito,*
2012 WL 3544755 (E.D.N.Y. Aug. 16, 2012)……………………………………………………20

*Eisen v. Venulum Ltd.,*
    244 F.Supp.3d 324 (W.D.N.Y. 2017) ……………………………………………..…..33

*Fero v. Excellus Health Plain, Inc.,*
236 F.Supp.3d 735 (W.D. N.Y., 2017)……………………………………………………………7

*Fink v. Time Warner Cable,*
    714 F.3d 739 (2d Cir. 2013) ………………………………………………………..…7, 14

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938 (1995) ……………………………………………………………………..25

*In re Foodservice Inc. Pricing Litigation,*
729 F.3d 108 (2d Cir. 2013)………………………………………………………………..20, 21

*F.T.C. v. Cyberspace.com LLC*,
453 F.3d 1196, 1200 (9th Cir. 2006)……………………………………………………………11

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012) ………………………………………………29, 30

*Gaidon* v. *Guardian Life Ins. Co. of Am.*,
  94 N.Y.2d 330 (1999) …………………………………………………………………7

*Gale v. Int'l Bus. Machs. Corp.*,
  9 A.D.3d 446, 781 N.Y.S.2d 45 (2d Dep't 2004) …………………………………………14

*Genesco Entm't. a Div. of Lymutt Indus., Inc. v. Koch*,
593 F. Supp. 743, 752 (S.D.N.Y. 1984)…………………………………………………..11

*Goldemberg v. Johnson*,
  8 F.Supp.3d 467, 2014 WL 1285137, 2014 U.S. Dist. LEXIS 47180
  (S.D.N.Y. 2014) ……………………………………………………………..7, 11, 14

*Goshen v. Mutual Life Ins. Co. of NY*,
  98 F.Supp.2d 314 (2002) ………………………………………………………………3, 4

*Gotlin v. Lederman*,
  483 Fed.Appx. 583 (2nd Cir. 2012) ………………………………………………….4

*Gomez-Jimenez v. New York Law Sch.*,
103 A.D.3d 13 (1st Dep't 2012)……………………………………………………………12

*Granite Rock Co. v. International Brotherhood of Teamsters*,
  561 U.S. 287 (2010) ……………………………………………………………………24

*Greene v. Gerber Prods Co.*,
262 F.Supp.3d 38, 68 (E.D. N.Y. 2017)…………………………………………………17

*Guariglia v. Procter & Gamble Co.*,
2018 WL 1335356 (E.D.N.Y. Mar. 14, 2018)………………………………………….21, 22, 23

*Gutierrez v. Autowest, Inc.*,
  114 Cal.App.4th 77 (2003) …………………………………………………..……..32

*Irvine v. Kate Spade & Co.* ,
No. 16-CV-7300, 2017 WL 4326538, at *3 (S.D.N.Y. Sept. 28, 2017)…………………..17

*Izquierdo v. Mondelez Int'l Inc.*,
287 F.Supp.3d 177 (E.D.N.Y. 2018)…………………………………………………..19

*Karlin* v. *IVF Am.,*
    93 N.Y.2d 282 (1999) ……………………………………………………….…6

*Kaufman v. Sirius XM Radio, Inc.,*
    474 Fed.Appx. 5 (2nd Cir. 2012) …………………………………………………4, 5

*Koch v. Acker, Merrill & Condit Co.,*
944 N.Y.S.2d, 452 (N.Y. 2012) ………………………………………..…………...13

*Koenig v. Boulder Brands Inc.,*
    995 F.Supp.2d 274 (S.D.N.Y. 2014) …………………………………………………17

*Langan v. Johnson & Johnson Consumer Cos.,*
897 F.3d 88 (2d Cir. 2018)……………………………………………………………..20

*Lazaroff v. Paraco Gas Corp.* ,
967 N.Y.S.2d 867, (2011)…………………………………………………………17, 18

*Lonner* v. *Simon Prop. Grp., Inc.,*
    57 A.D.3d 100 (2d Dep't 2008) ……………………………………………………6, 11

*Maas v. Cornell University,*
    94 NY2d 87, 93 (1999) ………………………………………………………………25

*Mandel v. Liebman,*
    303 N.Y. 88 (1951) ………………………………………………………………...32

*Mayfield v. Asta Funding,*
95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015)…………………………………………………21, 22

*McCarthy v. Dun & Bradstreet Corp,*
    482 F.3d 184 (2nd Cir. 2007) ……………………………………………………......2

*McLaughlin v. Am. Tobacco Co.,*
522 F.3d 215, 231 (2d Cir. 2008)………………………………………………………..23, 24

*Med. Soc'y of New York v. United Health Grp.,*
2019 WL 1409806 (S.D.N.Y., Mar. 28, 2019)……………………………………………20

*Mendez* v. *Bank of Am. Home Loans Servicing, LP,*
    840 F.Supp.2d 639 (E.D.N.Y. 2012) ……………………………………………………6

*Meyer v. Uber Technologies, Inc.,*
    868 F.2d 66 (2nd Cir. 2017) ……………………………………………………………27

*Mohamed v. Uber Technologies, Inc.,*

109 F. Supp.3d 1185 (N.D. Cal. 2015) …………………………………………………31

*Morales v. PepsiCo*,
2018 WL 3853390 (W.D.N.Y. Aug. 14, 2018)…………………………………………..20

*Mouzon v. Radiancy, Inc.*, 85 F.Supp.3d 361 (D.D.C. 2015)………………………………..5

*Nagrampa v. Mailcoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) …………………………………………………………34

*Naval v. HIP Network Servs. IPA, Inc.*,
620 F.Supp.2d 566 (S.D.N.Y. 2009) ……………………………………………………33

*Nelson v. MillerCoors, LLC*,
246 F.Supp.3d 666 (E.D. N.Y. 2017)…………………………………………………15, 16

*Newton v. Am. Debt Services, Inc.*,
549 Fed. Appx. 692 (9th Cir. 2013) …………………………………………………32, 34

*Nguyen v. Barnes & Noble, Inc.*,
763 F.3d 1126 (9th Cir. 2014) …………………………………………………………...28

*Orlander v. Staples Inc.*,
802 F.3d 289, 302 (2d Cir. 2015)………………………………………………...…17, 18

*Quiroz v. Apple & Eve, LLC*, (E.D. N.Y., 2019)…………………………………………21

*Quiroz v. Beaverton Foods, Inc.*,
No. 17-CV-7348, at 19 (E.D. N.Y. Mar. 31, 2019)………………………………18, 19, 21

*Pelman ex rel. Pelman* v. *McDonald's Corp.*,
396 F.3d 508, 511 (2d Cir. 2005)………………………………………………………16

*Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*,
2009 WL 1119409 (S.D.N.Y. Apr. 26, 2009)………………………………………………..5

*Quinn v. Walgreen Co.*,
958 F.Supp.2d 533, 543, 544 (S.D.N.Y. 2013)…………………………………………….7

*Reynolds v. Lifewatch, Inc.*,
136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015)………………………………………………21

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401, 405 (2nd Cir., 2015)………………………………………………..21, 23

*Saphirstein v. Mauzone Mania, LLC*,
2017 WL 3278893 (E.D.N.Y. July 31, 2017)……………………………………...…15, 16

*Scherk v. Alberto–Culver Co.*,
   417 U.S. 506 (1974) ………………………………………………………………..24

*Schnabel v. Trilegiant*,
697 F.3d 110 (2d Cir. 2012)…………………………………………………..……26, 27

*Servidio v. State Farm Ins. Co*.,
   889 F.Supp.2d 450 (E.D.N.Y.2012) …………………………………………………..19

*Sitt v. Nature's Bounty Inc.*,
No. 15-CV-4199, 2016 U.S. Dist. LEXIS 131564  (E.D.N.Y. Sep. 26, 2016)………………9, 10

*Sharpe v. Puritan's Pride Inc.*,
2019 WL 88658 (N.D. Cal. Jan. 14, 2019)…………………………………………………..5

*Singleton v. Fifth Generation, Inc*.,
No. 15-cv-474, WL 406295 at 10* (N.D.N.Y. Jan. 12, 2016) …………………………………12

*Simplex Grinnell L.P. v. Integrated Sys. & Power, Inc.*,
642 F.Supp.2d 17 (S.D.N.Y. 2009)………………………………………………………………5

*Sims v. First Consumers Nat. Bank* ,
303 A.D.2d 288, 289, 758 N.Y.S.2d 284 (1st Dep't 2003)…………………………………………7

*Small v. Lorillard Tobacco Co.*,
   94 N.Y.2d 43 (1999) …………………………………………………………..…17, 18, 19

*Spagnola v. Chubb Corp*.,
574 F.3d 64 (2d Cir. 2009)…………………………………………………………………..19

*Specht v. Netscape Commc'ns Corp.*,
   306 F.3d 17, 35 (2d Cir. 2002) …………………………………………………………26, 31

*State of New York v. Wolowitz*,
   96 A.D.2d 47, 468 N.Y.S.2d 131 (1983) ……………………………………….…........33

*Stoltz v. Fage Dairy Processing, Indus. SA*.,
2015 U.S. Dist. LEXIS 126880 at *33-35 (E.D. N.Y. Sep. 22, 2015)……………………..9, 10, 11

*Stutman* v. *Chem. Bank,*
   95 N.Y.2d 24 (2000) …………………………………………………………….…6, 16

*Suarez v. Cal. Nat'l Living*,
2019 U.S. Dist. LEXIS 34632 at *15 (S.D. N.Y. March 4, 2019)……………………………9, 11

PLAINTIFFS' MEMORANDUM OF LAW
IN RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

*Tompkins v. 23andMe, Inc.*,
    No. 5:13-cv-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014) …………….......30, 31

*UFCW Local 1776 v. Eli Lilly & Co*.,
620 F.3d 121, 131 (2d Cir.2010)………………………………………………………………21

*United States v. Drew*,
    259 F.R.D. 449 (C.D. Cal. 2009) …………………………………………….………………29

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*,
    489 U.S. 468 (1989) ………………………………………………………………………...24

*Workmon v. Publishers' Clearing House*, 118 F.3d 457 (6th Cir. 1997)…………………………12

*Yang Chen v. Hiko Energy, LLC,*
No. 14-cv-1771 (VB), 2014 WL 7389011, at *3 (S.D.N.Y. Dec. 29, 2014)……………………22

*Zheng v. City of New York*,
    19 N.Y.3d 556 (2012) ………………………………………………………………………...25

## Statutes

9 U.S.C. § 2…………………………………………………………………………………31

New York General Business Law § 349………………………………………1, 3, 6, 11, 16, 19, 20

## Other Authority

Mark A. Lemley, *Terms of Use*, 91 Minn. L. Rev. 459, 474 (2006) ……………….……………26

6 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 18:27 (4th ed. 2002)………24

PLAINTIFFS' MEMORANDUM OF LAW
IN RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

## I.      INTRODUCTION

The Plaintiffs' Amended Complaint satisfies the direction provided by this Court in its March 12, 2019 Memorandum of Decision & Order ("Order"). (Dkt. 31). The Plaintiffs believe they have now followed the Court's direction and offered specific advertisements that reveal the deceptive nature of Publishers' Clearing House's [PCH's] marketing campaigns. The Amended Complaint also included additional specificity with regard to Plaintiffs' claimed damages, alleging "price premium" injuries that they purchased products at higher cost than others in order to enhance their chances of winning a sweepstakes, lottery or drawing.

With regard to Plaintiffs' Section 349 claim, PCH attempts to pick apart the Plaintiffs' allegations to subvert attention from the document as a whole. For example, PCH dissects the inadequacies of pleadings from other cases to suggest the Plaintiffs have not stated a sufficient nexus to New York, without appreciating all of the connections that firmly tie this claim to New York.  Also, PCH claims that Plaintiffs failed to include advertisements seen by the specific Plaintiffs, although the pleading attached a variety of misleading advertisements that have already been determined deceptive in other courts and arenas. The Defendants claim that the advertisements could not have been deceptive because they included a Terms of Use on their website and a Rules on the advertisements, but then brazenly suggest the Plaintiffs misquoted and misappropriated certain advertisements to create an appearance of deception, thereby admitting the advertisements themselves were deceptive. Finally, PCH complains that the Plaintiffs have not alleged damages sufficiently, but offer no authority that damages must be pled with particularity, and ignore the allegations of price premium injury.

The Plaintiffs' Amended Complaint both alleged and attached repeated and systematic deceptive marketing by PCH telling Plaintiffs that a purchase would enhance their chances of

MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

winning a sweepstakes. The Complaint describes PCH's history of deceitful practices, which have been litigated repeatedly over the years. The Plaintiffs outlined the prior settlements based on deceptive advertisements, and the agreements made by PCH to refrain from further deceptive advertising, and explains how PCH has now resumed its deceptive practices previously prohibited. Plaintiffs' Complaint lays bare PCH's campaign to lure potential customers onto its rolls with the promise that, as PCH argues, no purchase is necessary to enter and buying does not help you win. Once customers provide their personal information, PCH then continually bombards its registrants with solicitations that contradict and purposefully subvert its own disclaimers, targeting the most vulnerable members of society with assurances that the way to win sweepstakes prizes is through the purchase of goods. Remarkably, although PCH suggests the advertisements offered by the Plaintiffs were not complete, they fail to offer their own complete version, fail to deny the attached advertisements were distributed by them, and fail to deny those advertisements were deceptive.

As a result and as explained further below, PCH's motions to dismiss, strike class action allegations, and to compel arbitration must be denied.

## II.    ARGUMENT

On a Rule 12(b)(6) motion to dismiss, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Detailed factual allegations are not required, but "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).

### A.  PLAINTIFFS HAVE STATED A CLAIM AND HAVE STANDING UNDER SECTION 349.

PCH claims Plaintiffs lack standing to bring their Section 349 claims because the deceptive

practices are not alleged to have occurred in New York.  For support, PCH again relies on the line of cases beginning with *Goshen v. Mutual Life Ins. Co. of N.Y.* 98 F.Supp.2d 314 (2002). In making this argument, PCH ignores the totality of Plaintiffs' allegations, controlling case law, and their own preferred choice of venue. *Goshen* and its progeny have been rejected by the line of cases beginning with *Cruz v. FXDirectDealer LLC*, 720 F.3d 115, 118 (2d Cir. 2013), which state that a totality of contacts establishes Section 349 standing.

      **1.**      **Plaintiffs Alleged Sufficient Contacts With New York To Establish Standing Under New York §349.**

When considering the New York contacts, it is important to remember that Plaintiff has alleged deceptive marketing practices as the core of its complaint. With that in mind, Plaintiffs alleged significant contacts in PCH's marketing campaigns to justify subject matter jurisdiction in New York. Plaintiffs alleged they were sent printed marketing materials, including simulated checks, letters, envelopes, notices and entry/order forms, from Jericho, New York. (Am. Cpl, Dkt. #32, ¶ 83-90) They were sent a "Winner Selection List Notice[s]" from Jericho, New York. *Id.* They were sent a solicitation packets titled "The Inner Circle" from "101 Winners Circle, Jericho, New York 11753." *Id.* ¶ 87. Plaintiffs received deceptive and misleading emails from PCH from Jericho, New York. *Id.* ¶ 87-90.

PCH does not deny that product purchase forms were returned to PCH offices in Melville, New York. Plaintiffs' transactions also occurred in New York. In order to purchase products, the Plaintiffs were directed to return postage prepaid envelopes direct to addresses in Melville, New York. *Id.* at ¶ 91-96. These return envelopes were returned to "Publishers Clearing House, 1247 *Entry Order Processing Center*, Melville, New York." *Id.* at ¶ 93, 94 (emphasis added). When Plaintiffs purchased goods from PCH, they received payment notices from PCH Customer Service in Port Washington, New York, and confirmation emails from PCH offices in Jericho, New York.

MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

*Id*. at ¶ 97.

Finally, Plaintiffs alleged that the Defendants maintain their principal place of business in New York. (Am. Cpl, at ¶23). The substantial amount of the acts and/or omissions complained of occurred in New York. *Id*. at ¶ 22. Moreover, the Defendant chose New York law to apply to any claims against them. The Defendants agreed that claims against them "shall be governed by the laws of the State of New York." *Id*. at ¶ 71. "All lawsuits, causes of action, disputes, or other proceedings not subject to arbitration, as a matter of law, if any, shall be brought exclusively in the state or federal courts located in the city and county of New York." *Id*. at ¶71.

The totality of the allegations establish that Plaintiffs have standing to bring their Section 349 claims. PCH cites *Goshen* in support of its argument, but the holding of *Goshen* was clarified in *Cruz, supra,* where the defendant maintained a foreign currency exchange trading system in New York. 720 F.3d at 118. In *Cruz*, the Second Circuit explained that there are two lines of decisions deriving from *Goshen*. The first were those cases in which the Plaintiff viewed a deceptive statement while in New York, citing *Kaufman v. Sirius XM Radio, Inc*., 474 Fed.Appx 5 (2d Cir. 2012) as an example. The second line of decisions are those cases focusing on where the deceptive transaction occurs regardless of where the Plaintiff is deceived, citing as an example *Gotlin v. Lederman*, 483 Fed.Appx. 583, 588 (2d Cir. 2012). In allowing a section 349 claim to survive, the *Cruz* court found that Plaintiffs alleged substantial acts occurred in New York, that defendants chose New York law to apply, and chose New York courts as the preferred venue. *Cruz*, 720 F.3d at 124, 125. Based on those ties, the *Cruz* court was persuaded some part of the underlying transaction occurred in New York, and plaintiffs' Section 349 claims had standing. *Id*. at 125.

As *Cruz* explained, *Goshen* and its progeny do not carry persuasive effect in this matter.

*Goshen's* only contact involved hatching the scheme. *Kaufman,* supra 474 F.App'x 5, involved a defendant who never sent deceptive materials from New York. *Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.,* 2009 WL 1119409 (S.D.N.Y. Apr. 26, 2009) involved only an allegation that defendant's business resided in New York. *Mouzon v. Radiancy, Inc.*, 85 F.Supp.3d 361 (D.D.C. 2015) and *Simplex Grinnell L.P. v. Integrated Sys. & Power, Inc.*, 642 F.Supp.2d 17 (S.D.N.Y. 2009) involved marketing plans that originated in New York, but no other ties to the state. *Sharpe v. Puritan's Pride Inc.,* 2019 WL 88658 (N.D. Cal. Jan. 14, 2019) involved data processing and "back office functions," but did not involve the contacts that included the home state of the defendant, the marketing campaigns being created and distributed from this state, the purchase orders being processed in this state, nor the defendant choosing New York law to apply to the claims.

Plaintiffs' amended allegations satisfy the *Cruz* factors. Plaintiffs have now alleged that substantial acts occurred in New York, that PCH chose New York law to apply, that PCH's principal offices, including offices distributing deceptive marketing and conducting transactions resulting from that deceptive marketing, are based in New York, and that PCH chose New York law to apply. The *Cruz* factors have been met.

PCH claims that because the Plaintiffs do not reside in New York, no "transaction" occurred in New York. However, with regard to the printed marketing materials, the Plaintiffs could not possibly have entered into a transaction if they never mailed their order forms to a center in New York. Similarly, Plaintiffs' purchases relying on deceptive emails emanating from New York would never have occurred without the creation of those deceptive emails occurring in New York, the distribution of those emails from a New York address, and the purchase of products from a New York processing and customer service center. PCH's New York contacts overwhelm these

claims to satisfy Section 349 standing requirements.

PCH also claims that Plaintiffs Mark Carlisle, Joseph Eko, and Ruth Ortiz Soudjian did not retain hard copies of the materials mailed to them or emails received. However, Plaintiffs have alleged these Plaintiffs have viewed the PCH's solicitations described in paragraph 56. Such representations are adequate to state claims for these Plaintiffs.

### 2.     Plaintiffs Sufficiently Alleged Deception to Satisfy a Section 349 claim.

New York General Business Law § 349, a consumer protection measure, provides, in relevant part: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a). The law affords a private right of action to "any person who has been injured" by a violation of the section. *Id.* § 349(h); *see generally Cruz,* 720 F.3d at 122. The reach of the statute is broad, so as to provide needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers. *Lonner* v. *Simon Prop. Grp., Inc.,* 57 A.D.3d 100, 109-10 (2d Dep't 2008) (citing *Karlin* v. *IVF Am.,* 93 N.Y.2d 282, 290 (1999)). In that regard, "[t]he purpose of Section 349 is to empower customers, especially the disadvantaged, and to even the playing field of their disputes with better funded and superiorly situated fraudulent businesses." *Mendez* v. *Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 657 (E.D.N.Y. 2012).

To establish a violation of § 349, a plaintiff must prove "that the challenged act or practice was consumer-oriented; [ii] that it was misleading in a material way; and [iii] that the plaintiff suffered injury as a result of the deceptive act." *Stutman* v. *Chem. Bank,* 95 N.Y.2d 24, 29 (2000). To determine whether conduct may be deceptive under § 349, courts apply an objective standard, *Lonner,* 57 A.D.3d at 110, which asks whether the representation or omission is likely

MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

to mislead a reasonable consumer acting reasonably under the circumstances, *Gaidon* v. *Guardian Life Ins. Co. of Am.,* 94 N.Y.2d 330, 344 (1999); *Cohen* v. *JP Morgan Chase & Co.,* 498 F.3d 111, 126 (2d Cir. 2007) ("The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (quoting *Oswego* v. *Laborers' Local 214 Pension Fund* v. *Marine Midland Bank,* 85 N.Y.2d 20, 26 (N.Y. 1995)).

"The New York Court of Appeals has established an objective standard for determining whether acts or practices are materially deceptive or misleading 'to a reasonable consumer acting reasonably under the circumstances." *Goldemberg v. Johnson & Johnson Consumer Co., Inc.,* 8 F.Supp.3d 467, 478 (S.D.N.Y. 2014) (quoting *Oswego,* 85 N.Y.2d at 26). Although a court may make this determination as a matter of law, see *Fink v. Time Warner Cable,* 714 F.3d 739, 740 (2d Cir.2013) (*per curiam*), the determination is typically a question of fact. *Dash ex rel. v. Seagate Tech. Holdings Inc.,* 27 F.Supp.3d 357 (E.D.N.Y. 2014). Whether a particular act or practice is deceptive is usually a factual question. See *Quinn v. Walgreen Co.*, 958 F.Supp.2d 533, 543, 544 (S.D.N.Y. 2013) (where court upheld allegations glucosamine supplements deceptively claimed it could rebuild cartilage) (citing *Sims v. First Consumers Nat. Bank*, 303 A.D.2d 288, 289, 758 N.Y.S.2d 284 (1st Dep't 2003) ); see also *Fero v. Excellus Health Plain, Inc.,* 236 F.Supp.3d 735 (W.D. N.Y., 2017).

PCH makes the blanket assertion that the exhibits to Plaintiffs' Amended Complaint were taken out of context, misappropriated, misquoted and misattributed to them. However, PCH offers no support for this assertion. Indeed, PCH does not deny that the materials attached to the Plaintiffs' Amended Complaint were made or distributed. Plaintiffs attached specific advertisements PCH sent. Plaintiffs' Amended Complaint attached as exhibits those items in the

manner they were seen by the Plaintiffs. PCH alleges that those items were arranged in such a manner as to be deceptive and misleading. Rather than attach or include what they consider to be the full advertisement, PCH failed to attach any advertisement in support of its argument.

Pursuant to the Court's guidance, Plaintiffs included particular advertisements PCH sent to the Plaintiffs. (Am. Cpl. Exs. 1-13). Those advertisements reveal deception that purchasing a product will enhance a purchaser's chances of winning a sweepstakes, lottery or drawing. Although PCH's order forms indicated "buying won't help you win," Plaintiffs were reasonably deceived by the representations made by PCH that contradicted that very sentiment. As explained in the Amended Complaint, PCH cultivates this misperception by creating a "Special Relationship" with consumers. (See e.g. Am. Cpl., ¶39). That special relationship begins with PCH using the disclaimer that "no purchase is necessary" as bait to begin that relationship and begin sending their advertisements.  As the relationship develops, PCH creates the perception of a "secret" manner of winning – by purchasing products, a purposeful attempt to create an insider's track to winning their sweepstakes. (See e.g. Ex. 5, advising Ramona Holden to listen to an audio message for a "secret" announcement). PCH put Plaintiffs on a Winner Selection List (¶51), awarded them tokens and/or points that "unlock a next tier of extraordinary benefits," (Ex. 3), told them that an "opportunity is not for the general public," and drawings that are "approved for less than 5% of our members!" (Ex. 5). Although PCH sent individual advertisements that on their face are deceptive, the solicitation practice used by PCH is executed over the multitude of advertisements sent creating the false impression that Plaintiffs are included in a register of individuals for whom the chances of winning are imminent and elevated by a purchase.

PCH then abuses that special relationship via misleading and deceptive advertisements that convey a purchase is a "secret" or "insider" way to winning the sweepstakes, undermining any

advisory statement that no purchase was necessary to win. For example, PCH sent the following

representations undermining any disclaimer by purposefully confusing consumers with statements

like the following:

> "Only one order is all it takes!" (Am. Cpl., Ex. 1),

> **"WE'D LOVE FOR YOU TO PLACE AN ORDER TODAY!"**
> "FOREVER" PRIZE WILL BE AWARDED IN JUST WEEKS
> (Am. Cpl., Ex. 2);

> "We've Reserved a Cash Prize Just to Thank Past Orderers Like You"
> (Am. Cpl., Ex. 5)

> Prize Patrol can continue to give away fabulous prizes . . . only as long as people like you
> take advantage of our fantastic deals!"
> (Am. Cpl., ¶ 43).

> "Wait!, We see that you are not placing an Order!" (Am. Cpl., ¶ 43).

> "You see, the name Ramona Holden has been identified to participate in our exclusive
> FAST CASH customer appreciation event – with <u>prizes reserved</u> only for customers like
> you, who have placed an Order in the past!" (Am. Cpl., Ex. 5).

Defendants' deception as alleged far surpasses the level of deception in other cases. For

example, in *Sitt v. Nature's Bounty Inc.*, No. 15-CV-4199, 2016 U.S. Dist. LEXIS 131564

(E.D.N.Y. Sep. 26, 2016), defendant's claim of "Total 0%" was found to mislead consumers into

believing the 0% pertained to calories instead of fat content. *Id.* at *35; *see also Stoltz v. Fage*

*Dairy Processing, Indus. SA*., No. 14-CV-3826, 2015 U.S. Dist. LEXIS 126880 at *33-35 (E.D.

N.Y. Sep. 22, 2015); *Suarez v. Cal. Nat'l Living*, No. 17-CV- 9847, 2019 U.S. Dist. LEXIS 34632

at *15 (S.D. N.Y. Mar. 4, 2019), (where the Plaintiffs alleged the "natural" label on a product was

misleading because the ingredients were synthetic despite fine print on the back of the labeling).

Moreover, Plaintiffs' allegations of deception have already been deemed deceptive in other

arenas. These same PCH tactics have been considered deceptive by the New York Attorney

General, other State Attorneys General, the U.S. Senate Committee on Governmental Affairs

Permanent Committee on Investigations, and the U.S. Senate Special Committee on Aging. (Am. Cpl., ¶¶ 26-33). Pursuant to past litigation settlements, PCH was forced to monitor consumers in the lead up to sweepstakes for spiking orders as a sweepstakes nears. *Id*. at ¶¶36, 37. In the event consumers were considered to be engaging in spiking activity, they were placed in a database of High Activity Consumers (HAC) where they are then prevented from further purchases. *Id*.  The Plaintiffs in this matter have alleged that PCH has resumed the tactics that resulted in prior litigation. *Id*. at ¶ 52-55. PCH cannot argue that Plaintiffs are unreasonable, or that their advertisements are not deceptive as a matter of law, given their lengthy history of deceptive conduct as alleged by the Plaintiffs.

### 3.    PCH's Disclaimers Do Not Absolve Their Deceptive Advertisements.

PCH's reliance upon their disclaimer that "no purchase or payment necessary to enter" and "buying won't help you win" within their Official Rules and Terms of Use cannot repair the deception created by the flamboyant advertisements saying the opposite. Here, Plaintiffs have already submitted affidavits averring they did not see the Terms of Use and did not receive any notice to review the Terms of Use. (See e.g. Affids of Wright, Ferrell, Gillespie, Williams, Jessie, Samens, Dkt #'s 22-1 to 22-6). Moreover, the electronically generated Terms of Use would never have been seen by Plaintiffs who were consumers via printed mail advertising.

PCH's arguments regarding disclaimers are premature at the pleadings stage, as they implicate factual disputes under New York law. Whether or not a disclaimer defeats a claim of deception requires an analysis of "factors such as the font size and placement of the disclaimer as well as the relative emphasis placed on the disclaimer and the allegedly misleading statement." *Stoltz v. Fage Dairy Processing Indus. S.A.*, 2015 U.S. Dist. LEXIS 126880, at *50 (E.D.N.Y. 2015); see also *Sitt v. Nature's Bounty, supra*. A solicitation may be likely to mislead by virtue of

MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

the net impression it creates even though the solicitation also contains truthful disclosures. *Delgado v. Ocwen Loan Servicing, LLC,* No. 13-CV-4427 2014 U.S. Dist. LEXIS 135758, 24 (E.D. N.Y., Sep. 24, 2014); citing *F.T.C. v. Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006) (applying the definition of "deceptive practices" under the Federal Trade Commission Act); *Genesco Entm't. a Div. of Lymutt Indus., Inc. v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) ("[I]n interpreting the phrase 'deceptive practices' [in section 349,] the New York courts have in large measure relied on the Federal Trade Commission Act's definition of such practices.").

The mere presence of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations on a product or advertisement. See *Ackerman v. Coca-Cola Co.*, No. C-09-00927, 2010 WL 2925955, at * 15 (N.D. Cal. Jan. 6, 2010) ("[T]he presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by [defendant]'s labeling and marketing."); *Goldemberg,* 8 F.Supp.3d 467 (S.D.N.Y. 2014) (holding that where defendant's trademark and "advertising exclusively tout[ed]" the natural ingredients in its "Active Naturals" personal care products, the disclosure of synthetic ingredients on the back label did not as a matter of law prevent a reasonable consumer from being misled); See also *Suarez,* supra, 2019 U.S. Dist. LEXIS 34634, at * 18 ("that the fine print on the back of the labeling could indicate to a consumer that other ingredients were not 'natural' does not render another conclusion so patently or objectively unreasonable so as to warrant dismissal as a matter of law based on the reasonable consumer prong"); *Stoltz*, at *53-55 ("[t]he court cannot conclude, as a matter of law, that a reasonable consumer would not likely be misled based on the clarifying language of the Total 0% products labels in proximity to the Total 0% representation). Furthermore, factors such as the font size, placement, or emphasis of a disclaimer can be relevant to whether the terms and conditions were in fact fully disclosed. See

*Lonner*, 866 N.Y.S.2d at 247  (finding plaintiff stated a section 349 claim based on "the inadequate font size in which the [gift card's] dormancy fee provision was printed"); *Singleton v. Fifth Generation Inc.*, No. 15-CV-474, 2016 WL 406295 (N.D. N.Y. Jan. 12, 2016) (where Plaintiff alleged they were deceived by vodka that was not "handmade" as indicated on the label, despite label and website that explained "handmade" meant distilled in old-fashioned pot stills).

Remarkably, PCH relies on *Derbaremdiker v. Applebee's Int'l, Inc.,* 59 F.App'x 77 (2nd Cir. 2013) for further support.  In that case, plaintiff filled out a survey off a receipt at a restaurant that made him eligible for a sweepstakes. The plaintiff alleged the prize rules were deceptive because they did not inform him he was competing against patrons of other restaurants when they referred to "our guests." *Id.* at 7. The court found the receipt was not misleading, nor did the plaintiff experience any injury. *Id*. at 12.

Minor discrepancies in advertisements were also found not deceptive in *Workmon* and *Gomez-Jimenez*. In *Workmon*, the court dismissed claims of breach of contract against a PCH consumer who alleged that once he returned a sweepstakes entry, he should have won $10 million. *Workmon v. Publishers' Clearing House*, 118 F.3d 457 (6th Cir. 1997). In *Gomez-Jimenez*, the plaintiff's allegations that the salary statistics of graduates from NYU law school were inflated were rejected as they were based on conspicuous disclaimers of a small sample size. *Gomez-Jimenez v. New York Law Sch*., 103 A.D.3d 13 (1st Dep't 2012).

Plaintiffs' allegations in this matter are far more substantial and overwhelming than the technicalities relied upon by the Plaintiff in *Derbaremdiker, Workmon* and *Gomez-Jimenez*. Plaintiffs' allegations are even more substantial than those found in *Dash,* in which defendants' advertisements related to computer hard drive data speed were upheld as misleading. *Dash.*, 27 F.Supp.3d at 361. Defendants argued the speed of the drive was widely known and consistent with

MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

the speeds asserted on their website. *Id.* The *Dash* court held that while a disclaimer or clarifying language might defeat a claim of deception, the court could not determine as a matter of law that the allegations were not misleading to a reasonable consumer. *Id.* (See also *Goshen*, 98 NY2d 314, (holding that disclaimer does not bar deceptive trade practices claim); *Koch v. Acker, Merrill & Condit Co.*, 944 N.Y.S.2d, 452 (N.Y. 2012) (holding that disclaimers do not bar Section 349 claim based on deception as a matter of law); and *Drew v. Sylvan Learning Ctr. Corp.*, 842 NYS2d 270, 2007 NY Slip. Op. 27243 (N.Y. Civ. Ct. 2007) (finding a disclaimer, in spite of its guarantee, is evidence of deception).

### 4. Plaintiffs Did Not Misquote PCH's Advertisements.

Plaintiff attached as exhibits the advertisements sent to them by Defendant. (Am. Compl., ¶¶ 44-55). Those advertisements were attached in the manner in which they were presented to the Plaintiffs. They are not misquotes. In fact, Plaintiff specifically pleads that the solicitations are grouped together and folded in a specific manner so that the one message from a seemingly innocuous ad is folded over another to create a deceptive ad. (See e.g. Am. Compl. ¶45). Exhibit 9 to the Amended Complaint is not misquoted. It was attached to show that PCH continues to send simulated checks to consumers in violation of their agreements with State Attorneys General.

A review of Exhibit 13 to the Amended Complaint is a concise example of how PCH comingles sweepstakes "loyalty" with purchase order history to deceive consumers into believing an order will improve their chances of winning. In the same paragraph on page 1 of the exhibit, PCH thanks Ms. Wilhelm for her entry into the sweepstakes, offers her an incredible opportunity to enter the sweepstakes she presumably has already entered (her entry is deemed "provisional"), then explains that they have included a bulletin with an assortment of 70 items for "Loyal Customers," followed by an Order Summary. (Am. Compl. Ex. 13, Dkt. #32-13). The remaining

pages of the exhibit also document that she is sent materials folded over one another so that the top of a page indicates she is on a "winner selection list," but that an order is required to "upgrade her customer status." PCH cannot claim it is Plaintiffs who are misleading.

PCH cites *Fink v. Time-Warner Cable,* 714 F.3d 739 (2d Cir. 2013) to suggest the Plaintiffs cannot misquote or misleadingly reference the deceptive advertisements. In *Fink*, plaintiffs claimed defendant failed to provide internet speeds that lived up to their advertisements. Defendant claimed their internet speeds were an "always-on" connection that were "three times faster than most standard DSL connections," and the "fastest, easiest way to get online." *Fink*, 714 F.3d at 741. The court considered these representations to be mere puffery. *Id*.

Plaintiffs' allegations in this matter are distinctly different from *Fink*. Plaintiffs alleged PCH violated the state Attorneys General Agreements from 2001 and 2010. (Am. Cpl., ¶¶ 53-55, 102(d)). Plaintiffs alleged PCH found to have engaged in deceptive advertising by the United States Senate Committee on Aging. (Am. Cpl., ¶ 102(e)). Moreover, the Plaintiffs provided exhibits with clear examples of the deceptive advertising distributed by PCH. PCH does not deny making the statements. Deception has been adequately pled.

**5.    Plaintiffs Alleged Defendants' Deceptive Advertising Caused Their Damages.**

The Court Order asked the Plaintiff to specify which advertisements were viewed by the Plaintiffs. (Order at 9). Plaintiffs have now provided the Court with numerous examples of the Defendants' deceptive advertising. (Am. Cpl., Exs. 1-13, Dkt Nos. 32-1 – 32-13). "To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased." *Goldemberg*, 8 F.Supp.3d at 480, (citing *Gale v. Int'l Bus. Machs. Corp*., 9 A.D.3d 446 (2d Dep't 2004)). In *Dash*, the plaintiff described the allegedly misleading and

deceptive statements contained on the drive's packaging upon which he relied in purchasing the product. *Dash*, 27 F.Supp.3d at 361. The product packaging statements differed from disclaimers on the manufacturer's website. *Id*. The court found the reasonable inference to be drawn from such allegations was that plaintiff saw the misleading statements and, as a result of such, purchased the Drive at issue. *Id*. Accordingly, causation was sufficiently pled. *Id*.

As in *Dash*, Plaintiffs' detail misleading and deceptive statements PCH made. They alleged that they made purchases after seeing the deceptive statements from PCH. (Am. Cpl, ¶¶ 45-57, Exs. 1-13). They allege they viewed the deceptive marketing and purchased products from PCH after seeing them. *Id*. Plaintiffs allege that PCH induced them to purchase goods through its deceptive marketing. *Id*. at 102-104. PCH engages in semantics by insinuating this language only suggests a temporal proximity. A reasonable person would read such language to allege a cause and effect relationship.

PCH argues that Plaintiffs' must tie a specific purchase to a specific advertisement. However, none of the cited authorities supports such a proposition, nor is such a standard required by Rule 8(a) of the Federal Rules of Civil Procedure. In *Saphirstein v. Mauzone Mania, LLC*, 2017 WL 3278893 (E.D.N.Y. July 31, 2017), four defendants were alleged to have engaged in the same activity, making it difficult for those defendants to determine which defendant was responsible for the alleged deceptive marketing. In *Amiron Dev. Corp. v. Sytner*, 2013 WL 1332725 (E.D.N.Y. Mar. 29, 2013), plaintiffs alleged fraud against four defendants, but failed to identify any of the specific actions taken by each defendant. In *Abraham v. American Home Mortg Servicing Inc*., 947 F.Supp.2d 222 (E.D. N.Y. 2013), the plaintiff's claim failed to allege the specific advertisements received by the plaintiff. *Id*. at 231.  In *Nelson v. MillerCoors, LLC*, 246 F.Supp.3d 666 (E.D. N.Y. 2017), the plaintiffs' case was dismissed because of the conspicuity of the

MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

disclaimer alerting consumers that Foster's beer was brewed in the USA, not Australia. *Id.* at 676. These cases simply do not support the assertions for which they were cited. Moreover, the Plaintiffs interpreted the Court's Order to require the Plaintiffs to provide advertisements seen by the Plaintiff to allow the Court to determine which advertisements were seen and whether those advertisements were deceptive. Here, the Plaintiff has properly alleged the specific advertisements they received, that those advertisements created the impression that a purchase would improve their chances of winning, how they created that impression, and that they paid a premium for those purchases. As a result, the Plaintiffs' allegations do not contain any of the holes identified by *Saphirstein*, *Amiron*, *Abraham*, or *Nelson*.

Plaintiffs have also now averred that they purchased goods because they believed a purchase would improve their chances of winning a prize. (Wright Dec., p. 2; Gillespie Dec., ¶ 5; Ferrell Dec., ¶5; Williams Dec., ¶3; Jessie Dec., ¶ 2; Samens Dec., ¶ 2, Dkts. ## 22-1 to 22-6). The reasonable inference from these allegations is the Plaintiffs' purchases were made as a result of PCH's deceptive advertising.  Conduct "need not reach the level of common-law fraud to be actionable." *Stutman,* 95 N.Y.2d at 29 (internal citation and quotation marks omitted). Indeed, precisely "because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under [this section] is not subject to the pleading-with-particularity requirements of Rule 9(b) [of the Federal Rules of Civil Procedure], but need only meet the bare-bones notice-pleading requirements of Rule 8(a)." *Pelman ex rel. Pelman* v. *McDonald's Corp.,* 396 F.3d 508, 511 (2d Cir. 2005).

### 6.    Plaintiffs' Price Premium Allegations Sufficiently Alleged Damages Under Section 349.

PCH's next argument is that the Plaintiffs did not sufficiently plead they incurred any damages. Contrary to PCH's assertions, the Plaintiffs have alleged sufficient "price premium"

MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

damage claims under New York law. The Second Circuit recognized the case of *Lazaroff v. Paraco Gas Corp.*, 967 N.Y.S.2d 867, (2011), as an exemplar of "price premium" injury, even where the Plaintiff did not use the precise term "price premium." See *Orlander v. Staples Inc.*, 802 F.3d 289, 302 (2d Cir. 2015); *Greene v. Gerber Prods Co.*, 262 F.Supp.3d 38, 68 (E.D. N.Y. 2017); *Braynina v. TJX Companies, Inc.*, No. 15-CV-5897, 2016 WL 5374134, at *10 (S.D.N.Y. Sept. 26, 2016).

The Plaintiffs alleged they paid a "premium or higher price" for products that could be purchased on other websites and stores at lower prices. (Am. Cpl., ¶ 103(a). They alleged they paid a higher price due to shipping and handling costs, interest costs, and administrative fees. *Id.* at ¶ 103(b). The Plaintiffs alleged they were deprived of the benefit of the bargain because they purchased products different from what Defendant warranted as the Plaintiffs believed they paid for products that included an increased or enhanced chance of winning a sweepstakes that was not delivered. *Id.* at ¶103(e, f). These allegations sufficiently plead a price premium injury.

In most price premium cases, the alleged misrepresentation conveys to consumers that the product at issue contains a unique, desirable quality. See *Irvine v. Kate Spade & Co.*, No. 16-CV-7300, 2017 WL 4326538, at *3 (S.D.N.Y. Sept. 28, 2017) (collecting cases); *Greene*, 262 F.Supp.3d at 68 (finding a sufficiently pled section 349 injury where plaintiff alleged that she would not have paid the price charged if not for the purported allergy benefits in the Infant Formula); *Koenig v. Boulder Brands, Inc.,* 995 F.Supp.2d 272, 288–89 (S.D.N.Y. 2014) (finding a sufficiently-pled section 349 injury where the plaintiff alleged that he would not have paid the price charged for "fat-free" milk had he known it contained fat); *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d at 56 n.5, (1999) ("[P]laintiff might have a claim where a distributor asserts that its bottled water is from a pure and pristine mountain stream while in reality, it was only tap water."). In most cases, "price premium" should thus be observable through an increased price in

comparison to products without the desirable quality. See *Belcastro v. Burberry Ltd.* , No. 16-CV-1080, 2017 WL 744596, at *5 (S.D.N.Y. Feb. 23, 2017) ("*Small* requires some connection between the deception and the price actually paid by the plaintiff or the intrinsic value of the good." (emphasis added)).

This interpretation is consistent with *Lazaroff* which the Second Circuit endorsed as a case illustrative of price premium injury. See *Orlander*, 802 F.3d at 302. In *Lazaroff* , the plaintiff alleged that he would not have paid the price charged for a twenty-pound propane cylinder had he known it only contained fifteen pounds of propane. *Lazaroff* , 2011 WL 9962089, at *6. Finding a cognizable injury for GBL section 349, the court explained that:

> [p]laintiff [had] allege[d] that, had he understood the true amount of the product, he would not have purchased it, and that he and the purported members of the class paid a higher price per gallon/pound of propane and failed to receive what was promised and/or the benefit of his bargain, i.e., a full 20 pound cylinder and the amount of propane he was promised.

*Id*. As the court explained, the only discrepancy was in the amount or quantity of the product. *Id*. Although the price of the product did not change, the alleged lesser amount or quantity was sufficient evidence of price premium. *Id*.; *Orlander*, 802 F.3d at 302 (Plaintiff's allegation that she purchased a two-year protection plan, but did not receive the services that Defendant misleadingly told Plaintiff that he was purchasing was sufficient to allege GBL §349 injury; see also *Daniel v. Mondelez Int'l, Inc*., 287 F. Supp. 3d 177 (E.D. N.Y., 2018) (dismissed on other grounds); *Donnenfeld v. Petro Inc*., 333 F.Supp.3d 208, 223-224 (E.D.N.Y. 2018) (where plaintiff alleged that as a result of Petro's allegedly deceptive billing conduct, he repeatedly overpaid for home heating oil, he alleged a sufficient injury); *Quiroz v. Beaverton Foods, Inc*., No. 17-CV-7348, 2019 U.S. Dist. LEXIS 57313 at *19 (E.D. N.Y. Mar. 31, 2019) (where Plaintiff alleged she paid a

premium for a product that was represented to them as "preservative free" and then received a product that was preservative-laden and had a significantly less value for them.").

The Plaintiffs have successfully alleged they incurred a "price premium" injury. As a result, the cases cited by the Defendant are inapposite. In *Small*, 94 N.Y.2d at 56, the Plaintiff only pled a deception as injury theory of damages regarding their purchase of cigarettes. In *Servedio v. State Farm Ins. Co*. 531 F. App'x 110 (2d Cir. 2013), and *Marcus v. AT&T Corp*., 138 F.3d 46 (2d Cir. 1998), the plaintiffs could not state injury where the prices for insurance contracts they purchased were set by a "filed rate doctrine." See also *Spagnola v. Chubb Corp*., 574 F.3d 64 (2d Cir. 2009) (where the Plaintiffs had only pled that they received the insurance contracts for which they paid).

Moreover, Plaintiff does not need to provide a comparison product in order to support her price premium theory. *Greene,* 262 F.Supp.3d at 69, contrasting *Izquierdo v. Mondelez Int'l Inc*., 287 F.Supp.3d 177 (E.D.N.Y. 2018) ("to the extent that *Izquierdo* holds that . . . that Plaintiff must identify a a precisely comparable product in order to allege a GBL 349 or 350 injury, *Izquierdo* contradicts the weight of the law in this Circuit. Courts routinely allow complaints that lack allegations of both cheaper and exactly comparable products to survive motions to dismiss); see also *Quiroz v. Beaverton Foods, Inc*., supra (motion to dismiss where plaintiff not required to present a comparative product for price premium injury claim).

### 7.    Non-Captioned Plaintiffs Remain Proper Parties.

Plaintiffs mistakenly referred to a "Jeffrey Singleton" in its Amended Complaint in listing a number of Plaintiffs presented with an email indicating they had won $10,000. Mr. Singleton is not a plaintiff and was never intended to be included as such. On the contrary, Cynthia Ferrell is identified as a plaintiff and has been throughout this litigation. (Am. Compl. ¶ 12; Compl. ¶ 12). Any omission of her name is a typographical error. To the extent necessary, the Plaintiff moves to

amend the caption to include Ms. Ferrell as a Plaintiff. Motions to amend caption are routinely granted as necessary. See e.g. *Morales v. PepsiCo*, No. 2016-CV-06597, 2018 WL 3853390 (W.D.N.Y. Aug. 14, 2018); *Eastern Sav. Bank FSB v. Rabito*, 2012 WL 3544755 (E.D.N.Y. Aug. 16, 2012). The decision cited by Defendant, *Med. Soc'y of New York v. United Health Grp.*, 2019 WL 1409806 (S.D.N.Y., Mar. 28, 2019), is inapposite as it dealt with a hospital plaintiffs ability to represent patients for claims against a health insurer.

## B. CLASS ACTION ALLEGATIONS ARE APPROPRIATE WHERE PLAINTIFFS PURCHASED PRODUCTS BECAUSE OF PCH'S DECEPTIVE ADVERTISING THAT PROMISED IMPROVED CHANCES TO WIN.

PCH's advertising scheme misled the Plaintiffs into believing that a purchase would improve their chances of winning a sweepstakes, drawing or lottery. Each Plaintiff has alleged they received representations from PCH that a purchase would improve their chances of winning. PCH's deception binds their cases together in such a way that compels class treatment.

PCH contends that Plaintiffs' class allegations must be stricken because: 1) the Plaintiffs lack standing individually to bring Section 349 claims; 2) Section 349 only applies to New York residents or out-of-state residents harmed by New York actions; and 3) deception and the resulting harm is an individualized inquiry. As explained in Part A-1 above, Plaintiffs and putative class members have standing for PCH's actions in New York, even though they are not New York residents. In *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88 (2d Cir. 2018), the Court stated that "because there has been considerable disagreement over this question in the district courts, we write to make explicit what we previously assumed in *In re Foodservice Inc. Pricing Litigation*, 729 F.3d 108 (2d Cir. 2013): as long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance

under Rule 23(b)(3), *Id*. at 126-27, not a question of 'adjudicatory competence' under Article III." *Id*. at 93. *Quiroz v. Apple & Eve, LLC,* No. 18-CV-0401(E.D. N.Y. Feb. 26, 2019).

Rule 23(b) of the Federal Rules of Civil Procedure allows for certification if both (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp*., 778 F.3d 401, 405 (2nd Cir., 2015); citing *In re U.S. Foodservice Inc. Pricing Litig*., 729 F.3d at 118 (quoting *UFCW Local 1776 v. Eli Lilly & Co*., 620 F.3d 121, 131 (2d Cir.2010).

Motions to strike under Rule 12(f) are rarely successful, *Guariglia v. Procter & Gamble Co*., 2018 WL 1335356 (E.D.N.Y. Mar. 14, 2018), particularly in the class-action context where such a motion "'requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'" *Reynolds v. Lifewatch, Inc.,* 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015), quoting *Belfiore v. Procter & Gamble Co*., 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015) (further citations omitted)). "Put differently, motions to strike class allegations are often denied as premature." *Id*. Accordingly, "to succeed on a motion to strike class allegations, a defendant must 'demonstrate from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain during discovery.'" *Id*. (quoting *Mayfield v. Asta Funding*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015); *Yang Chen v. Hiko Energy, LLC, No*. 14-cv-

MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

1771 (VB), 2014 WL 7389011, at *3 (S.D.N.Y. Dec. 29, 2014).

PCH has failed to show that a nationwide class is impossible based on standing. See *Guariglia,* supra (refraining from striking nationwide class allegations based on consumer protection laws). Here, PCH has effectively waived any argument that it is immune to class allegations under New York law because it has attempted to require New York law to govern any claims brought against it. (Am. Compl. ¶ 71).  PCH's Terms of Use states claims against them "shall be governed by the laws of the State of New York, excluding its conflicts-of-law principles." *Id*.  In other words, they insisted on the application of New York law regardless of whether a New York court would otherwise have applied the law of another jurisdiction.  PCH  cannot now avoid New York law where they insisted that New York law apply to any claim.

As a result, Plaintiffs' claims are similar to and perhaps even stronger than those in *Cruz,* in which the plaintiffs withstood a motion to dismiss a § 349 class action allegation where the defendant relied upon New York law in its terms of use documents. *Cruz*, 720 F.3d at 118.  As in *Cruz*, PCH's terms of use provide for any claims to be governed by New York law.  Any other result permits PCH to say "you can't sue us under any other state's law, and you can't sue us under New York law, either.  You simply can't sue us."  Defendants' standing argument should not preclude Plaintiffs' Section 349 class action allegations.

Moreover, common questions of law and fact predominate Plaintiffs' claims against PCH, which allege a deceptive advertising strategy executed on all of the putative class members. Here, the Plaintiffs alleged that PCH advertised with the goals of establishing a sense of urgency, a "winning moment," a special relationship, and a sense of obligation. (Am. Compl. ¶ 39). To execute their deception, PCH established token accounts for the consumers on the PCH website, *Id*. at ¶ 46; prevented consumers from operating the website until they purchased a product, *Id*. at

¶ 48; told they were on a "Winner Selection List" in violation of past agreements with State

Attorneys General, *Id.* at ¶¶ 31, 32, 51-55; informed consumers they had won when they had not,

*Id.* at ¶ 47, and represented that plaintiffs had been reserved an EXCLUSIVE Cash Prize Just To

Thank Past Orderers, Like You!" *Id.* at ¶ 49 (emphasis not added). These deceptive representations

caused Plaintiffs to pay a premium price for products from PCH that could have been purchased

elsewhere. *Id.* at ¶¶ 102, 103.

Similarly, the Defendants' arguments based on the lack of common questions related to

damages is also unconvincing. In *Guariglia*, this Court determined whether allegations that a

proposed class paid an inflated price for Tide Pods laundry detergent was sufficient to withstand a

motion to strike class allegations of a nationwide class. *Guariglia*, at *11-12. After a review of

Article III standing within the Rule 23 context, the Court determined the class members had

standing for a nationwide class, at the very least at the pleading stage. *Id.* This Court explained:

> even if the Court were to find that the Plaintiffs' definition of the class was overly
> broad, and included class members who did not have standing, that would not
> require the Court to strike the class allegations. This is because it is within the
> Court's discretion to modify the class definition. See Blagman v. Apple Inc., No.
> 12 CIV. 5453 ALC JCF, 2013 WL 2181709, at *6 (S.D.N.Y. May 20, 2013)
> (denying the defendant's motion to dismiss the class allegations for lack of standing
> because "th[e] court can modify the class if later it becomes clear that any of the
> putative class members do not have standing. [] [T]he court has other available
> mechanisms for determining the size or propriety of a class at the appropriate
> stage . . . ." (citing New Jersey Carpenters Health Fund v. Residential Capital, LLC,
> 288 F.R.D. 290 (S.D.N.Y. 2013); Janes v. Triborough Bridge and Tunnel Auth.,
> 889 F. Supp. 2d 462, 466 (S.D.N.Y. 2012); Dupler v. Costco Wholesale Corp., 249
> F.R.D. 29, 45 (E.D.N.Y. 2008)).

*Guariglia*, at *13.

Damages questions should be addressed at the class certification stage when weighing

predominance issues. *Roach*, 778 F.3d at 405, citing *McLaughlin v. Am. Tobacco Co.*, 522 F.3d

215, 231 (2d Cir. 2008) ("[i]t is well-established . . . that the fact that damages may have to be

ascertained on an individual basis is not sufficient to defeat class certification under Rule 23(b)(3))." A particularly significant aspect of the Rule 23(b)(3) approach is the recognition that individual damages questions do not preclude a Rule 23(b)(3) class action when the issue of liability is common to the class. *McLaughlin,* 522 F3d at 231 citing 6 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 18:27 (4th ed. 2002).

### C. DEFENDANTS CANNOT COMPEL ARBITRATION BASED ON AN INCONSPICUOUS TERM OF USE.

The Defendants cannot compel arbitration where the Terms of Use were not presented to the Plaintiffs. First, many of the Plaintiffs never visited PCH's website. Second, the Defendants' webpage may not have existed at the time the Plaintiffs would have used PCH's website. Third, Plaintiffs would have no reason to know the "Terms of Use" constituted an agreement or a contract just from reviewing the miniscule subscript on a registration page that disclaimed any commercial purpose. Fourth, the Terms of Use of the PCH's webpage was an impermissible browsewrap offer to which the Plaintiffs never assented. Finally, the arbitration clause is procedurally and substantively unconscionable.

The Federal Arbitration Act ("FAA") was intended to place arbitration agreements "upon the same footing as" other types of contracts. *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 511 (1974) (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)). As such, "arbitration under the Act is a matter of consent, not coercion," and "the FAA does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478-479 (1989). In *Granite Rock Co. v. International Brotherhood of Teamsters*, the Supreme Court explained that "[a] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." 561 U.S. 287, 297 (2010).

The question of whether PCH and any of the Plaintiffs entered into an agreement to arbitrate is analyzed under ordinary state law principles governing contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In New York, a contract is formed when the parties give their mutual assent to the terms of a contact and there is consideration. See e.g. *Maas v. Cornell University*, 94 NY2d 87, 93 (1999). Whether a contract has been made must be determined in light of the totality of the parties conduct and communications. *Zheng v. City of New York*, 19 NY3d 556, 572, quoting *Brown Bros. Elec. Construc. v. Beam Constr. Corp*., 41 NY2d 397, 400, (1977), without placing disproportionate emphasis . . . on any single act, phrase or other expression" *Zheng*, 19 NY3d at 572, quoting *Brown Bros*., 41 NY2d at 399-400).  Under New York law, a contract is unenforceable when there has been no meeting of the minds between the parties regarding its material terms *Brando v. Urban*, 182 AD2d 287, 289 (2d Dept 1992).

1.      **Non-website using Plaintiffs Were Not Covered by a Contract.**

PCH's motion to compel arbitration hinges upon an arbitration clause found on their website. (Seigal Dec., Ex. 1, Dkt # 35-1). PCH does not contend, nor could they, that Plaintiffs who have never used the website should have their claims governed by a provision on the website. None of the mailings sent to Plaintiffs contained an arbitration clause or any Terms of Use. (See e.g. Schwaba Dec., Ex. 11, Dkt. # 23-11). Clearly, Plaintiffs could never assent to the terms of a contract that were never presented to them. Any claims presented by Plaintiffs Wilhelm and Ferrell, that did not use the website must remain in this Court.

2.      **PCH Failed to Prove Their Webpage Was Seen by Plaintiffs.**

PCH's argument for arbitration of claims arising from email solicitations hinges upon a registration page that contained a "Terms of Use" immediately below the "Continue" button of the page. (Siegal Dec., Ex. 1, Dkt. No. 35 – 1). This registration page drastically differs from the

MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

registration page offered by PCH in their original Motion to Dismiss and differs from that offered by the Plaintiffs. (See Renner Dec. Ex. 1, Dkt. No. 16-1). Mr. Siegal's declaration states the page is a "correct copy of the account registration page on PCH's website." (Siegal Dec., ¶ 2). PCH fails to explain how this registration page is relevant to Plaintiff's claims that extend three years prior. PCH fails to offer any evidence that this page was seen by the Plaintiffs, or that the page would offer the Plaintiffs or consumers any indication they were initiating a contract with PCH. The Plaintiffs have now testified that they never saw such webpage. (Wright Dec. p. 3, Gillespie Dec., ¶6, Ferrell ¶6, Williams ¶6, Jessie ¶5, Dkt. ## 22-1 to 22-6).

### 3. Website-Using Plaintiffs Were Not Presented With A Contract.

Whether offering contract terms on paper, or as here, on a website, the offeror must provide sufficiently conspicuous notice of both the terms and the means of assent so that a reasonably prudent consumer would be on notice that contract terms are at issue and of what action on the consumer's part will constitute assent to those terms. *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002). If there is an issue of fact as to arbitrability, the court must apply the standard of summary judgment, drawing all reasonable inferences in favor of the non-moving party. *Nicosia v. Amazon.com Inc*., 834 F.3d 220 (2d Cir. 2016). If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 177-178 (2d Cir. 2003).

The lack of any contract formation aligns this case with the findings in *Schnabel v. Trilegiant*, 697 F.3d 110 (2d Cir. 2012). Like *Schnabel*, the Plaintiffs had no reasonable expectation of receiving the Terms of Use. As the Court explained in *Schnabel*, the arbitration provision was both temporally and spatially decoupled from the Plaintiff's enrollment in and use of PCH; the Plaintiffs were not forced to confront the terms while enrolling in or using the service

or maintaining their memberships. See *Id*. at 127.

The Defendants reliance on *Meyer v. Uber Technologies, Inc.,* 868 F.3d 66 (2d Cir. 2017) is misplaced. First, as the Defendant argued in *Meyer*, it was not only the conspicuousness of the text disclosing the Terms of Service that put Plaintiff on notice of their existence; it was the context of the specific transaction. *Meyer*, 868 F.3d at 80; (Schwaba Dec., Ex. 4, Dkt. # 23-4) ("the entire purpose of registering was to form an economic relationship with Uber, whereby Uber would facilitate the provision of services *in exchange for money*." *Id*. (emphasis not added)).  Second, Uber presented the consumer with a payment screen that requested a credit card information, followed by the "Register" dialog box, followed by dialog boxes offering payment by Paypal or Google Wallet, followed by the "Terms of Service" hyperlink. All of these entries were visible on one page without scrolling. The text of payment and Register buttons were colored in black and grey over a white background. The "Terms of Service" hyperlink was a bright blue color that stood out over a white background. The hyperlink was, although smaller, in a comparable size font. *Meyer*, 868 F.3d at 78.

Unlike *Meyer*, Plaintiffs in this matter were purportedly presented with a Registration Page based on a distinct promise that no purchase is necessary. PCH's purported registration page represents "Its FREE – Enter Now" at the top of the dialog box where personal information is entered. These promises are what enticed the Plaintiffs to register with PCH. Therefore, the Plaintiffs have no reason to review the "terms" of a relationship that is not economic in nature. Moreover, once they registered, the Plaintiffs were never presented with the registration page again, bypassing any hyperlink related to the terms of use. (See e.g. Gillespie Dec., ¶4, Dkt. # 22-1).

The PCH interface is very different from that found in *Meyer*. First, the PCH screen offered

MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

by the Plaintiff has a white background with red "Submit" button. (Schwaba Dec., Ex. 8, Dkt #

23-8). The "Submit" button is at the very bottom of the screen, with nothing below it as presented.

*Id*. PCH also presented an alternative registration screen with an orange background with a bright

blue "Continue" button similar to that offered by PCH that required scrolling down to see any

"Terms of Use" hyperlink. (Schwaba Dec., Ex. 9, Dkt. # 22-9).  Even the screen presented by PCH

fails the analysis used in *Meyer*. The PCH screen is a red background with white lettering. (Renner

Dec., Ex. 1, Dkt. # 16-1; Seigal Dec., Ex. 1, Dkt. # 35-1). The "Continue" dialog box is a big,

bright blue box with white lettering that matches the conspicuousness of the "Win it All" blue

ribbon above. After personal information is entered, PCH offers two boxes, above the "Continue"

button, to click to learn more about other chances of winning and about PCH Search&Win, each

with hyperlinks to PCH's privacy policy. *Id*. No such click box is offered to learn of the "Terms

of Use." Below the "Continue" box is the "Terms of Use" hyperlink, one of six hyperlinks on the

page.  Unlike *Meyer*, the "Terms of Use" hyperlink has no predicate language informing the user

that clicking the "Continue" box is contingent upon accepting the terms of service. Instead, the

user is offered no significance of the Terms hyperlink, whether the Terms are for the website, the

sweepstakes, or some other interaction with PCH.

### 4.    PCH's Terms of Use Constitute an Impermissible Browsewrap Agreement.

Contracts formed over the internet fall into two main categories: clickwrap agreements,

where users are required to click on a check box or "I agree" button after being presented with a

list of terms and conditions; and "browsewrap" agreements, where the terms and conditions are

available by clicking on a hyperlink somewhere on the page. *Nguyen v. Barnes & Noble, Inc.*, 763

F.3d 1126, 1175-76 (9th Cir. 2014) (citations omitted). Some presentations of contract terms online

do not fit neatly under either the "clickwrap" or "browsewrap" umbrella. *See Fteja v. Facebook*,

MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

*Inc.* 841 F. Supp.2d 829, 837 (S.D.N.Y. 2012).

In contrast to clickwrap agreements, which "have been routinely upheld by circuit and district courts," *United States v. Drew*, 259 F.R.D. 449, 462 n. 22 (C.D. Cal. 2009), browsewrap agreements are rarely upheld against individual consumers. *Berkson v. Gogo LLC*, 97 F. Supp.2d 359, 396 (E.D.N.Y. 2015) (collecting cases); *see also* Mark A. Lemley, *Terms of Use*, 91 Minn. L. Rev. 459, 474 (2006) (same). Because browsewrap agreements "are a powerful means of binding users with very little affirmative assent," *id.* at *9, courts are very careful about the circumstances in which they will find browsewrap agreements enforceable.

PCH's Terms of Use is very different from the conspicuous notice in *Fteja*, 841 F. Supp.2d 829, where the text below the "sign up" button consisted of a single, 18-word sentence (hereafter, "Agreement Sentence"), of which the hyperlinked phrase "Terms of service" were words 16 through 18: "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service." *Id*. at 835. No such explanation as to the significance of the Terms of Use for PCH occurred in this matter.

As explained in *Berkson*, 97 F.Supp.3d 359, lower courts upholding sign-in-wrap arrangements, such as the one presented in *Fteja,* have done so in limited circumstances. They emphasized notice and an effective opportunity to access terms and conditions. PCH's Terms of Use reveal none of the browsewrap conditions have been satisfied. Although the first condition of the *Fteja* factors may be satisfied if PCH's webpage is accepted, Plaintiffs have offered alternative webpages where the TOU hyperlink is distant from the "Continue" box. (Schwaba Dec., Ex. 8, Dkt. # 23-8). Second, no clickwrap agreement was shown, nor was the TOU hyperlink revealed on subsequent visits. (See e.g., Schwaba Dec., Exs. 10 and 12, Dkt. ## 23-10, 23-12). Finally, the

TOU were not presented on the multiple successive webpages of the site. (Schwaba Dec., Ex. 9, Dkt. # 23-9). Defendants' reliance on *Fteja* is misplaced.

**5.      PCH Did Not Present the TOU Through a Valid Clickwrap Agreement.**

The reference to the Terms of Use on pch.com fell into the "browsewrap" category of online contract offers rather than the "clickwrap" category because it "does not require an express agreement to the 'Terms and Conditions' of its website." The pch.com website design offered by the Defendant differs in two important respects from the sorts of clickwrap agreements that courts have enforced: first, it does not present the proposed contract terms, or a conspicuous link to those terms, on the same page as the button that users must click to indicate assent to those terms; and the language and layout of the site do not clearly communicate that clicking the button labeled "Continue" would manifest assent to the Terms of Use.

Not surprisingly, Plaintiffs who visited the Publisher's Clearing House website testify that they never saw any Terms of Use when on the website and were not prompted to review any such terms. (Wright Dec., p. 2; Gillespie Dec., ¶ 3; Ferrell Dec., ¶3; Williams Dec., ¶4; Jessie Dec., ¶ 3; Samens Dec., ¶ 4, Dkt. ## 22-1 to 22-6).  This is significant because courts that have enforced clickwrap agreements have emphasized the fact that the terms of those agreements were prominently featured on the webpages that users needed to pass through in order to complete an order.

For example, in *Tompkins v. 23andMe, Inc.*, No. 5:13-cv-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014). The court in *Tompkins* held that the Terms of Service ("TOS") on 23andMe's website, which contained an arbitration clause, did not become binding on plaintiffs when they purchased their DNA kits because up to that point the TOS only appeared as a hyperlink at the bottom of certain webpages and "reference to the TOS never appears in the text, sidebar, or

MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

at the top of the webpage prior to purchase of a DNA kit." *Id.* at *2.) In contrast, in *Mohamed v. Uber Technologies, Inc.*, 109 F. Supp.3d 1185 (N.D. Cal. 2015), for example, people who wished to drive for the ride-sharing company Uber were confronted with a message when they tried to sign in to the site stating, "By clicking below, you acknowledge that you agree to all the contracts above." *Id.* at 1190-91. If the user clicked the button labeled "Yes, I agree," a new page appeared that stated, "PLEASE CONFIRM THAT YOU HAVE REVIEWED ALL THE DOCUMENTS AND AGREE TO ALL THE NEW CONTRACTS" and provided buttons for users to click either "YES, I AGREE" or "NO." *Id.* at 1191.

According to the screenshots PCH provided, the pch.com website introduces its Terms of Use in the same inconspicuous manner found insufficient at the checkout stage of the 23andMe website.  Like 23andMe's site, a reference to the pch.com Terms of Use "never appears in the text, sidebar, or at the top of the webpage prior to" a user clicking on the button to register. 2014 WL 2903752, at *2; (Renner Dec., Ex 1, Dkt. # 16-1). As then-Judge Sotomayor put it in *Specht*, "there is no reason to assume that viewers will scroll through to subsequent screens simply because screens are there." 306 F.3d at 32.

### 6.    PCH's Arbitration Clause Was Unconscionable.

Even if the Court concludes that a contract was formed between the PCH Defendants and the Plaintiffs who visited pch.com, that does not end the inquiry. Under the FAA's "savings clause," an arbitration clause may be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This means that "agreements to arbitrate [may] be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT & T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1746 (2011).

The arbitration provision in PCH's Terms of Service was both procedurally and

substantively unconscionable under New York law. It was procedurally unconscionable because it was contained in terms of adhesion that the plaintiffs had no ability to negotiate, its terms were not clearly communicated, and their harshness would come as a surprise given the reasonable expectations of consumers. The arbitration provision's substantively unconscionable terms include: 1) the distant forum provision requiring all arbitration proceedings to take place in New York; 2) the "loser pays" provision that risks burdening plaintiffs with PCH's arbitration costs and attorneys' fees; 3) the unilateral modification clause permitting PCH to alter the terms of the arbitration provision at any time; and 4) the severe limitations on remedies that, while not contained within the paragraph dealing with arbitration, still pertain to the arbitration provision because they would limit the relief that an arbitrator would be able to provide to an aggrieved consumer. Because unconscionability permeates the arbitration provision, its unconscionable terms cannot be severed and the clause should be stricken in its entirety and not enforced against the plaintiffs who visited pch.com.

### a.    PCH Arbitration Clause Was Procedurally Unconscionable.

Procedural unconscionability is broadly conceived to encompass not only the employment of sharp practices and the use of fine print and convoluted language, but a lack of understanding and an inequality of bargaining power." *Berkson, supra,* citing *Am. Airlines v. Wolens*, 513 U.S. 219, 249 (1995).

The Plaintiffs are at a distinct disadvantage to the Defendants in terms of bargaining power in this matter. Most of the Plaintiffs are elderly and living on fixed incomes, compared to a nationwide corporation with thousands of employees. Moreover, the arbitration clause in the TOU can be considered a surprise. The paragraph regarding arbitration is relatively inconspicuous, appearing as the thirty-second of thirty-eight numbered paragraphs in the Terms of Use. (Renner

Dec. Exhs. 2-4, Dkt. ## 16-2 to 16-4). Courts have found surprise, and judged contract terms procedurally unconscionable as a result, when they were part of even shorter contracts than the PCH Terms of Use. *See, e.g., Newton v. Am. Debt Services, Inc.*, 549 Fed. Appx. 692, 694 (9th Cir. 2013); *Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th 77, 89 (2003) In short, the presence of both oppression and surprise makes the PCH's Terms of Use procedurally unconscionable to a significant degree.

### b.   PCH Arbitration Clause Was Substantively Unconscionable.

The PCH Arbitration Clause is substantively unconscionable for a variety of reasons. First, the clause prohibits the Plaintiffs from acquiring any real damages for their claims. Second, the clause requires Plaintiffs to travel to New York to arbitrate their claims. Third, the clause allows the Defendant to modify its terms at will. Finally, the clause negates any real recovery to the Plaintiff, as it nullifies state and federal consumer protections. "'[T]he substantive element [of unconscionability] looks to the content of the contract, per se,'" *Naval v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (quoting *State v. Wolowitz*, 96 A.D.2d 47, 67 (2d Dep't 1983)), and "entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged. *Id.* at 10 (quoting *Mandel v. Liebman*, 303 N.Y. 88, 94 (1951)).

The arbitration clause precludes Plaintiffs from any meaningful recovery, precluding an award of consequential damages, including any award for punitive or incidental damage, attorneys fees and costs, or any multipliers of damages. (Renner Dec., Ex. 2, ¶32, Dkt. # 16-2). This contrasts with New York GBL § 349 allowing for treble damages, court costs and attorneys' fees. (N.Y. GBL § 349(h)). Such a construct was negated in *Eisen v. Venulum Ltd.*, 244 F.Supp.3d 324, 344-345 (W.D.N.Y. 2017) and *Brenner v. Gen. Plumbing Corp.*, 13 N.Y.S.3d 849 (N.Y. Civ. Ct. 2015)

MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

citing *Wolowitz*, 96 A.D.2d at 67. Considering most Plaintiffs have claims of less than a few hundred dollars, precluding consequential damages turns any arbitration into a negative value proposition for the Plaintiffs.

The version of the arbitration provision states in two separate places that all arbitrations must take place in New York. (Renner Dec. Ex. 2, ¶32, Dkt # 16-2). None of the Plaintiffs reside in New York and all live a significant distance from New York. Although Defendants argue AAA rules allow Plaintiffs to appear for the arbitration over the telephone, the Court can take judicial notice of the disadvantage a telephone appearance may play with respect to such a hearing. *See Newton*, 549 Fed.Appx. at 694 (finding substantively unconscionable a provision requiring a California resident to arbitrate her claims in Tulsa, Oklahoma, the defendant's corporate headquarters); and *Comb v. Paypal Inc.*, 218 F. Supp.2d 1165, 1176-77 (N.D. Cal 2002).

Where a contract provision, like the arbitration clause here, is "so permeated by substantive unconscionability that it cannot be cured by severance or any other action short of rewriting" it, this Court has held that the "taint[ed]" provision should be stricken in its entirety as unenforceable. *Nagrampa v. Mailcoups Inc.*, 469 F.3d 1257, 1293 (9th Cir. 2006). The Court should do the same here.

## III.    CONCLUSION

Plaintiffs have shown their claims should be allowed to move forward. The Plaintiffs sufficiently alleged deception, causation and injury according to Section 349. The Plaintiffs stated class allegations pertaining to a nationwide class based on PCH's choice of law provision. Finally, the Defendants are not entitled to arbitration where their Terms of Use did not create a contract, was an impermissible browsewrap agreement, and was unconscionable. Defendants' Motion to Dismiss Plaintiffs' Amended Complaint should be denied.

MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

Dated this 23rd day of May, 2019

**SCHWABA LAW FIRM**

s/ Andrew J. Schwaba
Andrew J. Schwaba
NC Bar No.:  36455
212 South Tryon Street
Suite 1725
Charlotte, NC 28281
(704) 370-0220
(704) 370-0210 (fax)
aschwaba@schwabalaw.com

**NICHOLSON LAW FIRM, P.A.**
Edward H. Nicholson, Jr.
NC Bar No. 36123
212 South Tryon Street
Suite 1725
Charlotte, NC 28281
(704) 223-2406 (telephone)
nicholsonshumaker@att.net
*(pro hac vice motion to be filed)*

**ZECCOLA & SELINGER, LLC**
John S. Selinger
NY Bar No. 2663698
2127 Crompond Rd.
Suite 205
Cortlandt Manor, NY 10567
(914) 402-7290
(914) 737-4260
john@zslawyers.com

*Attorneys for Plaintiffs*