**FILED**
**CLERK**

3:50 pm, Feb 13, 2020

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
EARL WRIGHT, RAMONA HOLDEN, ETTA
WILLIAMS, MICHAEL HAMILTON, JOSEPH
EKO, LINDA PHILLIPS, ELAINE WILHELM,
ANTHONY GILLESPIE, MARK CARLISLE,
VERNITA JESSIE, CHERYL RIFE, SANDY
SAMENS, RUTHIE ORTIZ SOUDJIAN,

            Plaintiffs,

        -against-

PUBLISHERS CLEARING HOUSE,
INCORPORATED and PUBLISHERS
CLEARING HOUSE, LLC,

            Defendants.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:18-cv-02373 (ADS)(AYS)

**APPEARANCES:**

**Schwaba Law Firm, PLLC**
*Co-Counsel for the Plaintiffs*
212 South Tryon Street Suite 1725
Charlotte, NC 28281
      By:    Andrew Schwaba, Esq., Of Counsel.

**Zeccola & Selinger, LLC**
*Co-Counsel for the Plaintiffs*
2127 Crompond Road
Suite 205
Cortlandt Manor, NY 10567
      By:    John S. Selinger, Esq., Of Counsel.

**Baker Hostetler LLP**
*Counsel for the Defendants*
45 Rockefeller Plaza
New York, NY 10111
      By:    Erica Adina Barrow, Esq.,
             John Siegal, Esq.,

1801 California Street Suite 4400
Denver, CO 80202
      By:    Paul Karlsgodt, Esq., Of Counsel.

1

**SPATT, District Judge**:

On April 23, 2018, plaintiffs Earl Wright, Ramona Holden, Etta Williams, Michael Hamilton, Joseph Eko, Linda Phillips, Elaine Wilhelm, Anthony Gillespie, Mark Carlisle, Vernita Jessie, Cheryl Rife, Sandy Samens, and Ruthie Ortiz Soudjian (collectively, the "Plaintiffs") brought this putative class action against defendants Publishers Clearing House, Incorporated and Publishers Clearing House, LLC (collectively, the "Defendants"). The Complaint alleged that the Defendants engaged in unlawful, unfair and deceptive marketing practices in violation of the Federal Deceptive Mail Prevention and Enforcement Act ("DMPEA"), 30 U.S.C. § 3001 *et seq.*, the Federal Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN SPAM"), 15 U.S.C. §7701 *et seq.*, and New York General Business Law ("GBL") §§ 349 and 369e.

On March 12, 2019, the Court granted a motion to dismiss by the Defendants, dismissing the DMPEA, CAN SPAM, and Section 369e claims with prejudice and dismissing the Section 349 claims without prejudice and with leave to replead. ECF 31 [hereinafter the "Order].

On April 11, 2019, the Plaintiffs filed the Amended Complaint.

Presently before the Court is a motion by the Defendants, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(1) and 12(b)(6) to dismiss the Complaint, pursuant to Rule 12(f), to strike the class allegations, and in the alternative, to compel arbitration and stay the present action.

For the following reasons, the Court grants the Defendants' motion to dismiss the Amended Complaint in its entirety and denies the motions to strike and compel as moot.

# I. BACKGROUND

The Defendants operate the nationally recognized sweepstakes and marketing brand Publisher's Clearing House ("PCH"). PCH advertises sweepstakes over national television networks, direct mail, and internet and email marketing campaigns. The Plaintiffs are various residents of states other than New York who claim that they purchased goods based on the Defendants' misrepresentations that doing so would increase their chances of winning a sweepstakes, prize, or drawing.

## A. THE ALLEGED CONNECTION TO NEW YORK.

According to the Plaintiffs, the Defendants maintain their principal place of business in New York and hatched the allegedly deceptive and misleading scheme in New York. PCH registered its lottery, drawings and sweepstakes entries with the State of New York, including a surety bond posted with the State. Moreover, PCH maintained a Terms of Use on their website that provided that any lawsuit brought against PCH must be filed in a New York court and governed by New York law.

As to the particular transactions at issue, the Defendants sent the disputed marketing materials from PCH offices located in Jericho, NY. These marketing materials enticed the Plaintiffs into making purchases with a lottery. The Defendants sent printed and digital marketing materials in the form of  simulated checks, letters, envelopes, notices, entry/order forms, "winner selection lists," and warnings of lack of compliance to enter drawings. The printed marketing materials originated from an address listed on the materials as "101 Winners Circle, Jericho, NY 11753." The digital marketing materials originated from an address listed on the materials as "300 Jericho Quadrangle, #300, Jericho, NY 11753."

Customer orders resulting from the marketing campaigns were processed at PCH addresses in Melville and Jericho. In order to purchase a product by regular mail, the marketing materials directed the Plaintiffs to return envelopes containing their purchases to PCH offices in Melville. Similarly, for digital purchases, the Plaintiffs received e-mails from a PCH office in Jericho instructing them to make purchases through the PCH website, which listed an address of 300 Jericho Quadrangle, #300, Jericho, New York 11753.

## B. THE ALLEGED MISREPRESENTATIONS.

The Complaint alleges that the Defendants sent digital and print advertisements misleading the Plaintiffs into believing that purchasing products from PCH would enhance their chances of winning a sweepstakes, lottery or drawing. According to the Plaintiffs, the advertisements cultivated this misperception by creating a "Special Relationship" with consumers, whereby each advertisement standing alone may seem innocuous but have a cumulative deceptive effect. No specific advertisement promises that purchasing a product will increase the purchaser's chance of winning. Nonetheless, the Plaintiffs believe that the overall message conveyed by the advertisements is that a "secret" manner of winning exists, namely, purchasing products.

Cynthia Ferrell ("Ferrell"), a plaintiff added in the Amended Complaint, received a mailed advertisement in which one piece of the mailing was folded so that "We Need to find WINNERS Soon! HURRY Respond Today!" appeared just above a second piece that said "Cynthia, Only one order is all it takes!" ECF 32-1.

Jessie received a mailed advertisement from PCH in which one piece of the mailing was folded so that "We'd Love For You to Place an Order Today!" appeared just above a second

piece that said "FOREVER PRIZE WILL DEFINITELY BE AWARDED IN JUST WEEKS!" ECF 32-2.

Wright, Carlisle and Phillips maintained an online account with PCH and amassed an accumulation of reward points/tokens that PCH promised were halfway to "unlocking" the "next tier" of "extraordinary benefits." ECF 32-3. According to the Plaintiffs, the points/token had no purpose other than to create the false impression that the holder had a greater chance of winning than other entrants.

PCH informed Wright, Holden, Samens, Williams, Hamilton and prospective class members that they had won a sweepstakes or drawing through an email conveying that they had won $10,000. ECF 32-4. When the Plaintiffs responded to the email to claim their prize, they were informed that the email was sent by mistake and, in fact, they had not won. Upon information and belief, the Plaintiffs allege that PCH used this tactic to entice consumers to purchase products when they enter sweepstakes and prizes.

After a consumer enters the PCH drawings on multiple occasions, the consumer is presented with a screen that prevents the consumer from completing their entry form until they purchase a product. While attempting to enter a lottery, Phillips, Williams, Gillespie, and Rife were presented with and viewed a screen that prevented them from completing their entry form until they purchased a product.

Holden received and viewed email advertisements from PCH that contained the following representations:

i. "Being a Valued Customer Could Really Pay Off"

ii. "We've reserved an EXCLUSIVE Cash Prize Just To Thank Past Orderers, Like You! This Opportunity is not for the General Public – And You've Earned It – So Please Don't Miss Out!"

iii. "$100,000 Contest Is ONLY Open To Valued Customers like you!"

iv. "Less than 5% of Our Members Will Receive This, Ramona"

ECF 32-5.

Wilhelm, Phillips, Jessie, Ferrell, and Hamilton were notified by PCH and viewed representations that they were placed on a "Winner Selection List." On the reverse side of the notice, Plaintiffs were advised to order a product to obtain "benefits" from this notice. ECF 32-6; ECF 32-7; ECF 32-8. In particular, Wilhelm received and viewed the following three advertisements.

First, Wilhelm received a mailing stating: "YOU'RE A TOP CUSTOMER! We value your continued loyalty and hope you choose one of our free offers and incredible deals along with our special ordering benefits from this notice." ECF 32-6 at 3.

Second, Wilhelm received a mailing informing her that she was added to a "Winner Selection List." ECF 32-7 at 2. On the reverse side of the mailing, PCH advises the consumer "You May Want to Try One or More of These Items: Personal Order Recommendation: Check out the colorful 'WIN $1,000.00 A DAY FOR LIFE' flyer for some temping Deals on Scrumptious Treats we think you'll LOVE!" *Id.* at 3

Third, Wilhelm received a mailing containing a "Notice of Mandatory Compliance for Imminent Winner Selection," requiring completion of a form to avoid being "DROPPED FROM THE WINNER SELECTION LIST." ECF 32-8 at 3–4. On reverse side of the mailing, PCH counsels consumers as follows:

> Wondering if you should place an order? Take advice from some satisfied customers –
>
> "Take it from me, when you purchase an item from PCH, you will be pleased!" – Holly Messinese

"I would encourage you all just to browse at least and I bet you will come across an item you just have to have. Place an order and . . . you will be pleased with 100% customer satisfaction." – Marquise Nelson

"I absolutely enjoy traditional shopping through the PCH mail . . . I have been completely satisfied with PCH products." – Janette Melaram

*Id.* at 5.

PCH sent Phillips, Samens, and Wilhelm simulated checks creating the impression of a "Winning Moment." ECF 32-9. According to the Plaintiffs, such references violate PCH's agreements with State Attorneys General by enticing the consumer to imagine winning a sweepstakes or drawing in order to further motivate desired actions, such as purchasing a product.

Allegedly in violation of agreements with State Attorneys General, PCH sent Wilhelm, Williams, Holden, Jessie, Hamilton, and Ferrell advertisements that advised a winning number would be forfeited if they did not take an additional step to enter a lottery, drawing or sweepstakes. ECF 32-10; ECF 32-11.

Also allegedly in violation of past agreements with State Attorneys General, PCH sent Hamilton, Wilhelm, Samens, Ferrell, Jessie, Williams, and Holden emails indicating a lottery, drawing or sweepstakes winner would be selected from a pool of individuals in their zip code, state, or to someone with their initials. ECF 32-12.

Wilhelm and Carlisle received form mailings comingling the forms required for entry into a lottery, drawing or sweepstakes with the forms required for ordering products from PCH. ECF 32-13. The mailings advertised a "Number for Lifetime Prize" that advised consumers of a "Final Step" requirement to "TIMELY RETURN OF FORM W-61 (YOUR PAYMENT/OFFICIAL ENTRY VALIDATION & ORDER FORM) OR NUMBER WILL BE DROPPED FROM WINNER SELECTION LIST." The mailing also advises the consumer "We

thank you for your participation in our Sweepstakes. Your loyalty is appreciated and rewarded. That's why we're now offering you an incredible opportunity to win an incredible Lifetime Prize with special cash payout: $7,000 A Week For Life PLUS $50,000 Upfront! We've packed this bulletin with an all-new Loyal Customer assortment of over 70 items, including many with BIG SAVINGS and amazing FREE deals!" *Id.* The following pages of the mailing inform the recipient of a "Winner Selection List" notice notifying consumers that an Order is required to upgrade their Customer Status, and stating "*C'mon – try at least one item – we guarantee you'll be glad you did!" Id.* at 2–3.

Carlisle, Eko, and Soudjian have not retained hard copies of the materials mailed to them or the emails they received. However, they recall receiving representations and solicitations of a style and substance similar to those set forth in the preceding paragraphs.

**C. THE ALLEGED INJURIES SUFFERED BY THE PLAINTIFFS.**

The Plaintiffs allege that, inconsistent with the representations in the marketing materials, they were damaged by failing to receive any enhanced or improved chances of winning a sweepstakes and/or drawing by purchasing items from Defendants or using Defendants' internet games and services. According to the Complaint, those damages included the following:

The Plaintiffs paid a premium or higher price for products than what those products were worth and that could be purchased on other websites and stores at lower prices in order to increase their chances to win a lottery, drawing or sweepstakes conducted by the Defendants.

The Plaintiffs paid a premium or higher price for products than what those products were worth and that could be purchased on other websites and stores at lower prices due to shipping and handling costs, interest costs, and administrative fees in order to increase their chances to win a lottery, drawing or sweepstakes conducted by the Defendants.

The Plaintiffs purchased products they otherwise would not have in order to increase their chances to win a lottery, drawing or sweepstakes conducted by the Defendants.

The Plaintiffs paid a sum of money for products that were not what the Defendants represented as the Plaintiffs paid for products that included an increased or enhanced chance of winning a lottery, drawing or sweepstakes that was not delivered.

The Plaintiffs were deprived of the benefit of the bargain because the products they purchased were different from what Defendants warranted as the Plaintiffs paid for products that included an increased or enhanced chance of winning a lottery, drawing sweepstakes that was not delivered.

The Plaintiffs were deprived of the benefit of the bargain because the products they purchased had less value than what Defendants represented as the Plaintiffs paid for products that included an increased or enhanced chance of winning a lottery, drawing or sweepstakes that was not delivered.

The Plaintiffs used an inferior search engine product, PCH Search & Win, compared to other search engine products, such as Google.com, Bing.com and others in exchange for an increased or enhanced chance of winning a lottery, drawing or sweepstakes that was not delivered.

## II.  DISCUSSION

### A. THE LEGAL STANDARD.

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiffs. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d

Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L.Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

**B. APPLICATION TO THE FACTS.**

To state a claim under Section 349, a plaintiff, who transacted in New York, "must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941, 967 N.E.2d 675 (2012). As the Court will explain, the Amended Complaint fails to state a claim because the Plaintiffs lack standing, and the Amended Complaint lacks facts sufficient to allege a material misrepresentation or injury.

**1. As to the Plaintiffs' Standing.**

Section 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state* are hereby declared unlawful." (emphasis added). N.Y. Gen. Bus. Law § 349(a). The New York Court of Appeals in *Goshen v. Mutual Life Insurance Company of New York*, 98 N.Y.2d 314, 774 N.E.2d 1190 (2002), interpreted the limiting phrase "in this state" to require that "the transaction in which the consumer is deceived ... occur in New York." *Id.* at 98 N.Y.2d at 324. However, in *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013), the Second Circuit recognized that post-*Goshen* case law evolved to "focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than on the residency of the parties." *Id.* at 122. Thus, the Second Circuit concluded that an out-of-state victim possesses standing to sue under Section 349 so long as "some part of the underlying transaction occurred in New York State." *Id.* at 124 (quoting *Mountz v. Global Vision Prods., Inc.*, 770 N.Y.S.2d 603, 608 (Sup.Ct. 2003)).

In the Order, the Court found that the Complaint "fail[ed] to articulate a sufficient connection to New York even under the more lenient *Cruz* standard" because it lacked "specific facts showing that any part of the transactions [at issue] occurred in New York." ECF 31 at 7. As the Court explained, the existence of a New York choice-of-law provision, standing alone, was an insufficient transactional nexus. Consequently, the Court dismissed the Complaint without prejudice, providing the Plaintiffs leave to file an amended complaint correcting the deficiencies identified by the Court.

Based on its review of the now-filed Amended Complaint, the Court believes it is conclusively apparent that the Plaintiffs lack standing under Section 349. Although the Amended

Complaint adds a number of additional allegations, none of those facts remedy the lack of a transactional nexus. In sum, the new allegations assert that the Defendants hatched the deceptive scheme in New York; sent the relevant advertising materials from New York; and received payment and processed orders in New York. These facts neither individually nor cumulatively establish that some part of the underlying transaction occurred in New York State. Rather, they are merely clever re-articulations of the allegation that the Defendants operate their principal place of business in New York, because they only establish the location of some clerical aspects of the Defendants' business.

It is well-settled that a purchaser does not have standing to bring a Section 349 claim just because he or she transacted with a seller who resides in New York. *See Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 7 (2d Cir. 2012) ("To the extent plaintiffs allege that Sirius formulated the scheme to charge the fee in New York, the insufficiency of such a pleading is made clear by *Goshen*."); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 403 (S.D.N.Y. 2010) (granting motion to dismiss where plaintiffs "made and paid for their hotel reservations on the Internet from their respective home states"); *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 203 n.19 (S.D.N.Y. 2009) ("It is not sufficient that a marketing plan originates in New York if the consumer deception occurs elsewhere. The statement concerning direct access to parts and services was sent to a potential customer in New Jersey and is thus outside the bailiwick of the New York statute."); *Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*, No. 08-cv-3604, 2009 WL 1119409, at *4 (S.D.N.Y. Apr. 26, 2009) ("New York law is clear that the fact that Fidelity's principal place of business is in New York is not sufficient to render GBL § 349 applicable."); *Sharpe v. Puritan's Pride, Inc.*, No. 16-cv-06717, 2019 WL 188658, at *3 (N.D. Cal. Jan. 14, 2019) ("The Court of Appeals expressly rejected the theory that

the GBL applies to deceptive statements that merely emanated from New York; it is the place where the consumer viewed and acted on them that matters. . . . Consequently, plaintiffs cannot state a claim under the GBL for purchases made outside of New York."); *Mouzon v. Radiancy, Inc.*, 85 F. Supp. 3d 361, 376 (D.D.C. 2015) ("[N]otwithstanding Plaintiffs' allegations that Radiancy developed the deceptive marketing scheme in New York, there are no allegations that suggest that Plaintiffs' exposure to the scheme or purchase of the product occurred in New York. Therefore,. . . the Complaint fails to state a claim.").

Moreover, courts have specifically rejected many of the additional facts alleged by the Plaintiffs as potential bases for finding a sufficient transactional nexus. A plaintiff does not gain standing under Section 349 simply because he or she received advertisements from a seller in New York. *Goshen*, 98 N.Y.2d 314, 774 N.E.2d at 1196 ("the origin of any advertising or promotional conduct is irrelevant if the deception itself—that is, the advertisement or promotional package—did not result in a transaction in which the consumer was harmed."); *see also Mouzon*, 85 F. Supp. 3d at 376; *Sharpe, Inc.*, 2019 WL 188658, at *3. Nor does the fact that the seller processed a transaction in New York confer standing. *Kaufman*, 474 F. App'x at 8 ("Plaintiffs contend that Sirius's allegedly deceptive collection and retention of the fee in New York is the 'transaction' that distinguishes their complaint from those rejected by *Goshen*. We are not persuaded."); *Sharpe, Inc.*, 2019 WL 188658, at *3 ("The fact that some data processing and other back office functions were performed in New York for the transaction is of no moment. At most, those functions simply fulfilled a purchase that was made on the basis of a deception that occurred outside the state.").

That leaves the Court with the most salient connection to New York identified in the Order, the choice-of-law provision. Again citing *Cruz*, the Plaintiffs contend that the new facts in

the Amended Complaint sufficiently tether their claims to New York. However, the Court disagrees that they are the sort of additional connections required by Section 349.

In *Cruz*, the Second Circuit noted that the case "involve[d] a series of allegedly deceptive transactions that occurred in New York and implicate[d] the interests of New York." 720 F.3d at 123. The defendant operated a foreign currency exchange out of New York, which functioned as a market where individual investors could trade with each other. The defendant's customers opened accounts with the defendant and conducted trades through the defendant, who processed the trades in New York; required all communications regarding trades to be sent to New York; and held the plaintiffs funds in an account in New York. Moreover, the defendant refused to disburse funds from customer accounts until it received a redemption form in its New York office. Layered on top of all of these facts, the defendant also required the plaintiffs to agree to a New York choice-of-law provision. *Id.* at 118, 123–24. Thus, while the contractual agreement on choice-of-law was significant to the Second Circuit, the focal point was that the transactions themselves occurred in New York.

Here, the transactions have no locus in New York beyond the Defendants' residency. While the parties' agreement to a New York choice-of-law provision certainly enhances the transactions' connection to the state, the fact remains that the Plaintiffs merely received advertisements and products from New York. *Goshen* makes clear that fact alone does not establish that the transaction occurred in New York, because transactions occur where the consumer viewed the advertisement or purchased the product. *See Goshen*, 98 N.Y.2d 314, 774 N.E.2d at 1196 ("Plaintiff in Goshen concedes that he received MONY's information in Florida. He purchased his policy and paid his premiums in Florida, through a Florida insurance agent. Plainly, for purposes of section 349, any deception took place in Florida, not New York."). The

plaintiffs in *Cruz* escaped that holding because they directly participated in a marketplace located in New York. The State of New York has a much larger interest in transactions directly implicating commerce occurring within the state than the mere out-of-state shipment of consumer goods to non-New York residents. Absent any additional connections to New York, conferring standing to such out-of-state plaintiffs would have the effect of extending the extraterritorial reach of Section 349 to every out-of-state transaction where a New York seller negotiates for a choice-of-law provision favoring its home state. Not only does *Cruz* not endorse such a conclusion, but it is also prohibited by *Goshen*.

Therefore, the Court finds that the Plaintiffs lack standing under Section 349.

**2. As to Whether the Amended Complaint Pleads with Sufficient Particularity.**

To state a Section 349 claim, each plaintiff must "individually plead [each of] the disclosures he or she received were inadequate, misleading, or false, and that she was injured as a result of the insufficient or false disclosures." *Belfiore v. Procter & Gamble Co.*, 94 F.Supp. 3d 440, 446 (E.D.N.Y. 2015). In the Order, the Court dismissed the Complaint because it only "generally assert[ed] that the Defendants engaged in materially misleading behavior without setting forth any facts tying that behavior to the Plaintiffs' specific claims." ECF 31 at 9. The Court granted the Plaintiffs leave to file an amended complaint that would allege the misrepresentations with sufficient particularity by connecting the Defendants' deception to each plaintiff's individual circumstances. *Id.* The Defendants argue that the Amended Complaint failed to comply with this edict. Although the Court finds that the Plaintiffs pled the alleged misrepresentations with sufficient specificity, it concurs that the allegations regarding the connection to the Plaintiffs' purported injuries remain inadequate.

As the Court explained in the Order, the Complaint failed to state a claim because it "fail[ed] to identify the specific advertisements seen by each plaintiff and provide[d] no explanation why those advertisement[s] created a mistaken belief that purchasing a product would increase that plaintiff's chance of winning[.]" *Id.* The Amended Complaint directly rectified this deficiency. It accompanies each disputed advertisement with an identification of a specific class member who saw the alleged misrepresentation. ECF 32 ¶¶ 45–56. In dismissing the Complaint, the Court was primarily concerned that it could not adequately determine whether the advertisements were materially misleading without knowing what misrepresentation each plaintiff saw. ECF 31 at 9. Now that the Court ostensibly possesses such information, it can assess the viability of the Plaintiffs' theories on an individualized basis, as intended by the statute, rather than generically review the Defendants' advertising scheme as a whole. *See Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 674 n.4 (E.D.N.Y. 2017) (refusing to consider advertisements that the plaintiff "never claim[ed] he saw—let alone relied on" when assessing Section 349 claim).

The Defendants argue that, in order to demonstrate causation, the Plaintiffs must tie each of the plaintiff's specific purchases to the specific advertisements observed by each plaintiff. The Court does not agree that the Plaintiffs must plead their claims with that degree of specificity. Having identified the specific advertisements they observed, and the overall impressions drawn from those advertisements, it is enough at this stage to generally assert that this impression caused them to make the purchases at issue. These allegations put the Defendants on sufficient notice of the nature of the claims against them to allow them to prepare a defense. *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) ("[A]n action under § 349 is

not subject to the pleading-with-particularity requirements of Rule 9(b), Fed.R.Civ.P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a).").

The cases the Defendants cite are inapposite because they involved claims where the plaintiffs either never identified the specific representations at issue or cited representations omitted from the complaint. *See Nelson*, 246 F. Supp. 3d at 674 n.4 ("Plaintiff urges the Court to look also at Foster's beer's advertising scheme and history, but the Court cannot do so because Plaintiff never claims he saw—let alone relied on—a single one of these advertisements"); *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 235 (E.D.N.Y. 2013) (dismissing complaint that "contain[ed] only general allegations about disclosures to all Plaintiffs, and [did] not contain any allegations about the specific disclosures [plaintiff] did or did not receive").

However, the Court agrees that the Amended Complaint is defective with regard to the purported injuries suffered by the Plaintiffs. To state a Section 349 claim, a complaint must assert that the consumer suffered a cognizable injury. *Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 452 (E.D.N.Y. 2012) ("[A] section 349 claim will not lie where the deceptive act itself was the only injury." (citing *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 252 A.D.2d 1 (1999)). To do so, the complaint must plausibly allege that the plaintiff suffered "actual or pecuniary harm that is separate and apart from the alleged deception itself." *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-cv-01058, 2012 WL 4482057, at *7 (E.D.N.Y. Sept. 26, 2012).

Here, the Amended Complaint alleges that ten of the fourteen plaintiffs purchased unnamed PCH products at an unspecified time after receiving PCH marketing materials, ECF 32 ¶¶ 4, 7, 9–16; that three of the other plaintiffs used PCH Search & Win "and" have been customers, *id.* ¶¶ 5–6, 8; and that one plaintiff believed his chances of winning would increase.

*Id.* ¶ 3. Following these allegations, the Amended Complaint broadly avers that each plaintiff did so "based on the Defendants' promise that doing so would improve or enhance their chances of winning a sweepstakes and/or drawing," thereby suffering damages due to the Defendants' failure to fulfill that promise. *Id.* ¶ 103.

Accordingly, the Plaintiffs advance three theories of damages: (1) paying a premium or higher price for products than what those products were worth; (2) purchasing products they otherwise would not have; and (3) using an inferior search engine product, PCH Search & Win, compared to other search engine products. The Court can dismiss the latter two damages theories as a matter of course. In the Order, the Court already dismissed the Plaintiff's claims to the extent that they alleged damages based on the theory that the Plaintiffs purchased products they otherwise would not have. ECF 31 at 10 (rejecting argument that the Plaintiffs "were injured because they purchased products they did not need in an attempt to increase their chances of winning a prize"). With regard to the claim that the Plaintiffs used an inferior search engine, nothing about this assertion identifies an actual or pecuniary harm. Of importance, the Plaintiffs cannot recover under Section 349 for purely subjective dissatisfaction with the products they received. *See Small*, 94 N.Y.2d 43, 252 A.D.2d at 8 ("[P]laintiffs' subsequent regret about their purchasing decisions, while understandable, is simply not actionable.").

Thus, the only viable theory presented by the Amended Complaint is the "price premium" allegedly paid by the Plaintiffs. To succeed on this theory, the Plaintiffs must allege that "on account of a materially misleading practice, [they] purchased a product and did not receive the full value of [their] purchase." *See Izquierdo v. Mondelez Int'l, Inc*., No. 16-cv-04697 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (quoting *Orlander v. Staples, Inc*., 802 F.3d 289, 302 (2d Cir. 2015)).

As the supposed price premiums, the Amended Complaint alleges that the Plaintiffs: (1) paid more for products than could have been purchased on other websites and stores at a lower price, ECF 32 ¶ 103(a); (2) paid a higher price due to shipping and handling costs, interest costs, and administrative fees, *id.* ¶ 103 (b); and (3) paid a price for products that they believed included an enhanced chance of winning the lottery, *id.* ¶¶ 103(d)-(f). However, these allegations are merely boilerplate recitations of the formula for calculating a price premium. The Amended Complaint lacks any semblance of facts illustrating that the Plaintiffs in fact paid such a premium, such as, the products they purchased or the actual value of those products. Put another way there are no non-conclusory allegations actually demonstrating that the Plaintiffs paid a price premium for any of the products.

The Plaintiffs cite several cases supporting the conclusion that a consumer paid a price premium if he or she paid a higher price for a product based on a misrepresentation that the product contains a unique, desirable quality that it lacks. *See Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38 (E.D.N.Y. 2017); *Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274 (S.D.N.Y. 2014); *Irvine v. Kate Spade & Co.*, No. 16-cv-7300, 2017 WL 4326538 (S.D.N.Y. Sept. 28, 2017). The Plaintiffs also cite cases establishing that a plaintiff need not identify a specific comparator product in order to identify a price premium. *See Greene*, 262 F.Supp. 3d at 69; *Quiroz v. Beaverton Foods, Inc.*, No. 17-cv-7348, 2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019). Based on these cases, the Plaintiffs reason that the Amended Complaint sufficiently stated a claim simply by identifying that they paid a price premium, regardless of whether they named their specific purchases.

Although the Court agrees nominally with the authority relied on by the Plaintiffs, it is not applicable to the present dispute. Those cases involved claims where the plaintiffs (1)

directly identified the products at issue and (2) based their allegations on material qualities, such as size or ingredients. Based on these allegations, the courts could easily infer the loss suffered by the plaintiffs from the absence of those qualities from the purchased products. *See Greene*, 262 F. Supp. 3d at 68 (plaintiff paid higher price for infant formula because she believed it provided a "reduced risk of allergies"); *Quiroz*, 2019 WL 1473088, at *9 (plaintiff paid higher price for mustard based on representation that it contained no preservatives); *Koenig*, 995 F. Supp. 2d at 288 (plaintiff paid higher price for milk based on representation that it was "fat free"); *Irvine*, 2017 WL 4326538, at *1, 4 (plaintiffs alleged that they purchased inventory from a handbag, clothing, and jewelry designer that "was of inferior craftsmanship and utilized different hardware, materials, logos and product demarcations" than what was represented).

The alleged damages here stem from the Plaintiffs' subjective estimations of their chances of winning a sweepstakes. However, the fact that a product failed to live up to a consumer's individual expectations, standing alone, is insufficient to allege a price premium. *See Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) ("A well pleaded allegation that a plaintiff paid a premium may be sufficient to allege injury, however, plaintiff only conclusorily asserts that Atkins Nutritionals charges a premium for its products and provides no facts regarding what the premium was [or the] price he paid for the products[.]"); *Belcastro v. Burberry Ltd.*, No. 16-cv-1080, 2017 WL 744596, at *5 (S.D.N.Y. Feb. 23, 2017) ("At best, the Complaint alleges that as a result of Burberry's deceptive pricing, Plaintiff paid more than he was subjectively willing to otherwise pay. That, however, is not the same as factual allegations that Burberry uses deceptive reference prices to charge consumers a higher price for the same merchandise."); *Izquierdo*, 2016 WL 6459832, at *7 ("Simply ... recit[ing] the word 'premium' multiple times in [the] Complaint does not make Plaintiffs' injury any more

cognizable. Plaintiffs have not alleged that they paid a higher price for the Candy than they otherwise would have, absent deceptive acts.").

*Derbaremdiker v. Applebee's Int'l, Inc*., No. 12-cv-01058, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012) is instructive. There, the plaintiff similarly argued that he suffered actual harm because he "received less than the represented value" by the defendant on the basis that the likelihood of him winning a prize in a sweepstakes was a "'fraction of the likelihood'" that the defendant represented. *Id.* at *7. Judge Matsumoto granted a motion to dismiss on the ground that the alleged injury was "not legally cognizable under Section 349 because he sets forth deception as both act and injury." *Id.* As Judge Matsumoto explained: "[p]laintiff claims that his injury is that he believed his odds of winning a prize in the Sweepstakes was higher than his actual odds. Plaintiff, however, must allege actual or pecuniary harm that is separate and apart from the alleged deception itself." *Id.*

Similarly, the Plaintiffs articulate nothing defective about the products they received from the Defendants other than their disappointment about failing to win a sweepstakes and/or drawing, making their claims distinguishable from cases where consumers allege damages based on the absence of a desirable material quality from a product. For example, if a consumer purchases, but fails to receive, a product marketed as providing a "reduced risk of allergies," the price premium is identified by the cost associated with that specific feature. *Greene*, 262 F. Supp. 3d at 68. Such claims can withstand a motion to dismiss without identifying a comparator product, because the purchaser's damages logically follow from the seller's failure to provide the consumer that observable, material quality.

The same is not true for a person who purchases a product marketed as increasing the consumer's chances of winning a sweepstakes and/or drawing. New York law presumes that

"deceived consumers may nevertheless receive—and retain the benefits of—something of value, even if it is not precisely what they believed they were buying." *Servedio*, 889 F. Supp. 2d at 452. Therefore, even if that person fails to receive better odds as advertised, the product that person receives is exactly the same as the product they thought they were purchasing. The purchaser would only have paid a price premium if they paid more for the product than its actual value.

But the Amended Complaint identifies neither the purchased products nor material qualities lacking from those products that would permit the Court to infer the payment of a price premium. The only "fact" demonstrating the inflated value is the Plaintiffs' conclusory assertion that they believe they were duped. That is insufficient. Plaintiffs relying on a price premium theory to allege actual harm must still identify a plausible basis for paying a price premium. *See Servedio*, 889 F. Supp. 2d at 452–53 (dismissing complaint that failed to "plausibly allege an injury for which section 349 provides a remedy"); *Belcastro*, 2017 WL 744596, at *3–6 (dismissing complaint that failed to "plausibly allege a 'price premium' injury").

The Plaintiffs attempt to correct the Amended Complaint's deficiencies by appending affidavits to their opposition supposedly identifying the products purchased by each plaintiff. However, "'[c]ourts in this Circuit have generally made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss.'" *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 609 (E.D.N.Y. 2017) (quoting *Kpaka v. City Univ. of N.Y.*, No. 14-cv-6021, 2015 WL 4557331, at *1 n.3 (S.D.N.Y. July 28, 2015)). Moreover, the affidavits neither describe the products with any degree of particularity nor identify anything about those products of inferior quality or diminished value.

Accordingly, the Court finds that the Amended Complaint fails to sufficiently allege an injury under Section 349.

### 3. As to Whether the Representations At Issue Were Materially Misleading.

The Amended Complaint alleges the that the Defendants engaged in an advertising campaign designed to mislead consumers into believing that purchasing a product would enhance their chances of winning a sweepstakes, lottery or drawing. The Defendants argue that the Plaintiffs failed to allege that their behavior was materially misleading as a matter of law. The Court agrees.

"The New York Court of Appeals has established an objective standard for determining whether acts or practices are materially deceptive or misleading 'to a reasonable consumer acting reasonably under the circumstances.'" *Goldemberg v. Johnson & Johnson Consumer Co., Inc.*, 8 F.Supp. 3d 467, 478 (S.D.N.Y. Mar. 27, 2014) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 647 N.E.2d 741 (1995)). Although such a determination is typically a question of fact, *id.*, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

The Court finds that the allegations in the Complaint neither individually nor collectively support the conclusion that a reasonable consumer would be deceived into believing that purchasing a product from PCH would increase their chances in a sweepstakes, lottery, or drawing. PCH made no explicit promise in that regard, and no such impression is readily apparent from the marketing materials cited. In sum, the advertising materials contain various enticements and encouragements to purchase PCH products, but never link those enticements to improved odds in the competition.

The Plaintiffs cite a mailed advertisement folded so that "We Need to find WINNERS Soon! HURRY Respond Today!" appeared just above a second piece that said "Cynthia, Only one order is all it takes!" ECF 32-1. At most, this letter conveys the existence of a contest exclusive to purchasers, and there is no indication that the particular contest advertised included non-purchasers. The Plaintiffs' suggestion that this mailing creates some impression of an otherwise elevated chance of winning is totally unsupported by the document itself.

The Plaintiffs cite a mailed advertisement in which one piece of the mailing was folded so that "We'd Love For You to Place an Order Today!" appeared just above a second piece stating "FOREVER PRIZE WILL DEFINITELY BE AWARDED IN JUST WEEKS!" ECF 32-2. This document merely encourages the recipient to place an order and contains no language tying the "Forever" Prize to the purchaser's willingness to place an order.

The Plaintiffs cite a reward points/token system in which PCH promised participants were halfway to "unlocking" the "next tier" of "extraordinary benefits." ECF 32-3. This representation makes no reference to purchasing a PCH product, nor does it provide encouragement to purchase one.

The Plaintiffs cite an e-mail indicating that certain individuals had won $10,000 in a sweepstakes or drawing, ECF 32-4, after which PCH later informed the recipients that the e-mail was sent by mistake and actually they had not won. Again, this representation has no connection with PCH products or the basis for this lawsuit.

The Plaintiffs cite a "screen" that prevents consumers who have entered multiple PCH drawings from submitting additional entry forms until they purchase a product. This allegation merely indicates that PCH limits the number of entries that an individual can make into a

sweepstakes. Purchasing an additional product might be a precondition for additional entries, but there is no representation that such purchases would increase the consumer's chance of winning.

The Plaintiffs cite an email regarding exclusive cash prizes for past purchasers. ECF 32-5. As the Court already explained, there is nothing misleading about offering a contest exclusive to purchasers of PCH products, unless that contest is not in fact exclusive to purchasers.

The Plaintiffs cite a mailing notifying individuals that they were placed on a "Winner's Selection List." ECF 32-6; ECF 32-7; ECF 32-8. The mailing contains language indicating that further action was required for individuals to maintain eligibility to receive cash prizes, as well as language enticing the recipient to purchase products from PCH. Although the two representations are comingled in the same mailing, there is no explicit or implicit representation indicating that *additional* purchases were necessary to win the sweepstakes. Rather, the only additional action solicited was the clerical step of filling an entry form.

The Plaintiffs also cite several marketing materials purportedly sent in violation of PCH's agreements with State Attorneys General, such as simulated checks creating the impression of a "Winning Moment," ECF 32-9; advertisements that advised a winning number would be forfeited if they did not take an additional step to enter a lottery, drawing or sweepstakes, ECF 32-10; ECF 32-11; and emails indicating a lottery, drawing or sweepstakes winner would be selected from a pool of individuals in their zip code, state, or to someone with their initials. ECF 32-12. Regardless of the truthfulness of these representations, they make no reference to the purchase of a specific product. As a result, it is not apparent why the marketing materials would create the impression alleged by the Plaintiffs, namely, that purchasing a product would increase the recipients' chances of winning.

Finally, the Plaintiffs cite mailings comingling the forms required for entry into a lottery, drawing or sweepstakes with the forms required for ordering products from PCH. ECF 32-13. The entry form specifically references cash prizes, and the order form separately entices the recipient with all of the benefits they would receive from being a PCH customer. The Plaintiffs' argument is not based on a reasonable interpretation of the mailings. The entry form specifically states that the recipients entry was already "successfully processed, and the "final step" is the "timely return of form W-61" without any reference to additional purchases.

To their credit, the Plaintiffs concede that many of the advertising materials are at least facially innocuous, arguing instead that the materials are misleading due to the cumulative special relationship cultivated by PCH. However, the "Plaintiffs do not cite any cases in support of the proposition that a special relationship may be based on an advertisement directed at consumers and intended to induce reliance and courts have consistently held that advertisements alone are not sufficient." *Stoltz v. Fage Dairy Processing Indus.*, S.A., No. 14-cv-3826, 2015 WL 5579872, at *25 (E.D.N.Y. Sept. 22, 2015) (collecting cases). Moreover, it is not apparent that the concept of a "special relationship" would apply to a Section 349 cause of action—the term relates to one who possesses duties that must be discharged to avoid negligent misrepresentation claims, not New York's consumer fraud statute. *See Kimmell v. Schaefer*, 89 N.Y.2d 257, 263, 675 N.E.2d 450 (1996); *cf. also Tomassini v. FCA U.S. LLC*, No. 3:14-cv-1226, 2015 WL 3868343, at *7 (N.D.N.Y. June 23, 2015) ("[A] business's failure to disclose to consumers material, relevant information the business alone possesses is actionable under N.Y.G.B.L. § 349 without reference to any special relationship between the consumer and the business.").

Even assuming the mailings here collectively created the impression that additional purchases increased a recipient's chance of winning a PCH contest, that impression is objectively unreasonable in light of the contests' terms of use. The Official Rules clearly stated: "NO PURCHASE OR PAYMENT NECESSARY TO ENTER" and "BUYING WON'T HELP YOU WIN." ECF 35-3 at 3 Likewise, the Sweepstakes Facts included in the Official Rules plainly state: "Enter for Free. You don't have to buy anything to enter" and "Buying Won't Help You Win. Your chances of winning without a purchase are the same as the chances of someone who buys something." *Id.* at 2. These warnings are in the same font size as all of the other contest rules, and conspicuously bolded to draw the reader's attention.

In *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-cv-01058, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012), a case discussed by the Court in the previous section, Judge Matsumoto addressed the treatment of similar sweepstake rules. The plaintiff brought a Section 349 claim based on an alleged misrepresentation on a receipt regarding his odds of winning a sweepstakes. Judge Matsumoto found that: "[w]hether the receipt is considered by itself or together with the full disclosures on the Website and the Official Rules, the receipt was not materially misleading to a reasonable consumer acting reasonably." *Id.* at *5. With regard to the Official Rules, Judge Matsumoto noted that the receipt specifically referred the plaintiff to the defendant's website and contained a clear disclosure regarding his chances of winning a prize. Thus, he failed to allege facts sufficient to satisfy the materially misleading standard under Section 349:

> Because the terms and conditions of the Sweepstakes were fully disclosed in the Official Rules, which consumers were directed to review by both the receipts given to customers and the Website, a reasonable consumer that read the Official Rules as directed would not have been misled by the statements on the receipt, which, as discussed previously, were not themselves materially misleading or contrary to the Official Rules.

*Id.* at *6.

The allegations here warrant similar treatment. In light of the disclosures in the rules for the contests, which PCH explicitly instructed the Plaintiffs to read, no reasonable consumer would believe that buying a PCH product would increase their chance of winning.

In response, the Plaintiffs cite several cases indicating misrepresentations can occur under Section 349, notwithstanding the existence of a disclaimer. However, these cases merely establish that when a product's label contains a misrepresentation that exclusively touts a specific feature, the existence of disclosures on a back label do not necessarily cure that misrepresentation as a matter of law. *See Stoltz*, 2015 WL 5579872, at *18 ("The court cannot conclude, as a matter of law, that a reasonable consumer would not likely be misled based on the clarifying language of the Total 0% products labels in proximity to the Total 0% representation); *Goldemberg*, 8 F. Supp. 3d at 479 (holding that where defendant's trademark and "advertising exclusively tout[ed]" the natural ingredients in its "Active Naturals" personal care products, the disclosure of synthetic ingredients on the back label did not as a matter of law prevent a reasonable consumer from being misled); *Suarez v. California Nat. Living, Inc.*, No. 17-cv-9847, 2019 WL 1046662, at *8 (S.D.N.Y. Mar. 5, 2019) ("that the fine print on the back of the labeling could indicate to a consumer that other ingredients were not 'natural' does not render another conclusion so patently or objectively unreasonable so as to warrant dismissal as a matter of law based on the reasonable consumer prong").

Unlike a disclosure hidden on the back panel of a consumable product, the disclaimers here involve the explicit terms of use for entry in the contests. Put simply, it is much more reasonable to expect a contest participant to observe the official rules of that contest than to expect a consumer to read the obscured fine print on the back of a tangible good.

Therefore, the Court finds that the Amended Complaint fails to adequately plead a material misrepresentation under Section 349.

## III. CONCLUSION

For the foregoing reasons, the Court grants the Defendants' motion to dismiss the Amended Complaint in its entirety and denies the motions to strike and compel as moot. The Court finds that the deficiencies in the Amended Complaint are such that that they could not be remedied through another amended pleading. *See Hitchcock v. Woodside Literary Agency*, 15 F. Supp. 2d 246, 252 (E.D.N.Y. 1998) ("[L]eave to replead may be denied where granting it would be futile."). The Court thus dismisses the Amended Complaint with prejudice and without leave to re-plead. The Clerk of the Court is respectfully directed to close the case.


It is **SO ORDERED**:

Dated: Central Islip, New York

February 13, 2020

___/s/ Arthur D. Spatt___

ARTHUR D. SPATT

United States District Judge